# In the United States Court of Federal Claims

No. 15-501C

(Filed: April 5, 2016)

<table>
<tr>
<td>

**3RD EYE SURVEILLANCE, LLC and DISCOVERY PATENTS, LLC,**

        **Plaintiffs,**

v.

**UNITED STATES,**

        **Defendant.**

</td>
<td>
)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)
</td>
<td>
Patent case; government's motions to notify eight entities alleged to have an interest in the subject matter of the action; RCFC 14(b); standard for an "alleged interest" under the notice provision of RCFC 14(b)
</td>
</tr>
</table>

Stephen A. Kennedy, Kennedy Law, L.L.P., Dallas, Texas, for plaintiffs.

David M. Ruddy, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With Mr. Ruddy on the briefs were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Civil Division, and John Fargo, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. With him at the hearing were Joss Nichols, Civil Division, United States Department of Justice and Nathan Grebasch, United States Department of Homeland Security.

## OPINION AND ORDER

LETTOW, Judge.

Pending before the court in this patent infringement case brought pursuant to 28 U.S.C. §1498(a) are motions by the defendant ("United States" or the "government") to notify eight entities, each of which "is alleged to have an interest in the subject matter of the suit." Rule 14(b) of the Rules of the United States Court of Federal Claims ("RCFC").[1] The patents at issue relate to alarm surveillance technology: U.S. Patent No. 6,778,085 entitled "Security System and Method with Realtime Imagery," U.S. Patent No. 6,798,344 entitled "Security Alarm System and Method with Realtime Streaming Video," and U.S. Patent No. 7,323,980, also entitled "Security System and Method with Realtime Imagery." In the motions, the government asserts that the entities to be given notice have contracts with the government involving security or alarm

---

[1]The eight entities are IndigoVision, LTD; Datawatch Systems, Incorporated; Tyco Integrated Security LLC; Diebold, Incorporated; Vidsys, Inc.; EFW Inc.; Tactical Micro, Inc.; and ICx Technologies, Inc.

systems, or components of such systems, that, based on plaintiffs' allegations, may constitute infringement of plaintiffs' asserted patents.  The government further asserts that each of the contracts held by the eight entities contains a standard indemnity clause pursuant to 48 C.F.R. (Federal Acquisition Regulation or "FAR") § 52.212-4(h) or § 52.227-3, requiring the contractor to indemnify the government against liability for patent infringement arising from performance of the contract.  The plaintiffs oppose all three motions on the basis that the government has not sufficiently alleged an interest on the part of the named entities in the subject action to warrant notice under RCFC 14(b).  The motions have been fully briefed and were addressed at a hearing on March 24, 2016.  For the reasons stated, the court has concluded that the government's motions should be granted and all eight entities should be given notice of the proceedings pursuant to RCFC 14(b).

## BACKGROUND[2]

### A. *Original Patent Infringement Complaint*

Plaintiffs filed a complaint on May 15, 2015 alleging that the government was and is infringing their patents for alarm surveillance systems.  *See 3rd Eye Surveillance, LLC v. United States*, 124 Fed. Cl. 438, 439-40 (2015).  All three patents relate to a "security alarm system that provides secure, realtime video and/or other realtime imagery of a secured location to one or more emergency response agencies over a high-speed communications link."  *Id.* at 440 (quoting '085 patent at Abstract).  Plaintiff 3rd Eye Surveillance, LLC ("3rd Eye") alleges that it is the exclusive licensee of the three patents, and plaintiff Discovery Patents, LLC ("Discovery Patents") is the alleged assignee of all interests in the patents.  *Id.*  In their original complaint, plaintiffs claimed that the government was developing and deploying infringing surveillance systems either through the direct actions of government agencies or through third-party consultants and contractors.  *Id.*  Plaintiffs claim damages for this infringement that "approach or exceed $1 [b]illion."  *Id.*

On September 16, 2015, the government filed a motion to dismiss plaintiffs' complaint for lack of subject matter jurisdiction under RCFC 12(b)(1), as well as a motion for a more definite statement under RCFC 12(e).  *3rd Eye*, 124 Fed. Cl. at 439.  In the latter motion, the government asserted it could not reasonably respond to plaintiffs' complaint because it did not provide any information about the identity or location of the accused systems, nor did it provide details of the allegedly infringing activity beyond a representative list of eight government entities "responsible for military, security, and law enforcement functions," as well as six third-party "consultants and contractors" to the government.  *Id.* at 440.  The court denied the government's motion to dismiss but directed plaintiffs "to file an amended complaint that (1) explains, with as much specificity as possible, why they believe certain government agencies and third-party contractors to the government have developed and used surveillance systems that infringe their patents, and (2) provides the publicly available information that was used to reach

---

[2]To provide a background and context for the case, the court has drawn upon the submissions of the parties attendant to the pending motions.

this conclusion." *Id.* at 444.

