# In the United States Court of Federal Claims

No. 15-501C

(Filed: July 26, 2017)

|  |  |  |
|---|---|---|
| **3RD EYE SURVEILLANCE, LLC and DISCOVERY PATENTS, LLC,** | ) ) ) | Patent suit; 28 U.S.C. § 1498(a); motion to compel discovery; limitation on any |
| **Plaintiffs,** | ) ) | claims pre-existing assignment of patents due to Assignment of Claims Act; 31 |
| **v.** | ) ) | U.S.C. § 3727 |
| **UNITED STATES,** | ) ) |  |
| **Defendant,** | ) ) |  |
| **and** | ) ) |  |
| **ELBIT SYSTEMS OF AMERICA, LLC, GENERAL DYNAMICS ONE SOURCE LLC, NORTHROP GRUMMAN SYSTEMS CORPORATION, TYCO INTEGRATED SECURITY LLC, and VIDSYS, INC.,** | ) ) ) ) ) ) ) |  |
| **Defendant-Intervenors.** | ) ) |  |

Stephen A. Kennedy, Kennedy Law, LLP, Dallas, Texas, for plaintiffs.

David A. Foley, Jr., Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With Mr. Foley on the briefs were Chad A. Readler, Acting Assistant Attorney General, Civil Division, and Gary L. Hausken, Director, Intellectual Property Staff, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

Kurt G. Calia, Covington & Burling, LLP, Redwood Shores, California, for defendant-intervenor Elbit Systems of America, LLC.

Scott A. Felder, Wiley Rein, LLP, Washington, D.C., for defendant-intervenor General Dynamics One Source LLC.

Michael A. Oblon, Perkins Coie LLP, Washington, D.C., for defendant-intervenor Northrop Grumman Systems Corporation.  With Mr. Oblon on the briefs were Andrew E. Shipley and Andrew J. Victor, Perkins Coie LLP, Washington, D.C.

William C. Bergmann, Baker & Hostetler, LLP, Washington, D.C., for defendant-intervenor Tyco Integrated Security LLC.

David R. Yohannan, Kelley, Drye & Warren, LLP, Washington, D.C., for defendant-intervenor Vidsys, Inc.

## OPINION AND ORDER

LETTOW, Judge.

Pending before the court in this patent case is plaintiffs' motion to compel the government to produce documents and overrule objections, ECF No. 126.  During the hearing on this motion, the court requested supplemental briefing regarding whether systems installed prior to February 12, 2013 are within the scope of potentially infringing systems, to assess whether the government should be compelled to produce documents regarding such systems.[1]  The issue has been fully briefed by plaintiffs, the government, and defendant-intervenor Northrop Grumman Systems Corporation ("Northrop Grumman").

For the reasons stated, plaintiffs' motion to compel is denied with respect to potentially infringing systems installed by the government prior to February 12, 2013.

## BACKGROUND

Plaintiff Discovery Patents is the current assignee of the three patents at issue in this case, United States Patent Nos. 6,778,085 ("the '085 patent"), 6,798,344 ("the '344 patent"), and 7,323,980 ("the '980 patent").  Am. Compl. ¶¶ 5, 7.  Plaintiff 3rd Eye Surveillance is the exclusive licensee of the '085, '344, and '980 patents.  Am. Compl. ¶ 6.  "The three asserted patents relate to a 'security alarm system that provides secure, realtime video and/or other realtime imagery of a secured location to one or more emergency response agencies over a high-speed communications link.'"  *3rd Eye Surveillance, LLC v. United States*, 124 Fed. Cl. 438, 440 (2015) ("*3rd Eye I*") (quoting '085 patent at Abstract).

