# In the United States Court of Federal Claims

No. 15-501C

(Filed: April 18, 2019)

| | | |
|---|---|---|
| ************************************* | ) | |
| **3RD EYE SURVEILLANCE, LLC and** | ) | Discovery disputes in patent case; prior |
| **DISCOVERY PATENTS, LLC**, | ) | preliminary protective order superseded by |
| | ) | claim construction; particularized showing |
| Plaintiffs, | ) | not made for discovery of source code; |
| | ) | general obligation to respond to proper |
| v. | ) | discovery requests; RCFC 26(b)(1), 33(b), |
| | ) | 34(b), 36(a) |
| **UNITED STATES**, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **ELBIT SYSTEMS OF AMERICA,** | ) | |
| **LLC, GENERAL DYNAMICS ONE** | ) | |
| **SOURCE LLC, NORTHROP** | ) | |
| **GRUMMAN SYSTEMS** | ) | |
| **CORPORATION, and VIDSYS, INC.**, | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |
| ************************************* | | |

Steven A. Kennedy, Kennedy Law, P.C., Dallas, Texas, for plaintiffs.

Lee Perla, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Joseph H. Hunt, Assistant Attorney General, Civil Division, Gary L. Hausken, Director, Commercial Litigation Branch, Civil Division, and David A. Foley, Jr., Trial Attorney, Commercial Litigation Branch, United States Department of Justice, Washington, D.C.

Kurt G. Calia, Covington & Burling LLP, Palo Alto, California, for defendant-intervenor Elbit Systems of America, LLC.

Scott Andrew Felder, Wiley Rein, LLP, Washington, D.C., for defendant-intervenor General Dynamics One Source LLC.

Gregory H. Lantier, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C., for defendant-intervenor Northrop Grumman Systems Corporation.

David Rene Yohannan, Quarles & Brady LLP, Washington, D.C., for defendant-intervenor Vidsys, Inc.

**OPINION AND ORDER**

LETTOW, Senior Judge.

Pending before the court in this patent infringement action are five motions linked by a fundamental issue underpinning the case: the discovery of defendants' source code for security systems the plaintiffs allege infringe on their patents. The matters currently pending for resolution are (1) Plaintiffs' . . . Motion for Protective Order ("Pls.' Mot. for Protective Order"), ECF No. 256; (2) Plaintiffs' Comprehensive Brief Addressing Discovery . . . ("Pls.' Mot. to Compel"), ECF No. 268; (3) Defendant's Motion to Compel Interrogatory Response, Compel Document Production, Determine the Sufficiency of Objections, and Deem Certain Requests for Admission Admitted ("Def.'s Mot. to Compel"), ECF No. 269; (4) Defendant's Motion to Enforce the . . . Protective Order or in the Alternative, Enter a New Protective Order ("Def.'s Mot. for Protective Order"), ECF No. 274; and (5) Plaintiffs' Motion for Reconsideration of Order . . . ("Pls.' Mot. for Recon."), ECF No. 278.

The positions of the parties can be summed succinctly. The plaintiffs want access to the full source code of various security systems in use at government facilities and claim they cannot respond to any discovery requests by the defendant until they receive such access. The defendants, on the other hand, claim that the plaintiffs have not shown a good faith and particularized basis for discovery of source code. They further represent that they have provided plaintiffs with over 150,000 documents during discovery. As for their own motion to compel, the defendants' argue that the plaintiffs have an affirmative obligation to respond to the defendants' discovery requests.

**BACKGROUND**

Plaintiffs are the patent holder and the assignee of three patents, Nos. 6,778,085 (the "'085 patent"), 6,798,344 (the "'344 patent"), and 7,323,980 (the "'980 patent"), each relating to security systems with attendant imagery capabilities. *See 3rd Eye Surveillance, LLC v. United States*, 140 Fed. Cl. 39 (2018) (ruling on challenges to patent eligibility and on claim construction). Plaintiffs assert that their intellectual property is being infringed by security systems in use at secured locations owned, operated, or managed by or for the United States. *See* Pls.' First Am. Compl. ("Am. Compl.") ¶ 9, ECF No. 22.[1] Defendant-intervenors are suppliers

