# In the United States Court of Federal Claims

No. 15-501C

(Filed: July 15, 2021)

<table>
<tr><td>

**3RD EYE SURVEILLANCE, LLC and DISCOVERY PATENTS, LLC,**

     Plaintiffs,

**v.**

**UNITED STATES,**

     Defendant,

     **and**

**ELBIT SYSTEMS OF AMERICA, LLC, GENERAL DYNAMICS ONE SOURCE LLC, and NORTHROP GRUMMAN SYSTEMS CORPORATION,**

     Defendant-Intervenors.

</td><td>

Patent case; order denying a nonparty access to sensitive confidential and proprietary information; RCFC 71; constraints of protective order

</td></tr>
</table>

Steven A. Kennedy, Kennedy Law, P.C., Dallas, Texas, for the plaintiffs.

James P. Hughes, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on briefs were Sara Harrington, Deputy Assistant Attorney General, Civil Division, and Gary L. Hausken, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

Kurt G. Calia, Covington & Burling LLP, Palo Alto, California, for defendant-intervenor Elbit Systems of America, LLC.

Scott Andrew Felder, Wiley Rein, LLP, Washington, D.C., for defendant-intervenor General Dynamics One Source LLC.

Gregory H. Lantier, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C., for defendant-intervenor Northrop Grumman Systems Corporation.

Rena Andoh, Sheppard Mullin Richter & Hampton, LLP, New York, New York, for nonparty Science Applications International Corporation. With her was Daniel N. Yannuzzi, Sheppard Mullen Richter & Hampton LLP, San Diego, California, and Kelly McCullough, Sheppard Mullin Richter & Hampton LLP, New York, New York.

## OPINION & ORDER

LETTOW, Senior Judge.

In this complicated patent case involving security installations at a number of federal facilities, pending before the court is the government's motion to permit nonparty Science Applications International Corporation ("SAIC") to view and access sensitive confidential and proprietary materials submitted subject to the protective order previously entered. Def.'s Mot., ECF No. 499. The court earlier had ordered plaintiffs to designate eleven bellwether systems alleged to infringe the patent in suit "[i]n an effort to advance the case" and to "rein in its scope." Order of July 28, 2000, ECF No. 381 at 1. The materials involved in the motion relate to Bellwether Systems 4 and 5, the government's Barometric Entry/Exit Systems ("BEES"), deployed at two airports. SAIC operates Bellwether systems 4 and 5 but has opted not to intervene in this case. *Id.* at 1 n.1, 2. The government seeks to permit outside counsel for SAIC to access materials covered by the protective order both for the purposes of responding to plaintiff's motion for partial summary judgment as to Bellwether systems 4 and 5 and in the future. *Id.* at 3-5. The court finds that the language of the protective order itself forecloses access to nonparties, particularly given the complex and sensitive nature of the confidential information covered by the protective order in this case. The government's motion, therefore, is DENIED.

## BACKGROUND

### I. Protective Order

The court adopted a protective order on March 8, 2017. Protective Order, ECF No. 122. In addition to the government and plaintiffs, this initial protective order provided that persons who were qualified to access materials under the protective order included "the attorneys for any other entity that appears in this lawsuit as an intervenor or third party who are outside counsel . . . . [O]utside counsel are only Qualified Persons to receive Proprietary and Competition Sensitive Information from or belonging to 3rd Eye and Discovery Patents or the United States of America, and are not Qualified Persons to receive Proprietary or Competition Sensitive Information from or belonging to other intervenor-defendants." Protective Order § 3(c).

