# In the United States Court of Federal Claims

No. 15-501C

(Filed: August 27, 2021)

|  |  |  |
|---|---|---|
| **3ᴿᴰ EYE SURVEILLANCE, LLC and DISCOVERY PATENTS, LLC**, | ) ) ) ) | Patent case; motion to compel; adequacy of privilege logs; joint defense agreement; common interest doctrine |
| Plaintiffs, | ) ) | |
| **v.** | ) ) | |
| **UNITED STATES**, | ) ) | |
| Defendant, | ) ) | |
| **and** | ) ) | |
| **ELBIT SYSTEMS OF AMERICA, LLC, GENERAL DYNAMICS ONE SOURCE LLC, and NORTHROP GRUMMAN SYSTEMS CORPORATION**, | ) ) ) ) ) ) | |
| Defendant-Intervenors. | ) ) | |

Steven A. Kennedy, Kennedy Law, P.C., Dallas, Texas, for the plaintiffs.

James P. Hughes, Trial Attorney, Intellectual Property Section, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on briefs were Sara Harrington, Deputy Assistant Attorney General, Civil Division, and Gary L. Hausken, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

Kurt G. Calia, Covington & Burling LLP, Palo Alto, California, for defendant-intervenor Elbit Systems of America, LLC. Of counsel were Ranganath Sudarshan, Matthew Kudzin, Yiye Fu, Jennifer D. Cieluch, and Ryan Roberts, Covington & Burling LLP, Palo Alto, California.

Scott A. Felder, Wiley Rein, LLP, Washington, D.C., for defendant-intervenor General Dynamics One Source LLC.

Gregory H. Lantier, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C., for defendant-intervenor Northrop Grumman Systems Corporation.

**OPINION & ORDER**

LETTOW, Senior Judge.

Pending before the court in this patent infringement action is plaintiffs' motion to compel privilege logs and for other relief. *See* Pls.' Mot., ECF No. 511.  Plaintiffs assert that defendants have produced deficient privilege logs in response to plaintiffs' requests for production and have erroneously invoked a joint defense agreement to avoid providing adequate privilege logs. *See id.* at 11-12, 23.  Plaintiffs request, among other things, that the court conduct an *in camera* review of defendants' and nonparty Science Applications International Corporation's ("SAIC") joint defense agreement to determine whether the agreement "protect[s] communications from disclosure during discovery." *Id.* at 3.  Defendants counter that their privilege logs are sufficient under Rule 26(b)(5) of the Rules of the United States Court of Federal Claims ("RCFC"), *see* Defs.' Joint Resp. at 9-10, ECF No. 514, and that communications between and among themselves, nonparty SAIC, and other nonparties are protected by the so-called "Common Interest Doctrine," *id.* at 16-19.

Promptly after initial briefing of the motion was completed, *see* Pls.' Reply, ECF No. 516, the court directed defendants to produce the joint defense agreement for *in camera* inspection, *see* Order of August 9, 2021, ECF No. 517.  The court further requested that the parties file a stipulation outlining which non-governmental entities are providing services for each of the designated bellwether systems at issue that allegedly infringe plaintiffs' patents. *See id.*[1]  The joint defense agreement was tendered on August 25, 2021 and addressed by the court that same day, but the requested stipulation has not yet been submitted.

**BACKGROUND**

Plaintiffs filed suit in this court on May 15, 2015. *See* Compl., ECF No. 1.  The court has since adjudicated numerous disputes between and among the parties regarding discovery. *See, e.g.*, Order of June 16, 2017 (granting in part and denying in part plaintiffs' motion to compel), ECF No. 149; *3rd Eye Surveillance LLC, v. United States*, 133 Fed. Cl. 273 (2017) (denying plaintiffs' motion to compel); Order of August 17, 2017 (granting in part and denying in part defendant's motion for a protective order), ECF No. 162; *3rd Eye Surveillance, LLC v. United States*, 143 Fed. Cl. 103, 105 (2019) (adjudicating five motions related to "the discovery of defendants' source code for security systems the plaintiffs allege infringe on their patents").  At the core of the parties' most recent quarrel is a joint defense agreement initially executed by the United States ("the government") and defendant-intervenors Elbit Systems of America, LLC ("Elbit"), General Dynamics One Source LLC ("General Dynamics"), and Northrop Grumman

---

[1] Patent Nos. 6,778,085, 6,798,344, and 7,323,980 are the basis for plaintiffs' claims. Each relates to security systems with attendant imagery capabilities. *See 3rd Eye Surveillance, LLC v. United States*, 140 Fed. Cl. 39 (2018) (ruling on challenges to patent eligibility and on claim construction).