B. *Amended Complaint and Details on Government Contractors*

The plaintiffs responded to the court's order by filing an amended complaint on January 26, 2016, ECF No. 22.  The amended complaint provided examples of locations where the allegedly infringing surveillance systems are in use, including airports, government office buildings and courthouses, and national border areas.  Am. Compl. ¶¶ 9, 84.  The complaint also stated that "[t]he [g]overnment enters into contracts with third parties for hardware components (such as cameras, audio sensors and computers/servers), software applications, and IT technology consulting necessary to implement and operate the infringing [g]overnment security systems."  Am. Compl. ¶ 11.  Plaintiffs asserted that "[d]etailed specifications for the various [g]overnment security systems are confidential."  Am. Compl. ¶ 10.

Plaintiffs provided information about "video cameras" in use at airports, such as Dallas Fort Worth International Airport.  Am. Compl. ¶ 17.  Plaintiffs also submitted a news article from January 2016 relating to Hitachi Data Systems Federal ("Hitachi Federal"), a government contractor, describing an "airport security monitoring system" that uses "video intelligence" and an "automated monitoring system."  Am. Compl. ¶¶ 18-20.  Plaintiffs stated that they "do not allege that Hitachi Federal is directly or indirectly infringing the [asserted] patents at this time," but the government's airport monitoring system, as described in the article and evidenced by the video cameras in use, infringes one or more of the claims in the three patents at issue.  Am. Compl. ¶¶ 43-48.

Plaintiffs also provided information about security systems in use at government buildings, including systems that use "Converged Security Information Management software" provided by a contractor, Vidsys, Inc. ("Vidsys").  Am. Compl. ¶¶ 50, 52-53.  Plaintiffs allege that the government is infringing one or more of the claims in the '344 patent and the '980 patent by using the Vidsys software "in connection with other components," including video cameras and other "sensors," alarms, and access control systems such as "identity management, card access, and biometrics."  Am. Compl. ¶¶ 57-66, 81-83.  Plaintiffs do not allege that Vidsys is infringing their patents or "that the Vidsys . . . software, by itself, directly or indirectly, infringes the claims of [p]laintiffs' patents."  Am. Compl. ¶¶ 79-80.

Plaintiffs additionally provided information on the government's use of a "remote video surveillance system" to "monitor[] portions of its border."  Am. Compl. ¶ 86.  Plaintiffs point to a contract recently awarded to General Dynamics to upgrade a border surveillance system.  Am. Compl. ¶ 87.[3]  The system reportedly "includes a wide-area electro-optical and infrared multi-sensor camera system that provides [government] agents with persistent ground surveillance and real-time video analytics to effectively detect, track, identify, classify, and respond to missions along the nation's borders."  Am. Compl. ¶ 90.  Plaintiffs assert that this system infringes one or

---

[3]At the hearing, the government indicated it was not seeking to notify General Dynamics under RCFC 14(b) because, among other things, the contract with General Dynamics apparently does not contain a patent indemnity clause.  Hr'g Tr. 7:6-14 (Mar. 24, 2016), ECF No. 40.

more of the claims in the '344 patent and the '980 patent.  Am. Compl. ¶¶ 100-03.

Plaintiffs also included in their complaint a summary of government contracts under General Services Administration ("GSA") Schedules 70 and 84, which are used to obtain "hardware components, software and other components needed to provide security systems for secured locations."  Am. Compl. ¶¶ 104-06.  In this summary, plaintiffs identified contracts with two entities, IndigoVision, LTD ("IndigoVision") and Datawatch Systems, Incorporated ("Datawatch"), for "security system[s] that include[] . . . video cameras, sensors, a control center to receive input from computers connected to such sensors, and the capabilities of providing real-time video of alarm events to response agencies."  Am. Compl. ¶ 105.  Plaintiffs also stated that the government purchases goods and services from Vidsys through GSA Schedule 70.  Am. Compl. ¶ 106.