One of the named inventors of the '085, '344, and '980 patents, James Otis Faulkner, first transferred his interest in the patents to a third party, Ichos, LLC, on September 11, 2009.  Def.'s Suppl. Br. Regarding Bar on Pls.' Claims for Pre-Feb. 12, 2013 Procurements ("Def.'s Suppl. Br."), App. at A004-A011, ECF No. 156.  In exchange, Mr. Faulkner received a portion of the

---

[1]Promptly following the hearing held on June 14, 2017, the court ruled on plaintiffs' motion to compel in all respects except for the issue currently before the court.  *See generally 3rd Eye Surveillance, LLC v. United States*, No. 15-501C, 2017 WL 2609233 (Fed. Cl. June 16, 2017) ("*3rd Eye III*").

revenues of Ichos, LLC. *See id.* On February 7, 2013, Ichos, LLC assigned the patents back to Mr. Faulkner. *Id.* at A014-A018. Shortly thereafter, on February 12, 2013, Mr. Faulkner assigned the patents to plaintiff Discovery Patents. *Id.* at A021-A023; *see also* Hr'g Tr. at 76:11-14 (June 14, 2017) ("The genealogy was from Mr. Faulkner to a third party[,] from that third party back to Mr. Faulkner[,] and from Mr. Faulkner to Discovery Patents, LLC.").[2] Plaintiffs filed suit in this court on May 15, 2015. *See generally* Compl.

In September 2015, the government filed a motion to dismiss plaintiffs' complaint, arguing in part that plaintiffs were "barred . . . from claiming damages for any infringing manufacture or use prior to February 12, 2013, when at least a portion of the interest in the patents in suit was assigned to Discovery Patents," pursuant to the Assignment of Claims Act, Pub. L. No. 97-258, 96 Stat. 877, 976 (1982) (codified at 31 U.S.C. § 3727). *3rd Eye I*, 124 Fed. Cl. at 439. At the hearing on that motion, plaintiffs' counsel represented that plaintiffs do not seek damages for infringing uses prior to February 12, 2013. *Id.* at 441 (citations omitted). Accordingly, the court denied the government's motion to dismiss, and the case proceeded to discovery following plaintiffs' filing of an amended complaint. *See id.* at 444.

On May 12, 2017, plaintiffs filed the instant motion to compel production by the government. *See* Pls.' Mot. to Compel Def. to Produce Docs. and Overrule Objs. ("Pls.' Mot."), ECF No. 126. Asserting objections, the government refused to produce information and documents relating to potentially infringing systems implemented on or before February 12, 2013. *Id.* at 2. Although plaintiffs are not seeking damages for infringing uses prior to that date, they assert that "the damages period has no relationship to infringement issues," and that all systems in use after February 12, 2013 are within the scope of potentially infringing systems regardless of when they were first procured, thus requiring the government to produce documents related to all such systems. *See id.*

At the hearing on this motion held on June 14, 2017, the court requested supplemental briefing from the parties regarding the effect of the Assignment of Claims Act on whether systems installed by the government prior to February 12, 2013 and used thereafter are within the scope of potentially infringing systems in this case. *See* Hr'g Tr. at 77:1 to 78:21; *see also* Scheduling Order of June 14, 2017, ECF No. 144. Plaintiffs, the government, and Northrop Grumman have submitted supplemental briefs.

## ANALYSIS

The parties agree that the damages period in this case begins on February 12, 2013, when the '085, '344, and '980 patents were assigned to Discovery Patents. *See* Pls.' Mot. at 2; Def.'s Suppl. Br. at 2. The government and Northrop Grumman argue that only those systems first procured or used by the government after February 12, 2013 can be within the scope of infringing systems pursuant to 28 U.S.C. § 1498 and the Assignment of Claims Act, and thus any systems installed prior to that date cannot be subject to discovery. *See generally* Def.'s Suppl.

---

[2]The date will be omitted from subsequent citations to the transcript of the hearing held on June 14, 2017.

Br.; Northrop Grumman Systems Corp.'s Suppl. Br. on the Assignment of Claims Act ("Northrop Grumman's Suppl. Br."), ECF No. 155.