---

[1] The three patents constitute a closely related patent family. A provisional application was filed on July 8, 2002 as No. 60/393,942. *See* '344 Patent at 1, item (60). The application was formally filed October 17, 2002 and issued on September 28, 2004. *See id*. items (22), (45). The '085 patent is a continuation in part of the '344 patent, even though the '085 patent was issued first, on August 17, 2004. *See* '085 Patent, at 1, items (45), (60), (63). The '980 patent is a continuation in part of the '085 patent and was issued on January 29, 2008. *See* '980 Patent at 1, items (45), (63). Each has a similar title. The '344 patent is styled "Security Alarm System and Method with Realtime Streaming Video," '344 Patent at 1, and the '085 patent and '980

of various hardware, software, or information technology ("IT") services to the federal government who have been given notice to intervene in this matter as a result of indemnity clauses in their respective contracts with the United States. *See, e.g.*, Def.'s Unopposed Mot. For Leave of Ct. to Notice Additional Third Parties at 4 (discussing the justification for issuing notice to defendant-intervenor General Dynamics One Source pursuant to Rule 14(b) of the Rules of the United States Court of Federal Claims ("RCFC")), ECF No. 79.[2]

Plaintiffs initially filed suit in this court on May 15, 2015, and submitted an amended complaint on January 26, 2016, and then again on October 7, 2018. Plaintiffs allege that "[t]he [g]overnment operates security systems at numerous secured locations, including . . . airports, [f]ederal [c]ourts, and other government office buildings," and that these systems infringe plaintiffs' patents – the '085, '344, and '980 patents. *See* Am. Compl. ¶ 12.

This litigation has seen extensive proceedings in the nearly four years since the plaintiffs filed their first complaint, culminating in four published opinions to date by the court addressing various motions made by the parties as the case progressed through preliminary discovery and towards claim construction, also taking into account six separate applications post-complaint for *inter partes* review filed by the United States with the Patent Trial and Appeal Board ("PTAB"). *See* Joint Prelim. Status Report at 4 & n.2, ECF No. 51.

The first contested matter that required the court's resolution was the government's motion for more definite statement, ECF No. 9, filed concurrently with a motion to dismiss for lack of subject matter jurisdiction, ECF No. 8. *See* Def.'s Mot. for a More Definite Statement at 1 n.1 ("The government has concurrently, but separately, filed a motion to dismiss for lack of subject matter jurisdiction."). In these motions, the United States contended that "[b]ecause the Complaint fails to identify an accused[ly infringing] surveillance system, a more definite statement is necessary to provide minimal fair notice in this case." *Id.* at 1. In the course of briefing these related motions, "the government . . . concede[d] that plaintiffs have standing to bring the present suit," and the court accordingly denied the government's motion to dismiss for

---

patent are both titled "Security System and Method with Realtime Imagery," '085 Patent at 1, '980 Patent at 1.

[2]The United States sought to notice a number of government contractors who could potentially be required to indemnify the United States, see ECF Nos. 23, 25, 30, 79, 163, & 183, and, upon approval by the court, notice was eventually issued to 14 such entities, see ECF Nos. 42-49, 82-85, 165, & 191. Of the various contractors to whom notice issued, ten eventually joined in this action. See ECF Nos. 54, 57, 64, 67, 70, 78, 94, 97, 100, & 102. Of this group, a number were thereafter dismissed without prejudice as it became apparent to plaintiffs that various defendant-intervenors were not infringing, based on available information. See ECF Nos. 132 (motion to dismiss Diebold, Inc., FLIR Detection, Inc., CACI NSS, Inc., and Leidos, Inc.), 147 (motion to dismiss Datawatch Systems, Inc.), & 171 (motion to dismiss Tyco Integrated Security LLC). At present, the remaining defendant-intervenors are, as listed in the caption of the case, Elbit Systems of America, LLC, General Dynamics One Source, LLC, Northrop Grumman Systems Corporation, and Vidsys, Inc.

3

lack of subject matter jurisdiction that had been filed on that ground. *See 3rd Eye Surveillance, LLC v. United States,* 124 Fed. Cl. 438, 440-41 (2015). The government's motion for a more definite statement, however, was granted "because the complaint does not specifically identify the accused system '[leaving] the government [] to guess what systems allegedly infringe on the asserted patents.'" *Id*. at 442. The court directed "plaintiffs to amend their complaint to explain why they believe that certain government agencies and third-party contractors to the government have infringed the patents at issue . . . [; specifically,] plaintiffs should submit an amended complaint that provides the government with the publicly available information upon which they relied to bring their claims before the court." *Id*. at 440.