In September 2020, plaintiffs filed a motion for clarification regarding the ability of outside counsel for the intervening defendants to view competition sensitive or proprietary information of other intervenors. Pl.'s Mot. for Clarification, ECF No. 401. Plaintiffs proposed three courses of action, including that "[d]ocuments marked as confidential . . . be restricted to counsel who have made an appearance in the case and are still actively representing parties in the litigation." *Id.* at 3-4. Defendants largely agreed with this change and proposed changing paragraph 21 of the protective order and removing the above quoted language forbidding outside counsel for the third-party defendant intervenors from accessing other intervenors' proprietary

information. Def.'s Resp. to Pl.'s Mot. for Clarification, ECF No. 415. Defendants sought a solution that would "permit outside counsel, as defined in Section 3(c) of the Protective Order, for currently participating parties to view documents that contain competition sensitive or proprietary information." *Id.* at 2. The court granted plaintiffs' motion and adopted defendants' proposed revisions. *See* Order of Nov. 2, 2020, ECF No. 441.[1] The court issued the amended protective order on November 24, 2020. *See* Am. Protective Order, ECF No. 447.

## II. SAIC's Involvement in Litigation

Throughout the course of litigation, the government has filed numerous motions to provide notice to interested parties. These actions have resulted in ten third-party defendants intervening in the case.[2] Most recently, on September 9, 2020, the government filed a motion to notify Unisys Corporation and SAIC. *See* ECF No. 404. Both entities were the awardees of procurements related to Bellwether systems 4 and 5. *Id.* The court granted the motion, *see* Order of Sept. 14, 2021, ECF No. 412, and the notices were issued on September 28, 2020, *see* ECF No. 426. Pursuant to Rule 14 of the Rules of the Court of Federal Claims ("RCFC"), if SAIC wished to file a complaint or answer, it had to do so within 42 days after service of the notice. RCFC 14(c).[3] SAIC did not file a response or otherwise intervene in the case. Counsel for SAIC has since confirmed that SAIC did not seek to intervene. *See* Hr'g Tr. 18:13-17 (May 4, 2021) (Counsel for SAIC: "SAIC declined to participate in the case when we were noticed . . . [;] we declined to intervene in the action when we were noticed.").

On February 12, 2021, plaintiffs filed a motion for contempt against SAIC. *See* ECF No. 465. Plaintiffs alleged that SAIC failed to produce documents responsive to plaintiffs' subpoena. *Id.* SAIC objected to plaintiffs' motion and filed a cross-motion for fees and costs. *See* ECF No. 472. The motions were fully briefed, Pls.' Reply & Resp., ECF No. 474; SAIC's Reply, ECF No. 476, and the court denied both motions but scheduled a hearing to address discovery shortcomings outlined by the parties in their motions, *see* Order of April 27, 2021, ECF No. 484.

On April 1, 2021, prior to the court's denial of the motions, outside counsel for SAIC filed applications for access to protected materials for four individuals. *See* ECF Nos. 479-82. The court terminated those motions on April 5, 2021, without granting access under the protective order. The court held the discovery hearing on May 4, 2021. During the hearing,

---

[1] Plaintiffs additionally requested that the court direct the parties to confer regarding protocols for addressing materials subject to International Traffic in Arms Regulations ("ITAR"). Pl.'s Mot for Clarification at 4. Defendants instead requested an amendment to the protective order regarding procedures for managing ITAR information. Def.'s Resp. to Pl.'s Mot for Clarification at 3-4. Although plaintiff objected to the request absent a conference among the parties, *see* Pl.'s Reply at 2-3, ECF No. 425, the court adopted the ITAR language proposed by defendants, *see* Order of Nov. 2, 2020.

[2] Several of these intervenors have since been dismissed from the case.

[3] Counsel of Unisys entered an appearance for the purposes of seeking an extension of time to file an answer to plaintiffs' amended complaint, *see* ECF Nos. 448-50, but ultimately withdrew, *see* ECF No. 457.

counsel for SAIC requested access to pertinent protected information under the protective order. Hr'g Tr. 30:11-20 (May 4, 2021). The court informed SAIC that "the Court only admits to the protective order parties," and that SAIC, as a nonparty, would need to file a motion to amend the protective order to be permitted to access information subject to the protective order. Hr'g Tr. 30:21 to 32:4.