Systems Corporation ("Northrop Grumman") in July 2017. Defs.' Joint Resp. at 2. Nonparty SAIC joined the agreement on January 19, 2021. *Id.*[2]

Plaintiffs served requests for production on defendants on January 27, 2021, seeking "[a]ll communications after August 13, 2020" between and among the government, defendant-intervenors, and certain fact witnesses "regarding the [eleven] bellwether systems identified in ECF No. 385." Pls.' Mot. Ex. 3 at 13, ECF No. 511-1. The government, which had produced a privilege log in 2017, produced another privilege log on March 5, 2021 listing some details of the withheld communications requested by plaintiffs, including the date range, the privilege asserted, and the parties involved. *See* Pls.' Mot. Ex. 2 at 8-9, ECF No. 511-1; *see also* Defs.' Joint Resp. at 4.[3] On July 9, 2021, Elbit produced a privilege log identifying the joint defense agreement without any details as to date range or the parties involved. *See* Pls.' Mot. Ex. 1 at 2.[4] In addition, counsel for the government, Elbit, General Dynamics, and Northrop Grumman stated to plaintiffs' counsel that they would not otherwise "provide a log of privileged, post-litigation communications" in response to plaintiffs' requests for production. Pls.' Mot. Ex. 9 at 88 (email from counsel for Elbit to counsel for plaintiffs). Defendants represent that the withheld material is privileged because it comprises "communications shared among counsel for Defendants having a common legal interest in opposing Plaintiffs' allegations that one or more valid claims of the patents-in-suit are infringed." Defs.' Joint Resp. at 4-5.

## STANDARDS FOR DECISION

### A.  Motion to Compel Discovery

"Questions of the scope and conduct of discovery are, of course, committed to the discretion of the trial court." *Florsheim Shoe Co. v. United States*, 744 F.2d 787, 797 (Fed. Cir. 1984) (citation omitted). "Accordingly, resolution of a motion to compel discovery is committed to that discretion." *3rd Eye Surveillance*, 143 Fed. Cl. at 109 (citing *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1022 (Fed. Cir. 1986)). When deciding motions to compel, the "court must balance potentially conflicting goals," *Petro-Hunt, L.L.C. v. United States*, 114 Fed. Cl. 143, 144 (2013), with the understanding that "[m]utual knowledge of all the relevant

---

[2] Plaintiffs also asked the court to compel production of certain documents other than defendants' privilege logs and the joint defense agreement, *see* Pls.' Mot. at 14-20, but defendants subsequently represented that the "current versions of technical documents" requested by plaintiffs "have since been produced." Defs.' Joint Resp. at 1. Plaintiffs' request in that regard is thus moot.

[3] That log was not specific in identifying withheld materials. Instead, it uniformly referred to the relevant documents as "Emails and Attachments" and "Joint Defense Agreement" and the pertinent parties as "[entity] and or its counsel." Pls.' Mot. Ex. 2, at 8-9. Six of the entities named in the government's privilege log are currently non-parties to the case: *viz.*, Benchmark Electronics, Ins.; Tactical Micro, Inc.; PureTech Systems, Inc.; Unisys Corporation; Honeywell International, Inc.; and Vidsys, Inc., apart from SAIC. *Id.*

[4] Elbit's log lists the "Privilege Reason" as "Attorney-client privilege; Work product privilege; Common interest privilege." Pls.' Mot. Ex. 1 at 2.

facts gathered by both parties is essential to proper litigation," *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).