## C.  *The Government's Motions to Notify Interested Third Parties*

### 1.  *The government's first motion: IndigoVision and Datawatch.*

On February 5, 2016, the government filed a motion to notify IndigoVision and Datawatch as interested third parties under RCFC 14(b).  Def.'s Opposed Mot. to Notice Third Parties ("Def.'s First Mot."), ECF No. 23.  The government based its motion on the fact that both IndigoVision and Datawatch are named in Paragraph 105 of plaintiffs' amended complaint as vendors under GSA Schedule 84 and potential providers of an infringing "security system."  Def.'s First Mot. at 2.  With its motion, the government provided a Federal Supply Schedule Price List for IndigoVision under contract number GS-07F-0271Y for numerous components related to "closed circuit surveillance systems" and "facility management systems."  *Id.* Ex. A.  The government also provided a similar price list for Datawatch under contract number GS-07F-0634N for components related to an "access control system" and other "security and monitoring" systems.  *Id.* Ex. B.  Finally, the government provided "Contract Clause Document[s]" for both IndigoVision and Datawatch showing that both contracts contained a standard indemnity clause related to intellectual property, FAR § 52.212-4(h):

> Patent indemnity.  The Contractor shall indemnify the ordering activity and its officers, employees and agents against liability, including costs, for actual or alleged direct or contributory infringement of, or inducement to infringe, any United States or foreign patent, trademark or copyright, arising out of the performance of this contract, provided the Contractor is reasonably notified of such claims and proceedings.

*Id.* at 3, Ex. C at A39, Ex. D at A186.[4]  The government contended that "pursuant to the patent indemnity clause in each underlying contract, the companies . . . may have an interest in the subject matter of this suit within the meaning of RCFC 14(b)."  *Id.* at 3.

---

[4]The government provided the exhibits to its motions as separate appendices, but the several appendices were paginated sequentially.  For ease of reference, this opinion refers to these page numbers as "A __."

2. *The government's second motion: Tyco Integrated Security LLC, Diebold,
Incorporated, Vidsys, and EFW Inc.*

The government filed its second motion to notify interested third parties on February 12,
2016, the same day it filed its answer to the amended complaint.  Def.'s Second Mot. to Notice
Third Parties ("Def.'s Second Mot."), ECF No. 25.  The second motion requests that the court
authorize notices to be issued to Tyco Integrated Security LLC ("Tyco"), Diebold, Incorporated
("Diebold"), Vidsys, and EFW Inc. ("EFW"), a wholly owned subsidiary of Elbit Systems of
America, LLC.  Def.'s Second Mot. at 1-2.  With its motion, the government provided contract
number DJM-14-A32-V-0014 between the United States Marshals Service and Tyco relating to
"management, supervision, manpower, materials, supplies, and equipment necessary to plan,
schedule, coordinate, and assure effective performance of security services."  *Id.* Ex. B, at A8.[5]
It also provided a redacted version of contract number DJM-15-A32-V-0033 between the United
States Marshals Service and Diebold for the "management, installation, maintenance, and central
station monitoring" of "[h]ome [i]ntrusion [d]etection [s]ystem[s]." *Id.* Ex. C. at A111.  The
government provided a redacted version of contract number N00406-15-P-1941 between the
United States Navy and Vidsys for the VidShield software application to be used in video
surveillance systems operated by the Navy.  *Id.* Ex. D, at A129-30.[6]  Finally, the government
provided award information for contract number HSBP1014C0004 between the United States
Department of Homeland Security and EFW for goods and services related to the Integrated
Fixed Towers border surveillance system cited in Paragraph 93 of the amended complaint.  *Id.*
Ex. E, at A161, & G; *see also* Reply in Support of Def.'s Second Mot. Ex. (providing a redacted
version of the contract with EFW), ECF No. 32.

The contracts with Tyco, Diebold, and Vidsys contain the standard indemnity clause set
out at FAR § 52.212-4(h).  *Id.* at 3-6 & Ex. B, at A52, Ex. C, at A95, Ex. D, at A134.  The
contract with EFW contains an indemnity clause related to patents set out at FAR § 52.227-3:

> The Contractor shall indemnify the Government and its officers, agents, and
> employees against liability, including costs, for infringement of any United States
> patent (except a patent issued upon an application that is now or may hereafter be
> withheld from issue pursuant to a Secrecy Order under 35 U.S.C. 181) arising out
> of the manufacture or delivery of supplies, the performance of services, or the

---

[5]Tyco was one of the "consultants and contractors" listed in Paragraph 11 of the original
complaint through which plaintiffs alleged the government had "deployed unlicensed and
infringing surveillance systems." Compl. ¶ 11.  The amended complaint omitted this list, but
included allegations of government contracts with third parties.  Am. Compl. ¶¶ 104-07.  The
amended complaint did not specifically name Tyco as a contractor involved in infringing
activity.