An embedded issue is whether claims for continuing infringement exist under Section 1498. Unlike claims for patent infringement against private parties under Title 35, the government's unauthorized "use or manufacture" of a patented article under 28 U.S.C. § 1498(a) is analogous to a taking of property under the Fifth Amendment of the United States. *See Motorola, Inc. v. United States*, 729 F.2d 765, 768 (Fed. Cir. 1984); *Hughes Aircraft Co. v. United States*, 29 Fed. Cl. 197, 208 (1993). The government "takes" a non-exclusive and compulsory license to a United States patent "as of the instant the invention is *first* used or manufactured by the [g]overnment." *Decca Ltd. v. United State*s, 640 F.2d 1156, 1166 (Ct. Cl. 1980) (emphasis added). Such a license may be taken only once, and therefore "for each particular device only one right to recovery can arise, and that right must occur upon the first manufacture or use by or for the government of that specific device." *Starobin v. United States*, 662 F.2d 747, 749 (Ct. Cl. 1981). Contrastingly, for claims under Title 35, which are not analyzed through a takings framework, a patentee may recover for continued, ongoing infringement by a private party. *See, e.g.*, *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 34-35 (Fed. Cir. 2012) (describing remedies available for ongoing and future infringement). Under Section 1498, however, a claim against the government for patent infringement only accrues upon the government's taking of a license when it *first* uses or manufactures the patented device. Therefore, plaintiffs can only recover for the first instance of infringement for each accused device, not for ongoing infringement stemming from the continued use of accused devices. *See Unitrac, LLC v. United States*, 113 Fed. Cl. 156, 160-61 (2013) (explaining that ongoing infringement, standing alone, cannot be the basis for jurisdiction under Section 1498), *aff'd*, 589 Fed. Appx. 990 (Fed. Cir. 2015).

Because plaintiffs did not hold rights in the '085, '344, and '980 patents until February 12, 2013, the salient question becomes whether they may recover for the government's use of allegedly infringing systems that were first used or manufactured prior to that date, taking into account the Assignment of Claims Act. The Assignment of Claims Act provides that "[a]n assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued." 31 U.S.C. § 3727(b). The Act defines an assignment as "(1) a transfer or assignment of any part of a claim against the United States Government or of an interest in the claim; or (2) the authorization to receive payment for any part of the claim." 31 U.S.C § 3727(a).

As the Supreme Court explained, the "primary purpose" of the Assignment of Claims Act:

> 'was undoubtedly to prevent persons of influence from buying up claims against the United States, which might then be improperly urged upon officers of the [g]overnment,' and . . . a second purpose was 'to prevent possible multiple payment of claims, to make unnecessary the investigation of alleged assignments, and to enable the [g]overnment to deal only with the original claimant.' Other courts have found yet another purpose of the statute, namely, to save to the United

States 'defenses which it has to claims by an assignor by way of set-off, counter
claim, etc., which might not be applicable to an assignee.'

*United States v. Shannon*, 342 U.S. 288, 291-92 (1952) (footnote omitted) (quoting *United States
v. Aetna Surety Co.*, 338 U.S. 366, 373 (1949)).[3]  In accord with these purposes, the Assignment
of Claims Act generally renders ineffective voluntary assignments of unliquidated claims against
the government.  Exceptions to this bar do exist, however.  Courts have recognized certain
circumstances in which voluntary or involuntary assignments of claims may be valid, such as
transfers by will or "general assignments for the benefit of creditors."  *Id.* at 292 (citing
*Goodman v. Niblack*, 102 U.S. 556, 560-61 (1880); *Erwin v. United States*, 97 U.S. 392, 397
(1878)).  Assignments of patent rights are subject to the Assignment of Claims Act, and
voluntary assignments of patent claims are ineffective against the government unless they qualify
for one of these judicially-recognized exceptions or otherwise do not run afoul of the purposes of
the Act.  *Compare Standard Mfg. Co., Inc. v. United States*, 42 Fed. Cl. 748, 780-81 (1999)
(ruling that the Assignment of Claims Act barred an assignee of patent rights from recovering for
an infringement that occurred prior to the assignment of the patent), *abrogated in other respects
by Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011), *with Rel-Reeves, Inc. v.
United States*, 606 F.2d 949, 957-58 (Ct. Cl. 1979) (holding that assignment of patent rights in
bankruptcy was not subject to the Assignment of Claims Act because the assignment fell within
a recognized exception and did not violate the purposes of the Act); *MDS Assocs., Ltd. v. United
States*, 31 Fed. Cl. 389, 393-94 (1994) (holding that assignment of patent rights to an "alter-ego
partnership" after alleged infringement had already taken place was not barred under the
Assignment of Claims Act because the assignor and assignee were essentially the same
claimant).