After plaintiffs filed their first amended complaint, the United States submitted a suite of motions to notify various government contractors, who the government asserted, "pursuant to the patent indemnity clause in each underlying contract . . . may have an interest in the subject matter of this suit." *E.g.*, Def.'s Opposed Mot. to Notice Third Parties, at 3, ECF No. 23 (seeking to notice former defendant-intervenors IndigoVision, Ltd. and Datawatch Systems, Inc.). The court held a hearing on the government's initial motions on March 24, 2016, and granted them on April 5, 2016. *See 3rd Eye Surveillance, LLC v. United States*, 126 Fed. Cl. 266 (2016). As the court noted, the parties primarily disputed whether "the government ha[d] sufficiently alleged that the third-party entities have an interest in the present action such that notice . . . is necessary or appropriate." *Id*. at 273. In that respect, the court disagreed with plaintiffs' assertion that, to sufficiently allege an interest in the present action, the government must satisfy the standard set forth in *Twombly* and *Iqbal*. *Id*. at 273-75 (addressing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). The court granted the government's motions to notice eight entities that may have an interest in this case, *id.* at 277, with notice sent to those eight entities on April 13, 2016, ECF No. 42-49. Thereafter, the government filed two further motions to notice interested parties, one on July 8, 2016, *see* ECF No. 79, to notice four additional interested parties, which the court granted the same day, *see* Order of July 8, 2016, ECF No. 80, and a second filed August 23, 2017, ECF No. 163, to notify one more additional interested party, which the court also granted on the same day, *see* Order of Aug. 23, 2017, ECF No. 164.

Four entities that received notice, Tactical Micro, Inc., Indigo Vision, Ltd., Security Operations Group International, LLC, and Technical Communities, Inc., did not enter an appearance and did not assert an interest in this case. Of the remaining ten, six were subsequently dismissed without prejudice. *See generally* [First] Order of June 15, 2017, ECF No. 146 (dismissing Diebold, Inc., FLIR Detection, Inc., CACI NSS, Inc., and Leidos, Inc.); [Second] Order of June 15, 2017, ECF No. 148 (dismissing Datawatch Systems, Inc.); Order of Nov. 16, 2017, ECF No. 175 (dismissing Tyco Integrated Security, LLC).

With the parties identified, the case proceeded apace with preliminary discovery and the exchange of tentative infringement and invalidity contentions, until plaintiffs filed a motion to compel the government's responses to certain requests for production of documents. *See* Pls.' Mot. to Compel Gov't to Produc. Docs. & Overrule Objs., ECF No. 126. The government resisted producing the documents that plaintiffs sought, arguing that the requests for production were "vague with respect to time," disproportionate to the needs of the case, *id.* at 2-3, and, specifically as to production of allegedly infringing source code, inappropriate because "source

code should only be produced where the requesting party is able to show that it is actually relevant to the infringement theories advanced against a particular instrumentality," *id.* attach 3, at 3. Plaintiffs further sought source code employed in United States embassies, but asserted no claims in the complaint as to those installations. *Id.* Attach. 3, at 4. In addition, Grumman specifically declined to produce certain documents "that it [wa]s prohibited from producing due to federal government restrictions." *Id.* at 7. All of these contentions save the first – the time period for which plaintiffs could assert claims to damages for infringement – were addressed in an order issued June 16, 2017. *See* Order of June 16, 2017, 2017 WL 2609233, ECF No. 149.

After the parties' briefing and the resolution of most of the issues raised in plaintiffs' motion, the court, in the third major milestone in this strongly-contested litigation, issued an opinion and order resolving the parties' contentions as to the time period for which the United States was required to produce documents potentially relevant to plaintiffs' claims. *See 3rd Eye Surveillance, LLC v. United States*, 133 Fed. Cl. 273 (2017). The court, at a hearing held on June 14, 2017, had requested supplemental briefing "regarding whether systems installed prior to February 12, 2013[,] are within the scope of potentially infringing systems, to assess whether the government should be compelled to produce documents regarding such systems." *Id.* at 275 & n.1. Following the completion of briefing, the court concluded that "the assignment of the '085, '344, and '980 patents to Discovery Patents d[id] not fall within a recognized exception to the Assignment of Claims Act, but rather fit[] squarely within the ambit of claim assignments that Congress sought to bar." *Id.* at 277. Accordingly, the court concluded that "any systems first procured or used by the government prior to February 12, 2013[,] are not within the scope of potentially infringing systems in this case . . . unless such systems were modified or upgraded to become infringing after that date." *Id.* at 278.