On May 27, 2021, plaintiffs filed a motion for partial summary judgment as to Bellwether Systems 4 and 5. *See* ECF No. 495. The government sought an extension of time to respond and filed a motion to permit SAIC to access information filed under the protective order on June 22, 2021. *See* Def.'s Mot. The government argues that the language of the protective order permits outside counsel for nonparties to access information. *Id.* at 2-3. The government further asserts that the government requires SAIC to have access to the sealed filings for the government "to provide the most fulsome and comprehensive opposition possible to [plaintiffs'] Summary Judgment Motion." *Id.* at 4. SAIC filed a notice of joinder in the motion. *See* SAIC's Notice of Joinder to the Govt.'s Mot., ECF No. 501. Plaintiffs filed a response opposing the motion, Pls.' Resp., ECF No. 503, and the government filed a reply, Def.'s Reply, ECF No. 504.

## STANDARDS FOR DECISION

It is a fundamental principle of federal courts that rulings of the court do not, by default, bind nonparties to the litigation. *See, e.g.*, *In re Trans Texas Holdings Corp.*, 498 F.3d 1290, 1297 (Fed. Cir. 2007) (noting that, for res judicata, "the presumption that nonparties are not bound by a judgment can only be rebutted in limited circumstances." (citations and internal quotation marks omitted)). There are few instances where a court can bind a nonparty. *See* 12 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3033 (3d ed.) (discussing the instances when nonparties can be bound by a court's order). Under such a circumstance, Rule 71 of the Rules of the Court of Federal Claims provides that "[w]hen an order . . . may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party." RCFC 71. This rule, adopted to align with Rule 71 of the Federal Rules of Civil Procedure, is generally used to enforce subpoenas against nonparties to a proceeding. *See* RCFC 71, Rules Committee Note.[4]

The court's ability to enter protective orders stems from the "inherent equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 (1984) (citations and internal quotation marks omitted). "The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders," which includes "broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required." *Id.* at 36; *see also In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 413 (E.D.N.Y. 2007) ("Courts are endowed with broad discretion to tailor protective orders to the circumstances of a particular litigation.") (citation omitted). Further, trial courts are best positioned to interpret the language of their own orders, including protective orders. *See Home Port Rentals, Inc. v. Ruben*, 957 F.2d 126, 131

---

[4] For example, "[u]nder Rules 30(d) and 37(a)(5) a person not a party may be held liable for expenses and attorney's fees in connection with discovery." Wright and Miller, *Federal Practice and Procedure* § 3033.

(4th Cir. 1992) ("It is peculiarly within the province of the district court . . . to determine the meaning of its own order.") (citation omitted).

## ANALYSIS

Given the language of the protective order, the sensitive nature of the confidential information related to the federal security installations at issue in this case, and the concerns raised by the parties surrounding adoption of the protective order, the court finds that outside counsel for nonparties are not "qualified persons" under the definition provided in Section 3(c). Included within the definition of "qualified persons" are "attorneys for any other entity that appears in this lawsuit as an intervenor or third party who are outside counsel." Am. Protective Order § 3(c). The government suggests that outside counsel for SAIC meets the definition of qualified persons because SAIC is a third party whose counsel has entered an appearance in this case, Def.'s Mot. at 2, albeit as counsel for another entity that was an intervening defendant but was later dismissed from this case. Under the government's reading of the protective order, outside counsel for any nonparty who enters an appearance could access protected information. The court emphatically disagrees. In the court's view, "intervenor or third party" refers exclusively to a defendant-intervenor or third-party defendant to the litigation, not to any nonparty who enters an appearance for any purpose. SAIC is not a third-party defendant and therefore its outside counsel is not a qualified person under the protective order. Additional sections of the protective order bolster this interpretation. For example, section 4 defines the term "party" to include "3rd Eye, Discovery Patents, the [g]overnment, and any other entity that appears in this lawsuit as an intervenor or third party," Am. Protective Order § 4, indicating that nonparties, such as SAIC, would be excluded from the definition of a party for purposes of the protective order. Section 1(b) similarly lists nonparties as distinct from third parties. *Id.* § 1(b).