### B.   The Attorney-Client Privilege and the Work Product Doctrine

Both the attorney-client privilege and the work product doctrine are invoked by defendant and intervening defendants, who have entered into the joint defense agreement to preserve the privilege and protection for communications between and among them as to matters of common interest. *See* Defs.' Joint Resp. at 14-17. They particularly rely on their common interest notwithstanding the fact that each of the intervening defendants operates different bellwether systems for the government. *See* Plaintiffs' Notice of Designation of Bellwether Systems ("Pls.' Notice") at 1-2, ECF No. 385. The common interest doctrine "extends the attorney-client privilege to otherwise non-confidential communications in limited circumstances." *Evergreen Trading, LLC ex rel. Nussdorf v. United States*, 80 Fed. Cl. 122, 143 (2007) (citing *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007)); *see also B.E. Meyers & Co., Inc. v. United States*, 41 Fed. Cl. 729, 732 n.4 (1998) (noting that the "joint-defense doctrine" is also known as "the common-interest doctrine or the community-of-interest doctrine"). This doctrine "applies 'where the parties undertake a joint effort with respect to a common legal interest,' and is 'limited strictly to those communications made to further an ongoing enterprise.'" *Evergreen Trading*, 80 Fed. Cl. at 143 (quoting *BDO Seidman*, 492 F.3d at 816); *see also Cavallaro v. United States*, 284 F.3d 236, 249 (1st Cir. 2002) (quoting WEINSTEIN'S FEDERAL EVIDENCE § 503.21[1] (J.M. McLaughlin ed., 2d ed. 2002)) (additional citation omitted). "The common-interest doctrine . . . 'is not an independent basis for privilege, but an exception to the general rule that the attorney-client privilege is waived when privileged information is disclosed to a third party.'" *Cavallaro*, 284 F.3d at 250 (quoting E. S. EPSTEIN, *The Attorney-Client Privilege and the Work-Product Doctrine* 196 (4th ed. 2001)); *see also id.* ("[T]he common-interest rule presumes a valid underlying privilege.").

The common interest doctrine appertains when two or more clients retain an attorney on a matter of common interest and also "to communications made by the client or the client's 'lawyer to a lawyer representing another in a matter of common interest.'" *Cavallaro*, 284 F.3d at 249 (quoting WEINSTEIN'S FEDERAL EVIDENCE, *supra*, § 503.21[2]). "As with other communications that would be protected by the attorney-client privilege, the party asserting the privilege must also show that 'the communication in question was given in confidence and that the client reasonably understood it to be so given.'" *B.E. Meyers*, 41 Fed. Cl. at 732-33 (quoting *United States v. Schwimmer*, 892 F.2d 237, 244 (2d Cir. 1989)).

In determining whether the common interest doctrine applies to a given communication, the court must examine whether the communicator and recipient "share a common interest that is either legal or strategic in character and work together actively to pursue that interest." DAVID M. GREENWALD & MICHELE L. SLACHETKA, *Testimonial Privileges* § 1:105 (3d ed. 2021) (footnote omitted). This doctrine "should not be construed as narrowly limited to co-parties. So long as transferor and transferee anticipate litigation against a common adversary on the same issue or issues, they have strong common interests in sharing the fruit of the trial preparation efforts." *United States v. American Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980). Even so, desiring the same outcome in a legal matter "is insufficient to bring a communication between two parties within this exception. Instead, the parties must make the communication in

pursuit of a joint strategy in accordance with some form of agreement—whether written or unwritten." *In re Pacific Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012) (internal citation omitted). If so qualified, the communications are "privileged as against third persons." Restatement (Third) of the Law Governing Lawyers § 76(1) (Am. Law Inst. 2021).[5]

## ANALYSIS

### A. Defendants' Privilege Logs

Plaintiffs contend in their motion that defendants have failed to produce adequate privilege logs and ask that the court compel production of the documents withheld by defendants. *See* Pls.' Mot. at 1-2, 11-13. As noted, the government has produced two privilege logs so far, *see* Defs.' Joint Resp. at 9, and Elbit has produced a one-page log simply listing the joint defense agreement, *see* Pls.' Mot. Ex. 1 at 2.[6]