[6]Like Tyco, Vidsys was named in the original complaint as one of the "consultants and
contractors" with which the government had been working to deploy infringing systems.  Compl.
¶ 11.  Vidsys was named in Paragraphs 50, 52-53, and 106 of the amended complaint.

construction, alteration, modification, or repair of real property (hereinafter referred to as *construction work*) under this contract, or out of the use or disposal by or for the account of the Government of such supplies or construction work.

*Id.* at 8 & Ex. G, at A217 (emphasis in original); *see also* Reply in Support of Def.'s Second Mot. Ex. at A334. Accordingly, the government asserted that each of the four entities "may have an interest in the subject matter of this suit within the meaning of RCFC 14(b)" by virtue of the respective patent indemnity clauses. *Id.* at 4-6, 8.

### 3.  *The government's third motion: Tactical Micro, Inc. and ICx Technologies, Inc.*

In its third motion to notify interested third parties, filed February 29, 2016, the government requested that the court authorize notice to two additional entities: Tactical Micro, Inc. ("Tactical Micro") and ICx Technologies, Inc. ("ICx"). Def.'s Mot. for Leave of Court to Notice Third Parties ("Def.'s Third Mot."), ECF No. 30.[7] With its motion, the government provided a redacted version of contract number HSBP1016D00002 between United States Customs and Border Protection and Tactical Micro for "procurement of goods and services related to the Mobile Video Surveillance System . . . Program." Def.'s Third Mot. at 3 & Ex. A. The government also provided a redacted version of contract number HSBP1011C00024 between United States Customs and Border Protection and ICx "for procurement of goods and services relating to the Mobile Surveillance Capability . . . system." *Id.* at 5 & Ex. B.[8]  The government asserts that both programs are part of the "border security technology plan" referenced in Paragraph 93 of the amended complaint, which according to plaintiffs involves infringing systems. *Id.* at 3, 5. The contract with Tactical Micro contains the standard indemnity clause under FAR § 52.212-4(h), and the contract with ICx contains the standard indemnity

---

[7]The government filed its third motion seventeen days after submitting its answer on February 12, 2016. It acknowledged that its third motion was out of time under RCFC 14(b)(2)(B)(ii), which requires the government to "file any motion for notice on or before the date the answer is required to be filed." Def.'s Third Mot. at 2. However, Clause iii of the same rule states that "[f]or good cause shown, the court may allow a motion for notice to be filed at a later time." *Id.* (quoting RCFC 14(b)(2)(B)(iii)). The government explained that it had been investigating potentially interested third parties since the amended complaint was filed on January 26, 2016, and that it did not receive the contract information from the pertinent government agency until February 26, 2016. *Id.* For good cause shown, the government's request for leave to submit its motion out of time is GRANTED.

[8]In their response to the government's third motion, plaintiffs asserted that ICx "no longer exists" because FLIR Integrated Systems, Inc. ("FLIR") acquired all outstanding shares of ICx's common stock in October 2010. Pls.' Resp. to Def.'s Third Mot. ("Pls.' Third Resp.") at 6, ECF No. 35. This assertion is not correct. FLIR indeed purchased all of the stock of ICx, not ICx's assets, and ICx remains a viable corporate entity, albeit one wholly owned by FLIR. Hr'g Tr. 13:8-24. In its reply supporting the third motion, the government noted that the contract with ICx was amended in June 2014 to add FLIR as the "doing business . . . name" for ICx and stating that "[a]ll other contract terms and conditions remain the same." Reply in Support of Def.'s Third Mot. at 4 & Ex. A, ECF No. 38.

clause under FAR § 52.227-3. *Id.* at 4, 6 & Ex. A at A41, Ex. B at A89. As with its prior motions, the government asserted that Tactical Micro and ICx "may have an interest in the subject matter of this suit within the meaning of RCFC 14(b)" by virtue of the respective patent indemnity clauses. *Id.* at 4, 6.