Here, the assignment of the '085, '344, and '980 patents to Discovery Patents does not
fall within a recognized exception to the Assignment of Claims Act, but rather fits squarely
within the ambit of claim assignments that Congress sought to bar.  The assignment of the
patents from Mr. Faulkner to Discovery Patents was not within the context of bankruptcy
proceedings or by will or devise.  Further, unlike in *MDS Assocs.*, there is no evidence that
Discovery Patents was an "alter ego" of Mr. Faulkner such that both could be considered the
same claimant against the government with respect to the '085, '344, and '980 patents.  *See MDS
Assocs.*, 31 Fed. Cl. at 394.  Under the Assignment of Claims Act, Congress intended that the
government would only be subject to claims from the "original claimant," such that unliquidated
claims could not be assigned after they had accrued.  *See Shannon*, 342 U.S. at 291.  Plaintiffs
are the original claimants only for infringement claims that arose after the patents were assigned
to Discovery Patents, *i.e.*, after February 12, 2013.  Plaintiffs cannot bring any claims against the
government that arose before that date because either Mr. Faulkner or Ichos, LLC would be the

_____

[3]Although *Shannon* addresses a previous iteration of the Assignment of Claims Act, then
codified at 31 U.S.C. § 203, the substance of the Act has not changed in the intervening years,
and the significant body of precedent in the Supreme Court and other courts implementing the
Act remains good law.  *See also Central Bank v. United States*, 345 U.S. 639, 642-43 (1953)
(addressing amendments to the Assignment of Claims Act related to financing transactions);
*Applied Cos. v. United States*, 144 F.3d 1470, 1476-77 (Fed. Cir. 1998) (focusing on the
financing exceptions to the Assignment of Claims Act).

original claimant for such claims, which could not be assigned to plaintiffs absent exceptional circumstances not present in this case. *See also* Northrop Grumman's Suppl. Br. at 5 ("Plaintiffs are not the original claimant[s]; thus, forcing the [g]overnment to deal with [p]laintiffs with respect to surveillance systems procured prior to February 12, 2013 exposes the [g]overnment to the risk of multiple claims by multiple claimants for the same allegedly infringing procurement.").

As plaintiffs note, however, a noninfringing system could later become infringing if the government modified or upgraded the system to include infringing components. *See* Pls.' Resp. to the Suppl. Briefing by Def. and Northrop Grumman Systems Corp. on the Application of the Assignment of Claims Act at 4-5, ECF No. 158. Even though such a system already may have been in use by the government before February 12, 2013, any modification that would render the system infringing would constitute the first taking of a license to the patents because the system would not have been previously covered by the patents. *See Starobin*, 662 F.2d at 749-50 (explaining that a taking occurs upon the first *use* or manufacture by the government of *an individual device covered by a patent*). A system that was installed by the government prior to February 12, 2013 but was subsequently upgraded or modified to include potentially infringing components would therefore be within the scope of potentially infringing systems, and claims regarding such systems would not be barred by the Assignment of Claims Act. Nonetheless, in recognition that this case is at a "preliminary stage of discovery" in preparation for claim construction, *3rd Eye III*, 2017 WL 2609233, at *1,[4] any discovery regarding modifications to systems placed in use before February 12, 2013, should be limited. Only changes that may cause such existing systems to be potentially infringing should be the subject of discovery requests, and even then, the discovery sought should focus on the modifications put in use after February 12, 2013, not on the preexisting systems.

In sum, any systems first procured or used by the government prior to February 12, 2013 are not within the scope of potentially infringing systems in this case because claims related to those systems are barred by the Assignment of Claims Act, unless such systems were modified or upgraded to become infringing after that date. Therefore, plaintiffs may not compel the government's production of documents related to any such systems.

## CONCLUSION

For the reasons stated, plaintiffs' motion to compel the government to produce documents is DENIED with respect to potentially infringing systems procured, manufactured, or used by the government prior to February 12, 2013, except for those systems that were subsequently modified or upgraded by the government after that date.

---

[4]Pursuant to a scheduling order issued December 13, 2016 and amended June 16, 2017, Scheduling Order of Dec. 13, 2016, ECF No. 112; Am. Scheduling Order of June 16, 2017, ECF No. 150, fact discovery regarding claim construction is to be complete by October 30, 2017. A joint claim construction statement is due February 2, 2018, and briefs are to be filed thereafter, culminating in a *Markman* hearing to be held April 9, 2018.

It is so **ORDERED**.

s/ Charles F. Lettow\
Charles F. Lettow\
Judge