While the notice and discovery disputes were underway in this court, the United States was advancing petitions for *inter partes* review before the PTAB. *See* Joint Prelim. Status Report at 3-4 & n.2. The United States filed six petitions for *inter partes* review, in which it sought "a ruling of invalidity for every claim in each of the three patents-in-suit." *Id.* at 4.[3] The PTAB declined to institute *inter partes* review proceedings on five of the applications, *see Department of Justice v. Discovery Patents, LLC*, IPR2016-01035, Paper No. 11 (P.T.A.B. Nov. 15, 2016); *Department of Justice v. Discovery Patents, LLC*, IPR2016-01037, Paper No. 11 (P.T.A.B. Nov. 15, 2016); *Department of Justice v. Discovery Patents, LLC*, IPR2016-01038, Paper No. 10 (P.T.A.B. Nov. 15, 2016); *Department of Justice v. Discovery Patents, LLC*, IPR2016-01039, Paper No. 10 (P.T.A.B. Nov. 15, 2016); *Department of Justice v. Discovery Patents, LLC*, IPR2016-01040, Paper No. 10 (P.T.A.B. Nov. 15, 2016), but instituted

---

[3]The *inter partes* review petitions were: IPR2016-01035 (seeking to invalidate claims 1-16 of the '344 patent); IPR2016-01037 (seeking to invalidate claims 1-6 and 56 of the '085 patent), IPR2016-01038 (seeking to invalidate claims 7-37 of the '085 patent); IPR2016-01039 (seeking to invalidate claims 38-55 of the '085 patent); IPR 2016-01040 (seeking to invalidate claims 1-10 of the '980 patent); and IPR2016-01041 (seeking to invalidate claims 11-31 of the '980 patent). *See* Joint Prelim. Status Report at 4 & n.2. All of the petitions by the United States were filed on May 13, 2016.

proceedings on the sixth application, eventually finding claims 11-12, 14, 16-18, and 20-31 of the '980 patent were "unpatentable over the cited prior art," *see Department of Justice v. Discovery Patents, LLC*, No. IPR2016-01041, Paper No. 29, 2017 WL 5446312, at *8, 15 (P.T.A.B. Nov. 9, 2017). Plaintiffs did not appeal. *See* Notice of IPR Decision at 2, ECF No. 103.[4]

After the resolution of the notices to interested third parties, the parties' discovery disputes, and the United States' petitions for *inter partes* review, the parties submitted a joint claim construction statement, ECF No. 193, and opening briefs and responses regarding claim construction. In their briefing, the parties advanced their preferred definitions of certain relevant, disputed claim terms found in one or more of the three patents at issue. Concurrently, defendant-intervenor Grumman, joined by the United States and all other defendant-intervenors, moved for judgment on the pleadings on the grounds that "[t]he asserted claims are directed to[ ] unpatentable abstract idea[s] and do not contain an[y] inventive concept[s]." Def.-Intervenors' Mot. at 1. Plaintiffs then moved for leave to file a Second Amended Complaint. *See generally* Pls.' Rule 15(a)(2) Mot. for Leave to Amend Compl., ECF No. 205.

On September 25, 2018, in the fourth milestone decision of this case, the court issued an opinion and order construing thirteen terms across the three patents at issue, denying defendant-intervenor Grumman's motion for judgment on the pleadings, and permitting the plaintiffs to amend their complaint. *See 3rd Eye Surveillance*, 140 Fed. Cl. 39. The resulting amended complaint, plaintiffs' second amended complaint of October 7, 2018, is currently the operative version.