This interpretation aligns with concerns raised by the government and intervenors regarding prohibiting outside counsel for an intervening party from accessing proprietary information of other intervenors. Prior to the amendment, the protective order stated that outside counsel were "only Qualified Persons to receive Proprietary or Competition Sensitive Information from or belonging to 3rd Eye and Discovery Patents or the United States of America" but not such information "from or belonging to other intervenor-defendants in the matter." Protective Order § 3(c). Defendant and intervenors "propose[d] that the Protective Order include provisions stating that the proprietary or competition sensitive information procured by a particular third-party defendant need not be shared with litigation counsel representing other third-party defendants." Opp'n & Cross-Mot. to Pls.' Mot. for Protective Order, ECF No. 116. This recitation confirms that outside counsel for nonparties would **not** be included within the definition of "intervenor or third party" as provided in Section 3. Should defendants have believed that Section 3(c) included nonparties such as SAIC, the court would have expected defendants to suggest this interpretation during recent briefing surrounding clarification of the protective order. Instead, defendants sought to modify access for "outside counsel . . . for currently participating parties," Def.'s Resp. to Pls.' Mot. for Clarification, and made no reference to outside counsel for nonparties.

Further, concerns regarding the court's ability to bind nonparties to orders issued in this litigation counsel against granting the motion. This case does not present one of the limited circumstances when a nonparty can be bound, such as when a nonparty is in privity with a party

or otherwise benefits from the litigation. *See In re Trans Texas Holdings* Corp, 498 F.3d at 1297. The government states that plaintiffs will not be prejudiced by permitting outside counsel for SAIC to access protected information. Def.'s Mot. at 4. The court's concern, however, rests not with plaintiff but with the harm or prejudice to any party or nonparty who has provided proprietary or confidential information in discovery or otherwise in the litigation. This case presents a complex landscape of information pertinent to federal security installations involving multiple entities, only some of which are before the court. Plaintiffs acknowledge, and the court agrees, that fact witnesses provided confidential documents in response to subpoenas under the terms of the protective order which did not permit outside counsel for nonparties to access that information. *See* Pls.' Resp. at 8. While the government indicates that the defendant-intervenors have consented to their information being accessible to SAIC, *see* Def.'s Mot. at 4 ("Counsel for the other Defendant-Intervenors in this litigation . . . have consented to the Government's request"), consent of some of the parties does not alleviate the court's concerns. This case provides a complicated situation requiring specific tailoring to ensure that all entities' confidential materials remain protected. This court has adopted and amended the protective order in a manner that it believes appropriately meets the circumstances of this case. *See In re Zyprexa Injunction*, 575 F. Supp. 3d at 413.[5]

SAIC had the opportunity to intervene in the litigation, be bound by the orders of the court, and advocate its position or support for the government's defense but chose not to intervene. SAIC is not now entitled to circumvent the intervention process by accessing protected information and informally participating in the case as a nonparty who cannot be bound by the court's orders or judgments. This decision does not bar the government from following a normal discovery process to obtain information necessary to defend against the plaintiffs' claims as to Bellwether systems 4 and 5. The government can depose witnesses from SAIC as it could from any other nonparty with information pertinent to the claims against the government. Counsel of SAIC indicated that she is unaware of any restriction barring SAIC witnesses from providing testimony about the operations of the systems in question if subpoenaed. Hr'g Tr. 22:16 to 23:6 (May 4, 2021). Such depositions can both provide the government with the necessary information to support its arguments without running afoul of the protective order as it currently stands.

## CONCLUSION

For the reasons outlined above, the government's motion is DENIED. Outside counsel for nonparty SAIC shall not be permitted access to confidential or proprietary information under the protective order.

---

[5] The government additionally asserts that plaintiffs should have objected to SAIC's Applications for Access on or before April 5, 2021. Def.'s Mot. at 5. While the government is correct that plaintiffs did not object, the court does not deem any objection necessary because, as explained above, SAIC's applications were improper under the terms of the protective order and were not honored.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Senior Judge