By rule, a party withholding "information otherwise discoverable by claiming that the information is privileged" must, at a minimum, "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." RCFC 26(b)(5)(A). "When a party invokes the attorney-client privilege by providing a privilege log, 'the description of each document and its contents must be sufficiently detailed to allow the court to determine whether the elements of attorney-client privilege . . . have been established.'" *Deseret Mgmt. Corp. v. United States*, 76 Fed. Cl. 88, 91 (2007) (alteration in original) (quoting *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 475 (E.D. Pa. 2005)). Yet the required description for each claim of privilege will vary depending on the case: "[d]etails concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories." Fed. R. Civ. P. 26(b)(5) advisory committee notes to 1993 amendments. "[T]he customary

---

[5] The Restatement provides in relevant part:

If two or more clients with a common interest in a litigated or nonlitigated matter are represented by separate lawyers and they agree to exchange information concerning the matter, a communication of any such client . . . that relates to the matter [of common interest] is privileged as against third persons. Any such client may invoke the privilege, unless it has been waived by the client who made the communication.

Restatement (Third) of the Law Governing Lawyers § 76(1).

[6] General Dynamics represents that "the only post-litigation communication or document that [it] is withholding on the basis of privilege is a joint defense agreement," and that it has "furnished sufficient information to Plaintiffs" regarding the agreement and the applicability of the privilege asserted." Defs.' Joint Resp. at 12. Correlatively, Northrop Grumman avers that the only documents it has withheld "are privileged communications about this litigation . . . which have been limited to communications with outside counsel only and litigation experts." *Id.* (footnote omitted).

contents of a privilege log" include "a description of the type of document[,] . . . its topic, date, the writer and recipient, and an explanation as to why the matter is deemed to be privileged (which privilege was being invoked and on what grounds)." *Yankee Atomic Elec. Co. v. United States*, 54 Fed. Cl. 306, 309 (2002).

### 1. The Government's Privilege Log

The government's most recent privilege log, produced in March 2021, invokes the common interest doctrine in withholding various emails and attachments constituting "[c]ommunications with outside counsel and In-House Counsel regarding discovery matters." Pls.' Mot. Ex. 2 at 5. These communications are listed as separate log entries based on entity and date range. *See id.* The log also lists the joint defense agreement executed by the government, Northrop Grumman, General Dynamics, Elbit, and SAIC. *Id.* at 5-6. Plaintiffs protest that the log entries for the communications with outside and in-house counsel are too general to "allow [p]laintiffs to determine whether the documents contain actual privileged communications," Pls.' Mot. at 6, but the court finds that these entries are "sufficiently detailed," *Deseret Mgmt.*, 76 Fed. Cl. at 91. Given that the documents at issue are "voluminous" and "can be described by categories," grouping based on party and date range allows the government to report the withheld communications in a practicable manner. Fed. R. Civ. P. 26(b)(5) advisory committee notes to 1993 amendments. Nonetheless, the role of the named nonparties is not evident, nor is it explained, and the common interest as to them has not been established.

The government's log entries listing the joint defense agreement similarly lack sufficient detail. The "Description" sections for each of the five entries listing the joint defense agreement are left blank. Pls.' Mot. Ex. 2 at 5-6. While the government cannot be expected to describe the joint defense agreement in detail, the privilege log gives no indication of the common interest held between the government, the nongovernmental parties to the agreement, and the nonparties listed. *See id.* Notably, intervening defendants operate different bellwether systems for the government. *See* Pls.' Notice. Other entities listed in these privilege log entries, including SAIC, are not parties to this case. *See* Pls.' Mot. Ex. 2 at 5-6. Given the potentially divergent interests between the government, defendant-intervenors, SAIC, and other nonparties, a brief description of the common interest shared by the government and each respective party to the joint defense agreement, as well as each respective nonparty, would "allow the court to determine whether the elements of attorney-client privilege . . . have been established." *Deseret Mgmt.*, 76 Fed. Cl. at 91 (alteration in original). Defendants' assertion that they "share a common interest in defending against [p]laintiffs' allegations of patent infringement," Defs.' Joint Resp. at 13, fails to cure the lack of description in the government's privilege log, as "a shared desire to see the same outcome in a legal matter is insufficient to bring a communication between two parties within" the common interest doctrine, *In re Pacific Pictures Corp.*, 679 F.3d at 1129.