## JURISDICTION

This court has exclusive jurisdiction to adjudicate patent infringement claims against the federal government "[w]henever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same." 28 U.S.C. § 1498(a). In that respect, "the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States." 28 U.S.C. § 1498(a). "[D]irect infringement of a patent occurs when the government directly uses or manufacturers the patented invention without a license, or when, through a procurement contract or otherwise, the government consents to the use or the manufacture of the patented invention for its benefit without first obtaining a license." *Liberty Ammunition, Inc. v. United States*, 119 Fed. Cl. 368, 385 (2014) (citing *Decca Ltd. v. United States*, 640 F.2d 1156, 1166-67 & n.15 (Ct. Cl. 1980)) (internal citations omitted), *appeal docketed*, No. 15-5061 (Fed. Cir.). Accordingly, the court has jurisdiction over the present case.

## ANALYSIS

A. *Standard for an "Alleged Interest" Under the Notice Provisions of RCFC 14(b)*

Plaintiffs' opposition to the government's motions rests primarily on their assertion that the government has not sufficiently alleged that the third-party entities have an interest in the present action such that notice under RCFC 14(b) is necessary or appropriate. As the plaintiffs would have it, the standard for an "alleged interest" under this rule should be the plausibility standard articulated by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Pls.' Resp. to Def.'s Second Mot. ("Pls.' Second Resp.") at 3, ECF No. 31; Pls.' Third Resp. at 6-7. This standard, which was established in the context of pleading requirements to survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, states that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).[9] A "plausible" claim requires enough "factual content" to allow the court to "draw the reasonable inference" that the requested relief is warranted. *Id.* While appearing to acknowledge that this court has never applied the *Twombly*/*Iqbal* standard in the context of an RCFC 14(b) motion, plaintiffs nevertheless argue that for "public policy" reasons, the court should adopt this standard to prevent the government

---

[9]Because RCFC 12(b)(6) mirrors the equivalent rule in the Fed. R. Civ. P., the court has adopted this pleading standard for motions to dismiss under RCFC 12(b)(6). *See, e.g.*, *Wolens v. United States*, __ Fed. Cl. __, __, 2016 WL 853724 at *4 (Mar. 4, 2016); *Palafox St. Assocs., L.P. v. United States*, 114 Fed. Cl. 773, 780 n.2 (2014).

from "run[ning] roughshod over litigants, especially in patent infringement cases." Pls.' Second Resp. at 3. Otherwise "no standard of review" would appertain in a motion for notice under RCFC 14(b), allowing the government to "invoke the names of several contractors as potential responsible parties" in an effort to "increase the complexity and cost of a case." Pls.' Third Resp. at 6-7. Plaintiffs draw an analogy to calling upon an "ally in war" through use of a "mere allegation" of interest. Pls.' Second Resp. at 2.

RCFC 14(b)(1) states that "[t]he court, on motion or on its own, may notify any person with the legal capacity to sue or be sued who is alleged to have an interest in the subject matter of the suit." Within 42 days of service, a person notified under this rule "may file an appropriate pleading setting forth the person's interest in the subject matter of the litigation." RCFC 14(c). If a third party receiving notice under RCFC 14(b) decides to file a pleading under RCFC 14(c), "that third party has standing to seek adjudication of the claims at issue in the suit." *Uusi, LLC v. United States*, 110 Fed. Cl. 604, 610 (2013) (citing *USHIP Intellectual Props., LLC v. United States*, 98 Fed. Cl. 396, 405 (2011)). This rule is separate from the provisions for intervention under RCFC 24, in which a party can move to intervene of right in a pending action (RCFC 24(a)) or request the court's permission to intervene (RCFC 24(b)). However, both RCFC 14(b), and RCFC 24(a) refer somewhat similarly to a person "who is alleged to have an interest in the subject matter of the suit," RCFC 14(b)(1), and a person who "claims an interest relating to the property or transaction that is the subject of the action," RCFC 24(a)(2).