After the court's opinion in September 2018, discovery should have proceeded without any other significant delays. Unfortunately, this did not happen. Discovery disputes arose and multiplied in the following months, with ten (often duplicative) motions outstanding at one point. To help resolve the outstanding issues, the court held a hearing on March 11, 2019. *See* Hr'g Tr. (Mar. 11, 2019). Shortly after the hearing, the court summarily dismissed five of the outstanding motions, mostly as moot due to subsequent filings, and deferred a sixth. *See* Order of Mar. 21, 2019, ECF No. 281.[5] Now, the court is charged with the task of ruling on the remaining five

---

[4]The propriety of the United States' invocation of *inter partes* review is pending before the Supreme Court in *Return Mail, Inc. v. United States Postal Serv.*, 868 F. 3d 1350 (Fed. Cir. 2017), *cert. granted*, 139 S. Ct. 1237 (Oct. 26, 2018) (No. 17-1594) (limited to question 1) (argued Feb. 19, 2019).

[5]The order denied as moot plaintiffs' Motion for Discovery Scheduling Order, ECF No. 253; denied without prejudice Elbit's Motion for a Protective Order, ECF No. 254; denied as moot Defendants' Cross-Motion for Discovery Scheduling Order, ECF No. 255; denied as moot plaintiffs' Motion for Extension of Time, ECF No. 256; deferred ruling on plaintiffs' Motion for a Protective Order, ECF No. 256; and denied defendants' First Motion to Compel Various Discovery, ECF No. 258.

motions.[6] In doing so, the court must answer a question that has shadowed this litigation from the very beginning: whether, with the information before the court at this juncture, the plaintiffs may have access to the source code for systems they allege infringe upon their patents.

## STANDARD FOR DECISION

"Questions of the scope and conduct of discovery are, of course, committed to the discretion of the trial court." *Florsheim Shoe Co. v. United States*, 744 F.2d 787, 797 (Fed. Cir. 1984). Accordingly, resolution of a motion to compel discovery is committed to that discretion. *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1022 (Fed. Cir. 1986). When deciding motions to compel, the "court must balance potentially conflicting goals," *Petro-Hunt, L.L.C. v. United States*, 114 Fed. Cl. 143, 144 (2013), with the understanding that "[m]utual knowledge of all relevant facts gathered by both parties is essential to proper litigation," *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).

## ANALYSIS

### A. *The Government's Motion for Protective Order*

The broadest issue before the court stems from the government's motion for a protective order. *See* Def.'s Mot. for Protective Order. In this motion, the government asks the court to enforce a protective order issued on August 17, 2017, *see* Order of Aug. 2017, ECF No. 162, which cabined early, preliminary discovery to certain bellwether security systems that the plaintiffs selected, *see* Def.'s Mot. for Protective Order at 7. Alternatively, the government also asks the court to enter a new protective order of the same scope, *i.e.*, a renewed version of the court's earlier protective order. *Id.* at 7-10.

This litigation was in its infancy at the time the court entered a protective order on August 17, 2017. That order was directed at preliminary discovery in aid of resolving disputes over over claim construction, identification of appropriate intervening defendants, amendments to the complaint, and motions for a judgment on the pleadings. Indeed, fact discovery on those aspects of the case was completed on October 30, 2017. Now, however, the parties are (or at least should be) in discovery that addresses all outstanding issues. And although discovery is subject to "'ultimate and necessary boundaries,'" "discovery rules 'are to be accorded a broad and liberal treatment.'" *DNC Parks & Resorts at Yosemite, Inc. v. United States*, 137 Fed. Cl. 709-10 (2018) (quoting *Hickman*, 329 U.S. at 507); *see also Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1322 (Fed. Cir. 1990) ("[T]he Federal Rules . . . unquestionably allow broad discovery."). Although Rule 26(c) permits parties to seek protective orders respecting information that is "outside the scope permitted by RCFC 26(b)(1)," *DNC Parks*, 137 Fed. Cl. at 710 (citing RCFC 26(b)(2)(C)(iii)), any protective order must be "appropriately tailored," *id.* (citing RCFC 26(c)). In this instance, limiting the scope of discovery in this case to that allowed by the order of August 17, 2017, would be counter to Rule 26(c) and to the spirit of discovery in

---

[6]As the court deferred ruling on the plaintiffs' motion for protective order in its ruling on March 21, 2019, it will be addressed in this opinion.

general. *See, e.g.*, *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365 (Fed. Cir. 2006) ("[The] discovery regime under the Federal Rules of Civil Procedure [is broad], especially given the particular importance of discovery in complex patent cases.") (citations omitted). The protective order entered in 2017 was "appropriately tailored" to the specific preliminary procedural posture that existed at that time but is now out of date.