### 2. Elbit's Privilege Log

While the government's most recent privilege log includes multiple line items and spans two pages, Elbit's privilege log consists of a single entry. *Compare* Pls.' Mot. Ex. 2 at 5-6, *with id.* Ex. 1 at 2. As noted *supra*, Elbit's log lists the joint defense agreement and cites "attorney-client privilege; work product privilege [*sic*]; [and] common interest privilege [*sic*]" as the

rationale for withholding the document. Pls.' Mot. Ex. 1 at 2.  The entry indicates that the agreement was "executed between 7/6/2017 and 7/24/2017," *see id.*, but this description omits the fact that SAIC joined the agreement in January 2021, *see* Defs.' Joint Resp. at 2.  Elbit has refused to produce "a log of privileged, post-litigation communications" beyond this cryptic document. Pls.' Mot. Ex. 9 at 88.

Elbit's sparse privilege log, which potentially covers a wide range of communications involving co-defendants and nonparties, contravenes the general rule that "a blanket assertion of privilege is generally insufficient." *In re Grand Jury Subpoena*, 662 F.3d 65, 71 (1st Cir. 2011) (citations omitted); *see also United States v. Christensen*, 828 F.3d 763, 803 (9th Cir. 2015) ("[A] blanket claim of privilege is unacceptable. The scope of the privilege should be strictly confined within the narrowest possible limits.") (internal quotation marks and citations omitted). A "perfunctory assertion of privilege is insufficient to show that the attorney-client privilege attaches" to the communications covered by the joint defense agreement. *In re Grand Jury Subpoena*, 662 F.3d at 71.  Just as "[n]ot every piece of an attorney's work product falls within the attorney-client privilege," *id.* at 72, the privilege may not apply to all communications between Elbit, its co-defendants, and nonparties such as SAIC, *see Upjohn Co. v. United States*, 449 U.S. 383, 394-96 (1981) (denoting specific facts which gave rise to a proper assertion of attorney-client privilege by a corporation).  Defendants are correct that continually logging all post-litigation communications would amount to a disproportional burden, *see* Defs.' Joint Resp. at 13-16, but Elbit's privilege log fails to include the "customary contents" of a privilege log, such as a proper date range and "the writer and recipient" of the covered communications, *Yankee Atomic Elec. Co.*, 54 Fed. Cl. at 309.  Furthermore, without a sufficient description of the common interests shared by the defendants and SAIC or other nonparties, the court is unable to determine whether the common interest doctrine applies. *See Deseret Mgmt.*, 76 Fed. Cl. at 91. Elbit, therefore, has fallen short of properly invoking any form of privilege for withheld documents.

### 3.  Production of Revised Privilege Logs

Often, where descriptions in a privilege log fail to meet the baseline standard set by RCFC 26(b)(5), "disclosure is an appropriate sanction." *SmithKline Beecham Corp.*, 232 F.R.D. at, 475 (applying Fed. R. Civ. P. 26(b)(5)) (citation omitted).  The court finds it more conducive to future proceedings in this case, however, to require the government, Elbit, and the other co-defendants as necessary to produce appropriate, separate privilege logs providing further descriptions of the communications covered by the joint defense agreement.  To be sure, "the burden of identifying and logging each and every communication between counsel to the parties to the [joint defense agreement] over six years . . . is not proportional to the needs of the case," Defs.' Joint Resp. at 14,[7] but defendants cannot rely on a mere citation to the joint defense agreement in their privilege logs without complying with RCFC 26(b)(5) and articulating their pertinent respective common interests.  Defendants' "shared desire" to prevail in this case fails to secure the protection of the common interest doctrine. *In re Pacific Pictures Corp.*, 679 F.3d at 1129.

---

[7] The court requests that defendants focus on communications after August 13, 2020, the date of plaintiffs' pending discovery request, and not address communications prior to that date.