This court and its predecessor, the United States Court of Claims, have construed the "alleged interest" requirement of RCFC 14(b)(1) broadly, stating that "an apparent interest is sufficient for notice to issue '[e]ven in those situations where an alleged third party interest in the suit is uncertain.'" *Uusi*, 110 Fed. Cl. at 609 (quoting *Allied Oil & Supply, Inc. v. United States*, 60 Fed. Cl. 223, 225-26 (2004) (in turn quoting *Del-Rio Drilling Programs, Inc. v. United States*, 17 Cl. Ct. 844, 849 (1989))). The "interest" at issue generally involves a pecuniary interest, whether a "direct pecuniary interest" or a "potential pecuniary interest." *Pacific Gas & Elec. Co. v. United States*, 98 Fed. Cl. 699, 701 (2011) (citing *Bowser, Inc. v. United States*, 420 F.2d 1057, 1060 (Ct. Cl. 1970); *Allied Oil*, 60 Fed. Cl. at 228; *Bird v. United States*, 51 Fed. Cl. 536, 541-42 (2002)).[10] In the context of a motion by the United States to notify a third party, a "pecuniary interest" can be established through an allegation that a third party may be required to indemnify the government in the event the government is found liable in the subject action. *See, e.g.*, *Uusi*, 110 Fed. Cl. at 611 ("[The third parties] have identified their clear interest in the subject matter of this litigation, namely their potential indemnification responsibilities if the [g]overnment is found liable to [p]laintiffs for patent infringement."). To do this, the government need only make a "nonfrivolous claim for indemnity" against the third party. *See Carrier Corp. v. United States*, 534 F.2d 250, 251 (Ct. Cl. 1976) (per curiam); *accord Philadelphia Suburban Corp. v. United States*, 211 Ct. Cl. 354, 356 (1976) (applying *Carrier* in denying a motion to quash notice to an entity against whom the government "alleged a non-frivolous claim"); *Uusi*, 110 Fed. Cl. at 610; *Allied Oil*, 60 Fed. Cl. at 226.

---

[10]Contrastingly, a judge of this court has held that "an interest in fulfilling . . . contractual obligations," as opposed to a specific pecuniary interest, is not sufficient for an "alleged interest" under RCFC 14(b). *Pacific Gas*, 98 Fed. Cl. at 702.

The distinction between the *Twombly*/*Iqbal* plausibility standard and the "nonfrivolous" standard employed by this court under *Carrier* and its progeny for notice under RCFC 14(b) is significant.  As plaintiffs would have it, the plausibility standard applies and requires either an admission by the government that the third parties are selling infringing security alarm systems to the government or are selling component parts with "no substantial non-infringing uses."  *See, e.g.*, Pls.' Second Resp. at 5 (asserting that only contractors who are selling infringing alarm systems have an interest under RCFC 14(b) and stating that "[i]f the [g]overnment properly alleges that [the third party] sells to the [g]overnment, or has sold the [g]overnment, an infringing system, [p]laintiffs will withdraw [their] opposition"); Pls.' First Resp. at 2, 4 n.5 (stating that a contractor "must be . . . providing services that have no substantial non-infringing uses before it can be liable" for infringement).  For this position, plaintiffs rely on the statute governing private-party patent infringement, 35 U.S.C. § 271, which establishes "three possible types of infringement: (1) direct infringement, where a party is proven to practice each and every element of a given claim in a patent; (2) indirect infringement, where a party induces others to infringe with knowledge of the patent and knowledge that his or her activities would lead to the infringement of the patent; and (3) indirect infringement by parties who sell component parts that have no substantial non-infringing uses."  Pls.' Second Resp. at 3-4.

Plaintiffs' reliance on 35 U.S.C. § 271 is misplaced.  Although the statutory framework for private-party patent infringement in 35 U.S.C. § 271 is "similar" and "parallel" to that applied by this court to patent infringement claims under 28 U.S.C. § 1498(a), it is not the same. *Zoltek Corp. v. United States*, 672 F.3d 1309, 1321 (Fed. Cir. 2012) (quoting *Motorola, Inc. v. United States*, 729 F.2d 765, 768 (Fed. Cir. 1984)).  Under Section 1498, infringement occurs "[w]henever an invention described in and covered by a patent of the United States is used or manufactured by *or for* the United States without license of the owner thereof or lawful right to use or manufacture the same."  28 U.S.C. § 1498(a) (emphasis added).  This framework ties the government and contractors together, such that liability for the contractor's "use and manufacture" of an infringing item is assigned to the government.  *See Penda Corp. v. United States*, 44 F.3d 967, 970 (Fed. Cir. 1994) (commenting that "no judgment has been or could be entered" against a government contractor in a patent infringement suit against the government under Section 1498); *Decca*, 640 F.2d at 1167 (A "contractor's activity is deemed under [S]ection 1498 to be for the [g]overnment.")  Accordingly, the extent of the contractor's contribution to the "use or manufacture" of an infringing item is not relevant to establishing the government's liability for infringement under Section 1498.