Accordingly, the government's motion for protective order is DENIED. The government is still entitled, of course, to move for a more "appropriately tailored" protective order reflecting the current procedural posture of this litigation. It may also object to certain requests by the plaintiffs that it views as overbroad or otherwise not in accord with Rule 26.

B. *Discovery of Source Code*

The salient matter before the court is one that has bedeviled this litigation from the very beginning: the discovery of source code. Three of the remaining motions find their roots in this contentious area,[7] and the court now holds that the plaintiffs have not demonstrated a particularized and good faith showing to compel the discovery of source code. Relatedly, the court also holds that the plaintiffs are not, and cannot be, immunized from the defendant's discovery requests in the absence of access to source code and must respond to the various interrogatories and other document production requests filed by the defendants.

The plaintiffs claim they require the source code underpinning the multitude of the government's security systems that rely on real-time video, imagery, or information, and that automatically and contemporaneously alert responders about emerging issues. They particularly emphasize that their expert, Mr. Joseph McAlexander, "cannot form opinions concerning [potential] infringement," without such access. Pls.' Reply Addressing Open Issues . . . ("Pls.' Reply"), ECF No. 273. Much of their argument relies on the fact that "[p]laintiffs have proffered the testimony of a qualified expert, Joseph McAlexander," *id.* at 5, and that the defendants have "offer[ed] nothing to contradict [this] testimony," *id.* In the view of the plaintiffs, then, "physical inspection and source code discovery is required." *Id.* at 14.

Concurrently, plaintiffs request that the court either extend their time to respond to the government's various discovery requests or enter a protective order preventing government discovery "until [p]laintiffs can have access to the [allegedly] infringing computer systems and source code." Pls.' Mot. for Protective Order at 7. In short, plaintiffs assert that the discovery of source code is a threshold issue and that no other discovery should (or could) occur until they receive access. *See id.*; *see also generally* Pls.' Reply.

The government, joined by the defendant-intervenors, counters that "ample ground exists for exercising caution before [p]laintiffs are entitled to source code discovery." *See* Defs.' Resp. to Pls.' Consol. Br. ("Defs.' Resp."), ECF No. 271, at 2. Specifically, they argue that the "[p]laintiffs have never shown any need for source code discovery." *Id.* And "[i]t is well-settled that filing a patent infringement action does not *per se* entitle a plaintiff to see the defendant's

---

[7] (1) Pls.' Mot. for Protective Order; (2) Pls.' Mot. to Compel; (3) Def.'s Mot. to Compel.

source code.  Rather, the plaintiffs must 'make a showing of need and relevance' *before* taking any source code discovery." *Id*. (quoting *Drone Techs., Inc. v. Parrot S.A.*, 838 F.3d 1283, 1300 (Fed. Cir. 2016)) (emphasis in source).  They further claim the plaintiffs "made no effort to identify any specific systems that might be infringing.  Nor do they cite any evidence to support their contentions." *Id.* at 4-5 (internal citation omitted).  Defendants also point to the sparse infringement contentions made by the plaintiffs.  *Id.*

As further support for of their motion to compel, the defendants argue that their discovery requests "sought to reduce the amount and scope of testimony that would be required at trial," and all "were directed at information known to [p]laintiffs or matters that, with minimal inquiry, were reasonably available to [p]laintiffs." Def.'s Mot. to Compel at 1.  They also note that "[p]laintiffs invited the United States to propound most of the requests" and are now "object[ing] to answering the very same discovery that they invited." *Id.*

The defendants' position can be summed crisply: plaintiffs have failed to show a good faith and particular basis to require source code discovery, nor does sufficient basis exist to allow the plaintiffs to avoid their discovery obligations under Rule 26.

"[D]iscovery rules are designed to assist a party to prove a claim it reasonably believes to be viable *without discovery*, not to find out if it has any basis for a claim." *Hitkansut LLC v. United States*, 119 Fed. Cl. 40, 47 (2014) (quoting *Micro Motion*, 894 F.2d at 1327) (emphasis in original).  "That [] discovery *might* uncover evidence showing that a plaintiff has a legitimate claim does not justify the discovery request." *Micro Motion*, 894 F.2d at 1327 (emphasis added).