B. *Temporarily Limiting Discovery to That Involving Bellwether Systems One, Four, and Five*

The sprawling nature of this case and numerous prior discovery disputes previously led the court to limit discovery to eleven "potential infringing systems that will serve as bellwethers for further proceedings." Order of July 28, 2020 at 1, ECF No. 381. As plaintiffs' resulting notice listing the bellwether systems indicated, the intervening defendants are responsible for deploying different security systems to the government. *See* Pls.' Notice. These systems have different characteristics and functions, and thus plaintiffs' patent claims as to those systems engender divergent issues of patent infringement in some respects. Elbit's interest in the case thus differs from that of Vidsys, for example, as Elbit deployed Bellwether System One and Vidsys deployed Bellwether Systems Six and Seven. *See id.* at 1-2, 5-6. Following the designation of these eleven systems, the parties' efforts in discovery appear to have focused largely on Bellwether Systems One, Four, and Five. *See, e.g.*, Defs.' Joint Resp. at 5-8; Pls.' Reply at 6; *3rd Eye Surveillance v. United States*, __ Fed. Cl. __, 2021 WL 2980710, at *1 (July 15, 2021) (noting that "[t]he materials involved in the motion relate to Bellwether Systems 4 and 5"); Pls.' Mot. for Partial Summ. J. as to Bellwether Systems 4-5, ECF No. 495.

In a further effort to advance the case, the court will currently limit plaintiffs' discovery requests and defendants' forthcoming privilege logs to Bellwether Systems One, Four, and Five, and defer discovery regarding the eight other bellwether systems. Imposing this temporary limit on the scope of discovery falls within the discretion of this court, *see Florsheim Shoe Co.*, 744 F.2d at 797, and the parties have already limited the focus of the litigation to a certain extent on these three bellwether systems. Additionally, the issues surrounding Systems One, Four, and Five appear to involve only one intervening defendant, Elbit Systems, and nonparty SAIC. *See* Pls.' Notice at 1 ("System One is Elbit's Integrated Fixed Towers (IFT) border surveillance system . . . ."); Defs.' Joint Resp. at 5 (noting that "SAIC supplied" Bellwether Systems Four and Five). While intervening defendants other than Elbit also responded to plaintiffs' motion to compel, *see* Defs.' Joint Resp. at 12, their apparent lack of involvement with Bellwether Systems One, Four, and Five demonstrates the substantial differences in interests between the parties.[8] Temporarily limiting plaintiffs' discovery requests to these three systems will further streamline the discovery process and ratify what the parties have already put into practice. The court requests that the parties give notice when they desire to focus discovery on other bellwether systems among the eleven that have been designated.

## CONCLUSION

For the reasons set forth above, plaintiffs' motion to compel privilege logs and for other relief is GRANTED IN PART AND DENIED IN PART. By September 17, 2021, the government, Elbit, and the other co-defendants as necessary shall produce appropriate, separate privilege logs providing adequate descriptions of the communications covered by the joint defense agreement. Furthermore, to aid the court in determining whether the common interest doctrine applies to any communications covered by the joint defense agreement, defendants are

---

[8] That determination does not ignore the likelihood that certain patent issues relating to Bellwether Systems One, Four, and Five might also arise with, or be relevant to, other accused systems. Thus, the joint defense agreement may also be pertinent to some communications among counsel for defendants generally.

further directed to provide descriptions in their privilege logs of their respective common interests with each other and any nonparties to the agreement.  For the present, further discovery proceedings and defendants' forthcoming privilege logs shall be limited to Bellwether Systems One, Four, and Five, with discovery on the remaining eight bellwether systems deferred.[9]

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Senior Judge

---

[9] On August 18, 2021, plaintiffs filed a motion to supplement briefing for their motion to compel.  *See* ECF No. 521.  Plaintiffs represent that "newly obtained evidence," specifically deposition testimony of the corporate representative of SAIC, is "relevant to the issue of whether SAIC has an identity of legal interests such that communications with SAIC should be privileged."  *Id.* at 1-2.  The court concludes that the revised privilege logs will provide better insight into this issue.  Plaintiffs' motion to supplement briefing is thus GRANTED, but the supplementation will be supplanted by the revised privilege logs.