Plaintiffs also improperly frame the question of "interest" under RCFC 14(b) as whether the named entities could be found to be infringing plaintiff's patents, rather than whether the entities could be required to indemnify the government if the government was found liable for infringement.  The two questions are not the same.  Under the indemnity clause in FAR § 52.212-4(h), a contractor agrees to indemnify the government for any patent infringement "arising out of the performance of th[e] contract."  Similarly, the patent indemnity clause in FAR § 52.227-3 requires the contractor to indemnify the government for patent infringement "arising out of the manufacture or delivery of supplies, the performance of services, or the construction, alteration, modification, or repair of real property . . . under this contract."  This court does not have jurisdiction to determine the extent of a contractor's obligations to indemnify the government under these clauses, as these would be governmental claims against third parties.

*Penda Corp.*, 44 F.3d at 970 (citing *Carrier Corp.*, 534 F.2d at 251).  That said, the language of these clauses demonstrates that a contractor could very well have a pecuniary interest in the outcome of a patent infringement suit against the government by virtue of these indemnification provisions, even if the contractor is not directly manufacturing or selling devices or materials that would themselves infringe.

Plaintiffs make much of the fact that they have affirmatively stated that many of the entities the government seeks to notify are not infringing their patents, or at least do not appear to be infringing their patents based on presently available information.  *See* Pls.' Second Resp. at 2 (characterizing the government's position as "even when a patent owner disavows infringement by [a contractor], this [c]ourt must grant a Rule 14(b) [m]otion if the [g]overnment 'merely alleges' that it could be entitled to indemnification"); *see also* Pls.' First Resp. at 2 (stating that "publicly available" information suggests that IndigoVision and Datawatch are not directly infringing plaintiffs' patents); Pls.' Second Resp. at 6-8 (stating that Tyco and Diebold appear to sell "antiquated system[s]" that would not be considered infringing, and that Paragraph 79 of the amended complaint states that "Vidsys does not appear to be infringing"); Pls.' Third Resp. at 8 (stating that the information provided for Tactical Micro does not establish that it is infringing plaintiffs' patents).  Plaintiffs suggest that because they do not presently claim that the entities are infringing their patents, these entities do not have a valid interest in the subject proceeding. The plaintiffs' arguments in this respect fail to take into account the early stage of the present proceedings, which is dictated in part by the requirement in Rule 14(b) that the government file its motions for notice no later than the date of its answer, absent good cause for a later filing. RCFC 14(b)(2)(B)(ii).[11]  As this case proceeds, the parties will have an opportunity to conduct discovery and, in due course, the court will conduct claim construction proceedings to "determin[e] the meaning and scope of the patent claims asserted to be infringed."  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).  If at any point plaintiffs wish to stipulate that certain systems or components provided by contractors to the government do not infringe or contribute to infringement of the patents at issue, there is a mechanism for them to do so through a voluntary, partial dismissal of claims under RCFC 41(a)(1)(A)(ii).  *See* Reply in Support of Def.'s Third Mot. at 10 (citing, *e.g.*, Joint Stipulation of Dismissal, *Ensign-Bickford Aerospace & Defense Co. v. United States*, No. 13-cv-57 (Fed. Cl. July 12, 2013), ECF No. 36; Stipulation to Dismiss Claims, *Blue Spike, LLC v. United States*, No. 13-cv-419 (Fed. Cl. July 10, 2014), ECF No. 55).  Unless and until this

---

[11]Due process problems can arise with later notice.  *See Bowser*, 420 F.2d at 1060-61 (concluding in a patent case that where notice and summons to an indemnitor were not issued until after entry of judgment, the indemnitor had been deprived of a fair hearing and the indemnitor was not required to indemnify government, absent a new action), *upheld in pertinent part on recons.*, 427 F.2d 740, 741 (Ct. Cl. 1970).

Additionally, the standard indemnity clause in the FAR related to intellectual property, FAR § 52.212-4(h), sets out an apparent condition on application of the indemnity, expressed in the form of a proviso: "provided the Contractor is reasonably notified of such claims and proceedings."  *See supra*, at 4 (quoting FAR § 52.212-4(h) in full).  The government's motion for notice to be given pursuant to RCFC 14(b) would ostensibly serve to implement this proviso.

occurs, however, plaintiffs' statements to this effect do not deprive the third-party entities of an interest in this case.