Although plaintiffs claim the declaration of Mr. McAlexander is sufficient evidence of their need for source code discovery, it is not.  Mr. McAlexander did not state that he believes specific systems are infringing and that he needs access to source code to prove what he already reasonably believes is a viable an infringement claim.  Pls.' Mot. to Compel Ex. 1 ¶ 4 (McAlexander Decl.) ("At this time, I have not formed any opinion on the issue concerning whether any party is infringing the claims of the patents.").  On the contrary, Mr. McAlexander instead stated that he "can *best* form verifiable opinions concerning infringement . . . by being permitted the opportunity to inspect the . . . source code." *Id.*¶ 5 (emphasis added).

Notably, and perhaps most importantly, the patents themselves do not address source code in express terms.  Rather, the claims are written in terms of functionality, relying on computer technology and internet communications.  *See, e.g.*, *3rd Eye Surveillance*, 140 Fed. Cl. at 55-57, 59-60 (construing "security system central station" and "security system central monitoring station"), 70-71 (construing "wherein the additional information is automatically generated by the computer system," "analyzing the biometric information," and "analyze the biometric information."). Examining source code is not the only means to determining functionality, and to that end, plaintiffs should employ these other means before demanding source code.

In this respect, at this point, the plaintiffs have considerable factual materials in hand regarding the government's security systems.  They may desire and ultimately need more information, but the government and the defendant-intervenors have produced "approximately

9

150,000 pages of documents" relating to the security systems at issue.  Pls.' Mot. to Compel at 12; *see also* Defs.' Resp. at 5.  Mr. McAlexander even states in his declaration that he "expect[s] to receive and examine production documentation relevant to [the] various surveillance systems" at issue to form an opinion on potential infringement.  Pls.' Mot. to Compel Ex. 1 ¶ 5.  And, as the government notes in its brief, the plaintiffs did not "disclose[] []even one page" of the 150,000 in support of their request for source code.  Defs.' Resp. at 5.

Plaintiffs claim that "proving infringement will require more than depositions of witnesses who have a financial stake in the outcome and more than just the production of [] documents."  Pls. Mot. to Compel at 24.  That very well may be true.  But depositions of witnesses and the production of documents may well allow the plaintiffs to hone their allegations to specific security systems or locations, rather than requesting "all source code operating [within] the government's security systems."  Pls.' Reply at 15.  At that point, perhaps the plaintiffs could show a particularized and good faith basis for the source code discovery that they seek.

The plaintiffs also fundamentally misconstrue the holding of *Baron Services., Inc. v. Media Weather Innovations LLC*, 717 F.3d 907 (Fed. Cir. 2013).  Far from "confirm[ing] that [p]laintiffs are entitled to source code discovery based on uncontroverted testimony from an expert," Pls. Reply at 6, the Federal Circuit's decision in *Baron Service* instead found that a "district court [had] prematurely granted summary judgment of noninfringement," *id*. at 914.  This case, however, is far from the summary judgment stage.  Nor is the court affirmatively stating that the plaintiffs could *never* be entitled to source code discovery.  Rather, the court holds that at the *present* time and with the *present* facts, the plaintiffs have not shown with enough particularity that they are entitled to source code discovery.

It may be that the plaintiffs are asking the court to tie the defendants' hands, with the goal of forcing them into a vulnerable position from which they must either "[c]omply or settle."  Pls.' Mot. to Compel at 21.  Not only is this fundamentally unfair and against the spirit of discovery, *see, e.g.*, *O2 Micro*, 467 F.3d at 1366, it could also add significant time and cost to this litigation, as plaintiffs' request for source code, if granted, would effectively pause the proceedings.  Alternatively, plaintiffs' request could be construed as a fishing expedition, enabling them to search through the entirety of the source code to find instances they believe infringe upon their patents, which would be precisely the kind exercise the court held to be invalid in *Hitkansut*.  *See, e.g.*, *Hitkansut*, 119 Fed. Cl. at 47.