Simply stated, the government is requesting that the court formally notify third parties that might otherwise be prejudiced by the outcome of the present proceedings and allow those parties to have standing to participate in the proceedings. *Uusi*, 110 Fed. Cl. at 610. As a result, the standard for an alleged interest under RCFC 14(b) must be no higher, and may well be lower, than the standard for intervention of right under RCFC 24(a), where a party need only show an interest in the subject of the proceeding such that "disposing of the action *may* as a practical matter impair or impede the movant's ability to protect its interest." RCFC 24(a)(2) (emphasis added).

Accordingly, to allege an interest in the present case for the purposes of a motion under RCFC 14(b), the government must make a nonfrivolous claim that the entities to whom notice would be given could be required to indemnify the government if it was found liable to plaintiffs for patent infringement, or that these entities otherwise have a pecuniary interest in the outcome of the case. *Carrier Corp.*, 534 F.2d at 251; *Pacific Gas*, 98 Fed. Cl. at 701.

B.   *Applying the Standard for Notice Under RCFC 14(b) to the Government's Motions*

Applying the "nonfrivolous claim of a pecuniary interest" standard to the government's motions, the court concludes that the government has alleged a sufficient interest for all eight named entities in the subject proceeding.

1.   *The government's first motion: IndigoVision and Datawatch.*

The government has provided evidence, in the form of Federal Supply Schedule Lists, that both IndigoVision and Datawatch are engaged in activities on behalf of the government that involve the manufacture and sale of security systems, or components of them, that appear related to the subject matter of the present patent infringement suit. *See* Def.'s First Mot. at Ex. A & B; *see also* Am. Compl. ¶ 105 (stating that IndigoVision advertises a potentially infringing security system, and Datawatch "offers many of the same services"). The government has also provided evidence that its contracts with IndigoVision and Datawatch contain the standard indemnity clause set out in FAR § 52.212-4(h). Def.'s First Mot. at Ex. C & D. Accordingly, the government has made a nonfrivolous claim that IndigoVision and Datawatch, through these indemnity provisions, have a pecuniary interest in the subject proceeding.

2.   *The government's second motion: Tyco, Diebold, Vidsys, and EFW.*

The government has provided its contracts (or portions of them) with Tyco and Diebold showing that these companies are involved in the manufacture, sale, maintenance, and operation of security systems on behalf of the United States Marshals Service. Def.'s Second Mot. Ex. B & C. It has also provided portions of its contract with Vidsys sufficient to establish that this company provides software to the United States Navy to enable its "video surveillance system." *Id.* Ex. D. The government similarly provided portions of its contract with EFW showing that this company is engaged in providing "goods and services" to U.S. Customs and Border

Protection in support of a "border surveillance system."  *Id.* at 7 & Exs. E & G; Reply in Support of Def.'s Second Mot. Ex.  All four contracts contain either the indemnity clause stated in FAR § 52.212-4(h) or that set out in FAR § 52.227-3.  Accordingly, the government has made a nonfrivolous claim that Tyco, Diebold, Vidsys, and EFW have a pecuniary interest in the subject proceeding.

     3.   *The government's third motion: Tactical Micro and ICx.*

     The government has provided portions of its contracts with Tactical Micro and ICx sufficient to show that both companies are engaged in providing to U.S. Customs and Border Protection goods and services for mobile surveillance systems along the U.S. border.  Def.'s Third Mot. Ex. A & C.  These contracts contain either the indemnity clause stated in FAR § 52.212-4(h) or that set out in FAR § 52.227-3.  Accordingly, the government has made a nonfrivolous claim that Tactical Micro and ICx have a pecuniary interest in the subject proceeding.

## CONCLUSION

     For the reasons stated, the government's motions to authorize notice to the eight named entities pursuant to Rule 14(b) are GRANTED.  The clerk shall issue notice to each entity, as specified in RCFC 14(b)(3).  Service of the notices shall be accomplished in accord with the provisions of RCFC 14(b)(4).[12]

     It is so **ORDERED**.

         s/ Charles F. Lettow
         Charles F. Lettow
         Judge

---

[12]The government has also filed a motion for an extension of time to file the joint preliminary status report due following the filing of the answer, which occurred on February 12, 2016.  The government suggests that an extension would enable the noticed entities time to decide whether to join the action and for the joining entities to participate in developing the joint preliminary status report.  The government's motion for an enlargement of time, ECF No. 33, is GRANTED, and the joint preliminary status report shall be due on or before May 20, 2016.