Accordingly, the plaintiffs' motions to compel source code discovery and for a protective order are DENIED.  The plaintiffs have not demonstrated with any specificity that they require access to defendants' source code.  Plaintiffs have not properly explained why existing discovery, such as manuals, technical documents, and other non-source code information, is insufficient for them to establish infringement of particular systems.[8]

---

[8]This is not to say plaintiffs are without options.  For example, the plaintiffs could still ask the defendants about surveillance systems that have online capabilities and a central station that handles real time video, imagery, and data, and that contemporaneously and automatically

10

C. *Discovery of Classified Systems*

The court finds that plaintiffs have no basis for discovery of classified systems, as of now. *See Hitkansut*, 119 Fed. Cl. at 49-50. The security systems potentially at issue deal with some of the most sensitive locations to national security. Classified systems are mentioned in the parties' briefing and argument, *see, e.g.*, Def.'s Mot. for Protective Order at 4, Hr'g Tr. 7:12-24 (Mar. 11, 2019), but the associated issues have not been fleshed out, Hr'g Tr. 11:17 to 12:1 (Mar. 11, 2019). Although it has yet to be formally raised by the government, the court suggests that the classified designation, or the state-secrets privilege, would be compelling if invoked. *See id.* (citing *Crater Corp. v. Lucent Techs., Inc.*, 423 F.3d 1260, 1265 (Fed. Cir. 2005), and *Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 53 (D.D.C. 2010)).

D. *Defendants' Motion to Compel*

Contrastingly, the defendants seek to compel the plaintiffs to participate in the discovery process. *See* Def.'s Mot. to Compel. at 7 ("[Plaintiffs'] refusal to answer any discovery request until they receive software and source code violates both the letter and spirit of th[e] [c]ourt's [r]ules."). In support, the defendant cites to Rules 26, 33, 34, and 36, stating "[p]laintiffs have an affirmative obligation to disclose the requested information and documents as well as make the requested admissions." *Id.* at 8 (citing RCFC 26(b)(1), 33(b), 34(b), 36(a)). Plaintiffs oppose the defendant's motion, contending that "[u]ntil [p]laintiffs can have full discovery of all government operating systems, including those implemented by the contractors, [p]laintiffs are not in a position to form meaningful contentions in this matter or respond to contention discovery." Pls.' Mot. for Protective Order at 6. Plaintiffs' rationale for opposing the motion to compel largely echos the reasoning behind their motion for a protective order.

The court can discern no just reason to deny the defendant's motion to compel discovery. As discussed previously, discovery is a two-way street designed to facilitate the flow of information, and the plaintiffs cannot use their own inability to pinpoint specific systems to stymie that process. Denying the defendant's motion to compel would add only further delay (and cost) to this already protracted litigation.

The court recognizes the duality of its opinion, *i.e.*, granting the defendant's motion to compel while denying the plaintiffs' motion. But the two motions are factually distinct. The plaintiffs cast a wide net in their attempt to uncover evidence of infringement (or force settlement). In contrast, the defendant seeks to identify the source of disagreement through targeted interrogatories and other requests designed to pinpoint potentially infringing systems. Rather than broadening the scope of this litigation, the defendant seeks to narrow it to the areas of actual dispute.

---

transmits information to responders, *i.e.*, the types of systems plaintiffs claim infringe upon their patents. Plaintiffs could also ask about any systems that are *not* operated in this fashion but have the capability of doing so, either as they stand or with minor tweaks.

11

As with their own motion, the plaintiffs are not without options.  They still have the right to object to overbroad interrogatories or other discovery requests made by the defendants.  But the plaintiffs cannot refuse to respond to *any* and *all* discovery by the government and defendant-intervenors solely on the grounds they require source code.  It is up to the plaintiffs, not the government, to identify the specific systems they believe are being infringed.

## CONCLUSION

For the reasons stated, defendant's motion to enforce the protective order entered August 17, 2017, or issue a new protective order, is DENIED.  Plaintiffs' motion to compel discovery as to source code is DENIED.   Plaintiffs' motion for an extension of time to respond to discovery and for a protective order is DENIED.[9]  Defendant's motion to compel interrogatory responses and document production is GRANTED, but the attendant motions to determine the sufficiency of objections and to deem as admitted certain requests for admission are DENIED.

On or before June 21, 2019, the parties are invited to propose a new schedule for discovery and other preparatory proceedings, taking into account this ruling.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Senior Judge

---

[9] Plaintiffs' motion for reconsideration of the court's order of March 11, 2019, is also DENIED.