# In the United States Court of Federal Claims

No. 15-501C

(Filed under seal:  February 9, 2022)

(Reissued as modified:  February 18, 2022)

|  |  |  |
|---|---|---|
| **3ʳᴰ EYE SURVEILLANCE, LLC and DISCOVERY PATENTS, LLC**, | ) ) ) | Patent case; discovery disputes |
| Plaintiffs, | ) ) ) |  |
| v. | ) ) |  |
| **UNITED STATES**, | ) ) ) |  |
| Defendant, | ) ) ) |  |
| and | ) ) |  |
| **ELBIT SYSTEMS OF AMERICA, LLC, GENERAL DYNAMICS ONE SOURCE LLC, and NORTHROP GRUMMAN SYSTEMS CORPORATION,** | ) ) ) ) ) ) ) |  |
| Defendant-Intervenors. | ) ) |  |

Stephen A. Kennedy, Kennedy Law, P.C., Dallas, Texas, for plaintiffs.

James P. Hughes, Trial Attorney, Intellectual Property Section, Civil Division, United States Department of Justice, Washington, D.C., for defendant.

Kurt G. Calia, Covington & Burling LLP, Palo Alto, California, for defendant-intervenor Elbit Systems of America, LLC.  Of counsel were Ranganath Sudarshan, Matthew Kudzin, Yiye Fu, Jennifer D. Cieluch, and Ryan Roberts, Covington & Burling LLP, Palo Alto, California.

Scott A. Felder, Wiley Rein, LLP, Washington, D.C., for defendant-intervenor General Dynamics One Source LLC.

Gregory H. Lantier, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C., for defendant-intervenor Northrop Grumman Systems Corporation.

Case 1:15-cv-00501-CFL   Document 584   Filed 02/18/22   Page 2 of 18

# OPINION & ORDER[1]

LETTOW, Senior Judge.

Pending before the court in this patent infringement case are two motions by defendant-intervenor Elbit Systems of America, LLC ("Elbit") to compel discovery responses from plaintiffs, and a cross-motion by plaintiffs 3rd Eye Surveillance, LLC and Discovery Patents, LLC to compel.  S*ee* Def.-Int.'s First Mot. to Compel ("Def.-Int.'s First Mot."), ECF No. 552; Pls.' Resp. and Cross-Mot. to Compel ("Pls.' Cross-Mot."), ECF No. 555; Def.-Int.'s Second Mot. to Compel ("Def.-Int.'s Second Mot."), ECF No. 566.  In its first motion, Elbit asserts that plaintiffs are impermissibly withholding relevant evidence on a variety of matters using "boilerplate objections" and have failed to make some production in a conventional format.  *See generally* Def.-Int.'s First Mot.[2]  Plaintiffs counter that they have met their discovery obligations and have produced documents in the format available to them.  *See generally* Pls.' Cross-Mot.[3]

In their reply, plaintiffs also raise a new issue.  Plaintiffs assert that Elbit has objected to confidential information being shared with the staff of plaintiffs' expert, Karen Romrell.  Pls.' Reply at 3.  Plaintiffs ask the court to rule that the protective order prevents Elbit from blocking the staff's access or otherwise requests clarification of the protective order.  *Id.* at 5-6.  Elbit moved for leave to file a sur-reply to address this issue, *see* ECF No. 559, which was granted, *see* Order of December 7, 2021, ECF No. 560.  Elbit contends that plaintiffs impermissibly raised a new issue in their reply, that plaintiffs failed to meet and confer about that issue as required by

---

[1] Because of the protective order entered in this case, this opinion was initially filed under seal.  The parties were requested to review the decision and provide proposed redactions.  No redactions were requested, but one aspect of the decision that addresses documents provided to the litigation funder, *see infra* at 13, has been modified to provide for initial review of these documents *in camera*.

[2] Elbit also asked the court to compel plaintiffs' counsel to accept service of a subpoena on nonparty Paw Paw Management, LLC ("Paw Paw Management").  *Id.* at 34-36.  Elbit has since been able to effect personal service on a member of Paw Paw Management as identified by plaintiffs.  *See* Notice of Resolution of Pending Discovery Dispute, ECF No. 576.  Therefore, Elbit's request in that regard is moot.

Elbit's second motion to compel included a request to compel plaintiffs to admit that their counsel did not attempt to communicate with Paw Paw Management about the subpoena.  Def.-Int.'s Second Mot., Ex. 1 at 14, ECF No 566-1.  This request for admission is irrelevant, and Elbit's second motion to compel a response is DENIED as to Request for Admission No. 64.

[3] Plaintiffs' cross-motion originally sought to compel Elbit and the government to produce a copy of the IFT Contract Modification between them and for the government to produce Clay Hudgins, the project manager for the IFT, for further depositions.  *Id.* at 3.  Plaintiffs now represent that the IFT Contract Modification has been produced and that a deposition of Mr. Hudgins has taken place.  Pls.' Reply at 3, ECF No. 558.  Plaintiffs' request in that regard is thus moot.

Rule of the Court of Federal Claims ("RCFC") 37(a), and that Elbit has a justifiable basis to object to the sharing of confidential information with the named individuals, some of whom it claims are associated with entities other than Ms. Romrell's. Def.-Int.'s Sur-Reply at 3 n.2, ECF No. 559-A.

The parties have completed briefing as to these motions. *See* Pls.' Reply; Def-Int.'s Sur-Reply. The court held a hearing on January 12, 2022.

Prior to the hearing on January 12th, Elbit filed a second motion to compel and to de-designate discovery correspondence as confidential. *See* Def.-Int.'s Second Mot.[4] Elbit asserts that plaintiffs have failed to adequately respond to Elbit's requests for admission by refusing to admit or deny a request or by objecting to a request. *Id.* at 1-2. Elbit first addressed this issue by sending plaintiffs correspondence asking for supplemental answers, which quoted excerpts from plaintiffs' response to Elbit's requests for admission. *Id.* at 2. Plaintiffs did not address the substance of Elbit's letter and instead sent an email asking that the letter be treated as confidential under the protective order. *Id.* at 3. Elbit now seeks to remove the confidential designation of its correspondence. *Id.* at 1. Plaintiffs counter that they did sufficiently answer each request for admission and that the letter contains confidential information, particularly its references to whether plaintiffs have obtained a litigation funder. Pls.' Second Resp. at 3-4, ECF No. 575. This motion is also now fully briefed, *see* Def.-Int.'s Second Reply, ECF No. 577.

For the reasons stated, Elbit's first motion to compel is GRANTED IN PART AND DENIED IN PART, and plaintiffs' cross-motion to compel is DENIED AS MOOT. Elbit's second motion to compel and to de-designate correspondence is GRANTED IN PART AND DENIED IN PART.

## BACKGROUND[5]

Plaintiffs filed suit in this court on May 15, 2015. *See* Compl., ECF No. 1.[6] As the court has previously noted, numerous discovery disputes between the parties have been adjudicated since the filing of the complaint. *See, e.g.*, Order of June 16, 2017 (granting in part and denying in part plaintiffs' motion to compel), ECF No. 149; *3rd Eye Surveillance LLC, v. United States*, 133 Fed. Cl. 273 (2017) (denying plaintiffs' motion to compel); Order of August 17, 2017 (granting in part and denying in part defendant's motion for a protective order), ECF No. 162; *3rd Eye Surveillance, LLC v. United States*, 143 Fed. Cl. 103, 105 (2019) (adjudicating five

---

[4] This motion was not fully briefed at the time of the hearing on January 12th. Argument at that time was limited to Elbit's first motion to compel and plaintiffs' cross-motion.

[5] The following recitations do not constitute findings of fact by the court. Instead, the recited factual elements are taken from the relevant complaint and the parties' briefs and attached appendices.

[6] Patent Nos. 6,778,085, 6,798,344, and 7,323,980 are the basis for plaintiffs' claims. Each relates to security systems with attendant imagery capabilities. *See 3rd Eye Surveillance, LLC v. United States*, 140 Fed. Cl. 39 (2018) (ruling on challenges to patent eligibility and on claim construction).

motions related to "the discovery of defendants' source code for security systems the plaintiffs allege infringe on their patents"); *3rd Eye Surveillance, LLC v. United States*, 155 Fed. Cl. 355 (2021) (granting in part and denying in part plaintiffs' motion to compel privilege logs); Order of November 3, 2021 (denying plaintiffs' motion to show cause for an alleged violation of the protective order), ECF No. 554; Order of December 20, 2021, ECF No. 562 (granting plaintiffs' motion to protect confidential information).

Elbit served plaintiffs with requests for production of documents and interrogatories on August 25, 2021. As relevant to the pending motions, the requests for production sought: (1) "[a]ll [a]greements" and related documents concerning the patents, the case itself, and the security systems at issue, Def.-Int.'s First Mot., Ex. 1 at 6-7, ECF No. 552-1, (2) information and documents relating to plaintiffs' damages contentions, *id.*, Ex. 1 at 7, (3) documents concerning the "conception of" or "reduction to practice of any inventions disclosed in the [a]sserted [p]atents," *id.*, Ex. 1 at 8, (4) information and documents relating to the named inventors of the patents at issue, *id.*, Ex. 1 at 10,[7] (5) documents concerning "[r]elated [l]itigation," *id.*, Ex. 1 at 10-11,[8] and (6) "[a]ll documents and/or communications concerning and/or with any other entity and/or person with a financial interest in the outcome of [t]his [c]ase," *viz.* litigation funders, *id.*, Ex. 1 at 11. Instruction 16 of Elbit's discovery requests specified that the documents should be produced as a tag image file format (".TIFF"). *Id.*, Ex. 1 at 5. Elbit's interrogatories similarly sought to identify (1) "all [a]greements related to the [a]sserted [p]atents," (2) plaintiffs' damages contentions, and (3) information relating to the conception and reduction to practice of the patents. *Id.*, Ex. 2 at 18-20.

On September 24, 2021, plaintiffs responded to Elbit's requests for production and its interrogatories. *See* Def-Int.'s First Mot. at 2. Plaintiffs objected to the majority of Elbit's requests for production using essentially the same language.[9] Where they did not object,

---

[7] Plaintiffs represent that James Otis Faulkner, one of the two inventors who is also a member of plaintiff Discovery Patents, LLC, suffered a debilitating heart attack and stroke in 2017 which has left him with impaired communicative abilities. Pls.' Cross-Mot. at 11. Richard Blake is the other named inventor. *See* Def.-Int.'s First Mot. at 15.

[8] The term "[r]elated [l]itigation" was defined by Elbit to mean "any other lawsuit, investigation, or other proceeding concerning the [a]sserted [p]atents." *Id.*, Ex. 1 at 5. The court adopts this definition when using that term in this opinion.

[9] Plaintiffs' objections with minor variations read as follows:

Plaintiffs object to producing any documents responsive to this request as such information is not proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden or expense of the proposed discovery compared to the likely benefit. The request is unduly burdensome, calls for privileged information, work product, and otherwise appears intended to seek information outside scope of permissible discovery.

plaintiffs stated that the requested documents had already been produced or would be produced once damage contentions specifically were identified by their expert. *See generally id.*, Exs. 3-4.

Elbit contends that it attempted to meet and confer on these issues to no avail. Def.-Int.'s First Mot. at 1. In consequence, it filed its first motion to compel on October 25, 2021. Elbit argues that plaintiffs' "boilerplate" objections are improper, that plaintiffs are withholding relevant and discoverable documents, and, to the extent that plaintiffs are claiming privilege, that they have failed to provide privilege logs as required by RCFC 26(b)(5). Def.-Int.'s First Mot. at 7, 9-10. Further, Elbit asserts that the documents plaintiffs have produced are in some instances improperly Bates stamped and were not provided in the .TIFF format as requested or in a format otherwise compatible with e-discovery platforms. *Id.* at 28.[10]

In response, plaintiffs argue that they have produced everything they are obligated to produce and have done so in the format that is available to them, with minimal issues regarding Bates stamping. Pls.' Cross-Mot. at 17. Specifically, plaintiffs contend that (1) litigation financing agreements are not discoverable, (2) it has produced all relevant documents concerning Elbit's areas of inquiry, and (3) the related litigation documents were produced in the format available to plaintiffs, and they do not have permission to provide them in another format. Pls.' Cross-Mot. at 14-16.[11]

The issue that arose during briefing concerns plaintiffs' contention that Elbit has objected to allowing the staff of plaintiffs' damages expert, Karen Romrell, to have access to confidential information under the protective order. *See* Pls.' Reply at 3. Ms. Romrell was designated as an expert on December 24, 2018. *Id.* at 4. No objections to Ms. Romrell were then asserted or otherwise presented to the court for determination. *Id.* For her staff to have access to confidential information, plaintiffs sought to have additional persons designated as her aides. Elbit objected to these individuals *en masse*. *Id.* Elbit's sur-reply argues that plaintiffs should not be allowed to raise this new argument in a reply, that five of the proposed individuals are associated with a company other than Ms. Romrell's, and that there is no reason to address the scope of the protective order. Def.-Int.'s Sur-Reply at 3 n.2. It also seeks its fees and costs for filing the sur-reply. *Id.* at 3.

As for its second motion, Elbit served plaintiffs with requests for admission on October 28, 2021. Def.-Int.'s Second Mot. at 1. Particular to this motion, Elbit's requests asked

---

*See, e.g.*, Def.-Int.'s First Mot., Ex. 4 at 38.

[10] Elbit did not specify whether this argument relates specifically to documents produced concerning the related litigation only or whether it has a more pervasive reach. *See* Hr'g Tr. 58:1-21; 61:3-11 (January 12, 2022).

[11] Plaintiffs also contend that Elbit's motion to compel concerning the related litigation documents is frivolous and duplicitous because the issue was addressed and remedied after the court's Order of November 19, 2019, ECF No. 320. *See* Pls.' Cross-Mot. at 13. As such, plaintiffs seek their fees and costs for having to respond to Elbit's argument in that regard. *Id.* at 14.

plaintiffs to admit or deny various statements relating to (1) a litigation funder, *see id.*, Ex. 1 at 8-10, (2) plaintiffs' interactions with Paw Paw Management (an entity plaintiffs designated in their initial disclosures as having discoverable information), *see id.*, Ex. 1 at 13-18, and (3) plaintiffs' alleged sales of surveillance systems, *see id.*, Ex. 1 at 12.  Plaintiffs responded to Elbit's requests for admission on November 23, 2021.  *Id.* at 1.  Elbit raises four main objections to these responses: (1) plaintiffs refused to admit or deny any statement relating to litigation funders based on relevance, (2) plaintiffs failed to explicitly admit or deny requests for admission relating to whether they had communicated with Paw Paw Management, (3) plaintiffs refused to admit or deny whether an agreement between them and Paw Paw Management was still in effect, and (4) plaintiffs refused to admit or deny requests for admission relating to "surveillance systems," arguing the term was ambiguous.  *See generally id.*

In an attempt to resolve these perceived deficiencies, on December 17, 2021, Elbit sent correspondence to plaintiffs' counsel (and counsel for the other parties in this case) outlining its concerns with plaintiffs' responses to the requests for admission.  *See* Def.-Int.'s Second Mot., Ex. 3 at 69.  The letter contained excerpts from plaintiffs' responses to the requests for admission, which themselves set out information covered by the protective order in this case.  *See, e.g.*, *id.*, Ex. 3 at 69.  The letter was sent without any confidentiality designation.  *Id.* at 2 n.2.  On the same day, plaintiffs' counsel responded via email that the letter lacked the required confidentiality designation and asked all of the parties' counsel to state that they would treat the letter as such.  *Id.*, Ex. 4 at 79.  The parties could not agree as to whether the correspondence should be designated as confidential, which prompted plaintiffs to file an emergency motion to have the letter designated as confidential.  *See* Pls.' Mot. to Protect Confidential Information, ECF No. 561.  The court granted the motion, citing the protective order's procedure for challenging the designation of information as confidential.  *See* Order of December 20, 2021, ECF No. 562.

Elbit filed its second motion to compel on January 4, 2022.  Def.-Int.'s Second Mot.  Elbit argues that twenty-nine of plaintiffs' responses to the requests for admission relating to litigation funders, Paw Paw Management, and surveillance systems are incomplete and require an answer.  Def.-Int.'s Second Reply at 1.  It further argues that its correspondence on December 17, 2021, quoting plaintiffs' responses to the requests for admission does not contain any confidential information and should not be designated as confidential under the protective order.  Def.-Int.'s Second Mot. at 11.  Plaintiffs respond that their objections and answers to the requests for admission were proper and that the letter does contain confidential information which necessitates the confidential designation.  *See* Pls.' Second Resp. at 3-4.

## STANDARDS FOR DECISION

"Questions of the scope and conduct of discovery are, of course, committed to the discretion of the trial court."  *Florsheim Shoe Co. v. United States*, 744 F.2d 787, 797 (Fed. Cir. 1984) (citation omitted).  "Accordingly, resolution of a motion to compel discovery is committed to that discretion."  *3rd Eye Surveillance*, 143 Fed. Cl. at 109 (citing *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1022 (Fed. Cir. 1986)).  When deciding motions to compel, the "court must balance potentially conflicting goals," *Petro-Hunt, L.L.C. v. United States*, 114 Fed. Cl. 143, 144 (2013), with the understanding that "[m]utual knowledge of all the relevant

facts gathered by both parties is essential to proper litigation," *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).

## ANALYSIS

*A. Plaintiffs' Responses to Elbit's Requests for Production of Documents, Interrogatories, & Requests for Admission*

Elbit contends in its first motion that plaintiffs' responses to the requests for production of documents and interrogatories were "almost completely devoid of content" and instead consisted of "boilerplate objections." Def.-Int.'s First Mot. at 2. A review of plaintiffs' responses does show that plaintiffs responded with materially the same objection to a majority of Elbit's requests without further explanation of their reasoning for the objection or identification of what, if anything, it was withholding. *See generally* Def.-Int.'s First Mot., Ex. 4. At the hearing, plaintiffs' counsel explained that "it was certainly [his] intent that the discovery request [responses] be read together . . . [because] the responses to the interrogatories do say what [plaintiffs] are producing," Hr'g Tr. 69:11-16 (January 12, 2022),[12] and the objections were intended to "preserve the record." Hr'g Tr. 43:8-15. Elbit seeks to compel further responses to twenty-six of its requests for production and four of its interrogatories. Def.-Int.'s First Mot. at 36. Elbit raises similar issues in its second motion to compel regarding plaintiffs' responses to Elbit's requests for admission, seeking to compel further responses to twenty-nine of its requests for admission. *See generally* Def.-Int.'s Second Mot.

Requests for production are intended to provide for discovery of relevant documents, "eliminating strategic surprise and permitting the issues to be simplified and the trial to be expedited." 8B Richard L. Marcus, *Federal Practice & Procedure* § 2202 (3d ed. 2021) (discussing Fed. R. Civ. P. 34).[13] Similarly, interrogatories are "intended to enable a party to prepare for trial, to narrow the issues and thus help determine what evidence will be needed at the trial." *Id.* at § 2162 (discussing Fed. R. Civ. P. 33). The same is true of requests for admission. *Id.* at § 2252 (discussing Fed. R. Civ. P. 36 and its purpose of defining and limiting issues).

Objections to any of these discovery requests must be stated with specificity. *See* RCFC 33(b)(4); RCFC 34(b)(2)(C); RCFC 36(a)(5). "The use of broad or boilerplate objections is insufficient to justify withholding information." *Kansas City Power & Light Co. v. United States*, 139 Fed. Cl. 546, 565 (2018). A boilerplate objection to a discovery request "merely states the legal grounds for the objection without (1) specifying how the discovery request is deficient and (2) specifying how the objecting party would be harmed if it were forced to respond to the request." *Banks v. Jackson*, No. 20–cv–02074, 2021 WL 3857614, at *3 (D. Colo. Aug. 27, 2021) (quoting Matthew L. Jarvey, *Boilerplate Discovery Objections: How They*

---

[12] The date will be omitted from further citations to the transcript of the hearing held on January 12, 2022.

[13] RCFC 33, 34, and 36 mirror Fed. R. Civ. P. 33, 34, and 36, and the rules should be interpreted *in pari materia*.

*Are Used, Why They Are Wrong, and What We Can Do About Them*, 61 Drake L. Rev. 913, 914-16 (2013)).

Nonetheless, "discovery has ultimate and necessary boundaries," *Securiforce Int'l Am., LLC v. United States*, 127 Fed. Cl. 386, 400 (2016) (internal citations and quotations omitted), and a party may object to discovery requests that it believes to be improper, s*ee* RCFC 33(b)(4); 34(b)(2)(c); 36(b)(4). In that respect, the court "must limit the frequency or extent of discovery" allowable under the RCFC if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." RCFC 26(b)(2)(C)(i).

Where the ultimate purpose of discovery requests is to prepare the parties for trial and to narrow the issues, plaintiffs must provide answers to discovery requests such that it is explicit what has and what has not been identified and produced. This obligation, however, must be balanced against the reasonableness and breadth of Elbit's discovery requests. Elbit challenges twenty-six of plaintiffs' responses to Elbit's requests for production, four of plaintiffs' responses to Elbit's interrogatories, and twenty-nine of plaintiffs' responses to Elbit's requests for admission. *See* Def.-Int.'s First Mot. at 36; Def.-Int.'s Second Reply at 1. The court will address each of those challenged discovery responses in turn.

> 1. *Discovery requests relating to the patents and case generally (RFPD Nos. 1, 2, and 22; Interrogatory Nos. 1 and 5; and RFA No. 56).*

Request for Production No. 1 seeks all agreements related to the patents. Def.-Int.'s First Mot., Ex. 1 at 6. Similarly, Elbit's Interrogatory No. 1 asks plaintiffs to identify the same. *Id.*, Ex. 2 at 18. Plaintiffs objected, but they also identified in their interrogatory response three specific agreements and two categories of agreements that have already been produced: (1) "[a]greements between Discovery Patents, LLC and 3rd Eye Surveillance, LLC," (2) "[t]he settlement agreement with Stealth Monitoring, Inc.," (3) "[t]he settlement agreement with the City of Fort Worth, Texas," (4) "[t]he agreement between Otis Faulkner and Richard Blake," and (5) "[a]greements with Ichos, LLC." *Id.*, Ex. 3 at 25.

Elbit argues these responses are inadequate because they "do not properly identify the individual agreements" and the identification is "clearly incomplete." Def.-Int.'s First Mot. at 22. As an example of the purported incompleteness of plaintiffs' response, Elbit points to a "Marketing Services Agreement concerning the [a]sserted [p]atents" between 3rd Eye Surveillance and Paw Paw Management. *Id.* In response, plaintiffs stated that the "Paw Paw Management, LLC Management-Marketing Services Agreement with 3rd Eye Surveillance" has already been produced even though it did not reference any of the bellwether systems. Pls.' Cross-Mot. at 9. Plaintiffs again stated that they had complied with their discovery obligations. *See id.* While Elbit's request is a broad one, plaintiffs are still required to identify what they have and have not produced. While plaintiffs identify the produced agreements by their respective Bates numbering in their response to Elbit's first motion, *see* Pls.' Cross-Mot. at 9, a more explicit response to Elbit's discovery request in this regard is necessary. Plaintiffs should supplement their response to Request for Production No. 1 and Interrogatory No. 1 to state and

8

verify which agreements have been produced and any agreements that it is withholding and on what grounds. The same should be done for Request for Production No. 2, which seeks agreements relating to this case generally. Def.-Int.'s First Mot., Ex. 1 at 6.[14] As such, Elbit's first motion is granted as to Requests for Production Nos. 1 and 2 and Interrogatory No. 1.

Relating to the "Paw Paw Management, LLC Management-Marketing Services Agreement with 3rd Eye Surveillance" discussed above, Elbit's Request for Admission No. 56 asks plaintiffs to admit that they have produced no document showing that agreement "has been terminated." Def.-Int.'s Second Mot., Ex. 1 at 13. Plaintiffs objected to the request and denied the same stating that "termination is a question of law that has not been determined by any [c]ourt." *Id.*, Ex. 2 at 45. This objection cannot stand. "[A] request for admission is not objectionable even if it requires opinions or conclusions of law, as long as the legal conclusions relate to the facts of the case." *Kansas City Power & Light Co. v. United States*, 132 Fed. Cl. 28, 34 (2017) (internal quotations and alterations omitted). While plaintiffs' counsel at the January 5th status conference stated that the agreement "has never been enforced," Hr'g Tr. 25:20-22 (January 5, 2022), plaintiffs must nonetheless supplement their response to Request for Admission No. 56. As such, Elbit's second motion is granted as to Request for Admission No. 56.

Request for Production No. 22 seeks documents relating to any agreement between Discovery Patents, LLC and 3rd Eye Surveillance, LLC as it relates to the case. Def.-Int.'s First Mot., Ex. 1 at 10. Elbit seeks similar information relating to the relationship between the plaintiffs in Interrogatory No. 5. *Id.*, Ex. 2 at 19. While plaintiffs stated their template objection in response, they also stated that they had "previously produced the agreements between Discovery Patents LLC and 3rd Eye Surveillance, LLC." *Id.*, Ex. 3 at 27-28. This discovery request encompasses documents that Elbit's other requests should elicit from plaintiffs and is unnecessarily cumulative. *See* RCFC 26(b)(2)(C)(i). Beyond that, plaintiffs stated in their interrogatories that they had produced the relevant agreements. Accordingly, Elbit's motion to compel discovery is denied as to Request for Production No. 22 and Interrogatory No. 5.

2. *Discovery requests relating to damages (RFPD Nos. 4 and 7; Interrogatory No. 3; and RFA Nos. 42-45).*

A source of significant disagreement between the parties is whether plaintiffs must produce discovery relating to their damage contentions when they have not yet conducted expert discovery or received an expert opinion on the matter. The Federal Circuit has noted that "courts have the discretion to encourage parties to provide discovery of damages theories prior to expert discovery. Doing so promotes judicial efficiency, informs settlement discussions, and helps parties determine the resources that will be devoted to a case based on its potential value." *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1372 (Fed. Cir. 2021). Specifically, the court of appeals noted that "not disclos[ing] factual underpinnings and evidence underlying . . . damages theor[ies] prior to expert discovery undermines a . . . court's discretion to encourage early discovery." *Id.* Contention interrogatories—and the requests for production that

---

[14] While this discovery request would encompass any litigation funding agreement plaintiffs have entered into, that issue is addressed specifically in Section A.5(i), *infra*.

accompany them—lead to important discovery and help to narrow the issues. *See Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1280 (Fed. Cir. 2012).

Request for Production No. 4 seeks agreements related to security or surveillance systems enforced by plaintiffs, *see* Def.-Int.'s First Mot., Ex. 1 at 7, but Elbit's argument at the hearing suggests that this discovery request is more concerned with obtaining information as it relates to damages. Elbit contends that this request was meant to provide it with basic materials relevant to the *Georgia-Pacific* factors commonly used in patent cases to assess reasonable royalties. Hr'g Tr. 12:9 to 13:4.[15] To the extent that plaintiffs have this factual information, they must produce it or state they have nothing to produce even though they have not yet formed damages contentions. Even so, the language of this request and interrogatory is overbroad. While some of the information Elbit seeks may be relevant, the language seeking "[a]ll [a]greements" related to plaintiffs' security systems may encompass agreements that are not related to the patents and claims at issue. Therefore, Elbit must narrow its request after which plaintiffs should respond.

In this same vein, Elbit's Requests for Admission Nos. 42-45 seek to have plaintiffs admit that they have never sold or offered to sell a "surveillance system." Def.-Int.'s Second Mot., Ex. 1 at 12. Plaintiffs objected to each of these requests, arguing that "'surveillance system' is ambiguous." *Id.*, Ex. 2 at 41-42. In their response to Elbit's second motion, plaintiffs state that "'surveillance system' could encompass an apparatus for conducting surveillance, a method for conducting surveillance, and even the patents themselves." Pls.' Second Resp. at 3 (emphasis omitted). Elbit notes that plaintiffs have used the term themselves both in their amended complaint and on their website. Def.-Int.'s Second Mot. at 9. The meaning of "surveillance system" is reasonably evident; it means the entire product or invention under the patents as contrasted to any component of it or the patents themselves. Plaintiffs should serve amended answers to Requests for Admission Nos. 42-45 with that understanding of the term "surveillance system." As such, Elbit's second motion to compel is granted as to Requests for Admission Nos. 42-45.

Request for Production No. 7 and Interrogatory No. 3 directly ask for plaintiffs' damage contentions and any documents relied on to support them. Def.-Int.'s First Mot., Ex. 1 at 7; Ex. 2 at 18-19. Plaintiffs stated they would produce such documents once identified by their expert. *Id.*, Ex. 4 at 40. While plaintiffs' answers and production may change as discovery continues, and certainly their expert report will provide the ultimate articulation of their damage contentions, they nonetheless have an obligation to identify and produce responsive documents that are already in their possession. Plaintiffs may specify that their responses are preliminary and then supplement their responses under RCFC 26 after further discovery and the completion of their expert's analysis. As such, Elbit's motion to compel as to Request for Production No. 7 and Interrogatory No. 3 is granted.

---

[15] The Southern District of New York enumerated fifteen factors in *Georgia-Pacific Corporation v. United States Plywood Corporation* that are commonly used to determine the amount of reasonable royalty for a patent license. 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

10

> 3. *Discovery requests relating to the named inventors, conception of the patents, and prior art (RFPD Nos. 10, 11, 15, 21, and 26 and Interrogatory No. 6).*
>
> > *(i.)    Conception, reduction to practice, and acts of diligence.*

Requests for Production Nos. 10, 11, and 15 seek all documents reflecting the conception, reduction to practice, and acts of diligence related to inventions disclosed in the patents. Def.-Int.'s First Mot., Ex. 1 at 8. Interrogatory No. 6 sought the same. *Id.*, Ex. 2 at 19-20. To each, Plaintiffs responded:

> Plaintiff 3rd Eye Surveillance, LLC was not present at the time of the inventions and has no information regarding same. Discovery Patents did not exist at the time of the invention of the patents in suit and, therefore, has no personal [*sic*] knowledge regarding same. Mr. Faulkner, who is a member of Discovery Patents, LLC, suffered a heart attack and stroke in 2017. Mr. Faulkner's health remains fragile and his communication skills impaired. Plaintiffs previously produced all documents in their custody and control that respond to this discovery request.

*Id.*, Ex. 4 at 41-43. Plaintiffs stated that they have previously produced all documents in their possession that relate to the interrogatory and requests for production. Elbit has not provided any evidence to suggest that plaintiffs have misrepresented their production. Nor do these discovery requests lend themselves to a convenient listing of relevant documents. Nonetheless, plaintiffs should ensure they have done their due diligence in producing all responsive documents, identify the documents it has determined to be responsive, and certify that they have produced said documents. After that effort, should Elbit determine that it has not received what it seeks, it must narrowly tailor further requests to specific categories of documents as opposed to broad requests for "all documents."

> *(ii.)    Named inventors.*

Request for Production No. 21 seeks information relating to the named inventors of the patents at issue. Def.-Int.'s First Mot., Ex. 1 at 10. Plaintiffs have previously stated that they only have Mr. Blake's last known address, *see id.*, Ex. 8 at 82; Ex. 9 at 91, and that Mr. Faulkner has suffered a debilitating stroke and heart attack which has left him with impaired communication abilities, Pls.' Cross-Mot. at 11. Elbit is correct that information and documents relating to the inventors of the at-issue patents are relevant and discoverable. *See, e.g., Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 656-57 (N.D. Cal. 2004) (compelling production of documents that "relate to communications by any of the named inventors"). Respecting Mr. Blake, plaintiffs cannot rely solely on providing his last known address and avoiding any further response. Instead, they must produce all non-privileged responsive documents, certify that they have produced all such documents, and identify any documents they are withholding.[16] Their response regarding Mr. Faulkner is more complete. Plaintiffs state they have produced "all declarations and affidavits signed by Mr. Faulkner in the

---

[16] Elbit presumably may separately depose Mr. Blake to inquire further.

*e-Watch* [l]itigation, produced his trial testimony in that case, and the document production from the *e-Watch* [l]itigation.  Plaintiffs have nothing further to produce." Pls.' Cross-Mot. at 11.  The documents plaintiffs describe in their response all relate to former litigation brought in the Eastern District of Texas.  *Id.*  To the extent plaintiffs have other non-privileged documents and communications relating to Mr. Faulkner, they should produce them or certify that they have nothing further to produce.  As to access to Mr. Faulkner himself, plaintiffs' representations as to his health condition are taken at face value, and the court will not order further discovery beyond what materials plaintiffs already have in their possession.

        *(iii.)*    *Prior art.*

Request for Production No. 26 seeks all documents related to prior art pertaining to the patents at issue in this case.  Def.-Int.'s First Mot., Ex. 1 at 11.  Plaintiffs' objection does not state what documents it contends it has already produced or whether it is otherwise withholding documents relating to this request.  Plaintiffs must amplify their response to identify responsive documents already produced and clarify if it is withholding documents and on what grounds.

        *4.    Discovery requests concerning related litigation (RFPD Nos. 23, 24, and 25).*

Requests for Production Nos. 23 and 24 seek documents and information respecting related litigation plaintiffs have filed in other courts regarding the patents.  Def.-Int.'s First Mot., Ex. 1 at 10.  In their response to Elbit's first motion (but not in their responses to Elbit's discovery requests), plaintiffs state that they have produced "all of the pleadings, depositions, court filings, and other case files from all related litigation."  Pls.' Cross-Mot. at 12.  Plaintiffs elaborated at the hearing to state that they had objected in order to "preserve the record" and had produced the related documents.  Hr'g Tr. 43:5-23.  At the hearing on January 12th, Elbit's counsel stated he was uncertain based on plaintiffs' response both to the motion and the discovery requests whether all the documents from the prior litigation had been produced.  Hr'g Tr. 27:9 to 28:9.  Counsel for Elbit averred that in their review of the documents, the productions do not seem complete.  Hr'g Tr. 63:3-5.  As an example, Elbit stated it has reviewed discovery responses from the defendant in the *3rd Eye Surveillance, LLC v. e-Watch* litigation but did not appear to have plaintiffs' discovery responses in that case.  Hr'g Tr. 63:5-10.  Counsel for plaintiffs stated he had not intentionally withheld any documents, and he would investigate the issue.  Hr'g Tr. 70:22 to 71:10.

Accordingly, plaintiffs are instructed to review their production as it relates to these requests and ensure that all responsive, non-privileged documents have been produced.  If plaintiffs' prior production is incomplete, they must supplement their production or alternatively identify what they are withholding and on what grounds.

Request for Production No. 25 also concerns related litigation and seeks information relating to the "disposition of any funds" resulting from communications with third parties.  Def.-Int.'s First Mot., Ex. 1 at 11.  To the extent this request seeks information related to litigation funding agreements, if any, from the prior litigation, the information is irrelevant and beyond the scope of this litigation.

5. *Discovery requests relating to litigation funders (RFPD No. 28 and RFA Nos. 14-21, 26-27).*

      (i.)    Any litigation funding agreement.

Request for Production No. 28 seeks information and communications relating to litigation funders. Def.-Int.'s First Mot., Ex. 1 at 11. In its motion, Elbit argues that no privilege applies that would shield plaintiffs from their obligation to produce any litigation funding agreement they have entered concerning this litigation, and the information is relevant to damages and other issues in the litigation. Def.-Int.'s First Mot. at 24-26. In response, plaintiffs pointed to the court's ruling in *SecurityPoint Holdings, Inc. v. United States*, No. 11-268C, 2019 WL 1751194, at *1 (Fed. Cl. Apr. 16, 2019), as well as the Eastern District of Virginia's ruling in *Ashghari-Kamrani v. United Servs. Auto. Ass'n*, No. 2:15-CV-478, 2016 WL 11642670, at *4 (E.D. Va. May 31, 2016), to support the contention that litigation funding agreements are irrelevant. Pls.' Cross-Mot. at 5-6.

At the status conference on January 5th, the court directed the parties' attention to a decision concerning litigation funding agreements in the *FastShip* litigation. Hr'g Tr. 34:25 to 35:4 (January 5, 2022). In *FastShip, LLC v. United States*, the court noted that the "disclosure of [litigation funding] agreements . . . encourage[s] transparency and ensure[s] a shadow broker is not using litigation as a form of harassment or for multiple bites at the same apple." 143 Fed. Cl. 700, 717 (2019) (emphasis omitted), *vacated and remanded on other grounds*, 968 F.3d 1335 (Fed. Cir. 2020). Particularly, the court noted that such agreements can bear on determining whether a party is the real party in interest. *Id.* at 716-17. Likewise, in *SecurityPoint*, the litigation funding agreement was ordered to be produced for *in camera* review to determine whether the government had demonstrated a need for information as to assignment or joinder so as to overcome the court's prior finding that the agreement was protected as work product. *See* 2019 WL 1751194, at *5.

While plaintiffs submit that a litigation funding agreement exists covering this litigation, they aver that plaintiff Discovery Patents LLC remains in "complete control over the litigation," but they also stated their understanding that the court's jurisprudence requires the relevant funding agreement to be produced *in camera* to enable the necessary determinations as to whether the agreement is discoverable. Hr'g Tr. 37:8-23. In the circumstance at hand, the court requests that plaintiffs submit for the court's *in camera* consideration any litigation funding agreement between themselves and a nonparty as it relates to the current litigation before this court *only*.

Request for Admission No. 14 asks plaintiffs to "[a]dmit that [they] have communicated about this case with a [l]itigation [f]under." Def.-Int.'s Second Mot., Ex. 1 at 8. Plaintiffs objected that the request was irrelevant. *Id.*, Ex. 2 at 34. As established above, the mere existence of an agreement or communication with a litigation funder can be relevant and discoverable. While plaintiffs have already admitted on the record to having a relationship with a litigation funder, they should also serve an amended response to Elbit's Request for Admission No. 14, regarding any communications with the litigation funder after an agreement with the funder was reached. As to that request, Elbit's second motion to compel is granted in part. Plaintiffs shall produce such communication for *in camera* review by the court and may

interpose any objection they may have regarding any work-product protection or attorney-client privileges.

        (ii.)    Communications with the litigation funder.

At the hearing, Elbit emphasized that it seeks not only the litigation funding agreement itself but any documents that may have been disclosed to a litigation funder.  Hr'g Tr. 25:5-11.  This interest is further supported by its Requests for Admission Nos. 15-21, 26 and 27, which all seek to have plaintiffs admit to having discussed various topics with a litigation funder.  Def.-Int.'s Second Mot., Ex. 1 at 8-10.  Elbit argues that the information turned over to a litigation funder as part of its investigation on whether to finance the case is relevant and not protected by any protection or privilege.  Hr'g Tr. 25:12 to 26:6.  Plaintiffs challenge the relevancy of these documents.  Hr'g Tr. 40:20 to 41:1.  Courts have reached different conclusions on whether the documents provided to a litigation funder are discoverable.  *Compare Leader Techs., Inc. v. Facebook, Inc.*, 719 F. Supp. 2d 373 (D. Del. 2010) (holding that a magistrate judge had not committed clear error in finding no privilege between plaintiff and a litigation funder), *with United States v. Homeward Residential, Inc.*, No. 4:12-CV-461, 2016 WL 1031154 (E.D. Tex. March 15, 2016) (holding that privilege had not been waived as to documents shared with a litigation funder).  The court need not wade into that thicket at this time as many of the documents that may have been provided to plaintiffs' litigation funder could have already been produced during the course of discovery.  To that end, plaintiffs should identify what documents, if any, have been produced to a litigation funder that have also already been produced and what pertinent documents it is withholding and on what grounds.  As to the requests for admission, plaintiffs need not admit to having discussed or produced documents to a litigation funder beyond what it identifies in its supplemental production.

    *6.   Discovery requests related to communications (RFPD Nos. 3, 5, 9, and 13 and RFA Nos. 75-87).*

Requests for Production Nos. 3, 5, 9 and 13 each seek categories of documents.  Each asks for documents or communications relating to or referencing the patents, agreements relating to security systems, or this case in general.  Def.-Int.'s First Mot., Ex. 1 at 7-8.  These requests are broad and unfocused.  While plaintiffs have an obligation to respond fully to discovery requests, Elbit also has an obligation to tailor its requests such that they are likely to produce relevant information while also being sufficiently specific so as not to burden plaintiffs with producing every document relating to communications no matter how irrelevant to any issue in the case or however insignificant.  These requests by Elbit are unavailing.

Similarly, Requests for Admission Nos. 75-87 seek admissions from plaintiffs regarding whether they or their counsel have communicated with Paw Paw Management.  *See* Def.-Int.'s Second Mot., Ex. 1 at 16-18.  Plaintiffs responded to each request by stating that "Discovery Patents members and Paw Paw Management members are the same individuals.  Plaintiffs deny that they have had communications with Paw Paw Management members acting in the scope of their responsibilities as Paw Paw Management personnel."  *Id.*, Ex. 2 at 49-53.  Elbit contends that it did not ask in what capacity plaintiffs communicated with Paw Paw Management.  Def.-Int.'s Second Mot. at 8.  At the status conference on January 5th, plaintiffs' counsel stated that

"Paw[]Paw Management doesn't really exist anymore except in corporate form." Hr'g Tr. 25:18-20. In light of this reality plus the broad nature of Elbit's requests, plaintiffs' responses sufficiently answer the requests for admission and plaintiffs need not supplement their answers.

7. *Discovery requests relating to production made in the case (RFPD Nos. 27, 29, 30, 31, and 33).*

Requests for Production Nos. 27, 29, 30, 31, and 33 are broad requests asking plaintiffs to produce documents supporting their contentions, documents used by plaintiffs to prepare filings and discovery responses, and documents concerning any subpoena in the case. Def.-Int.'s First Mot., Ex. 1 at 11-12. These requests are likely to produce only cumulative and duplicitous productions. Where plaintiffs have stated that they have produced or will produce all responsive documents, they have satisfied their obligations as to these requests.

8. *Miscellaneous Discovery Requests (RFPD Nos. 14, 19, and 20).*

*(i.)    Documents relating to Elbit.*

Request for Production No. 14 seeks all documents in plaintiffs' possession relating to Elbit itself. Def.-Int.'s First Mot., Ex. 1 at 8. At the hearing on January 12th, Elbit's counsel stated that Elbit sought the documents plaintiffs had gathered and intended to rely on from plaintiffs' "investigation into our products and what they think infringes." Hr'g Tr. 13:9 to 14:3. To the extent plaintiffs have documents they gathered regarding Elbit prior to filing suit, they should identify and disclose them. Plaintiffs may assert any work-product protection that may apply. Beyond those parameters, Elbit's request is overly broad.

*(ii.)   Documents relating to plaintiffs' employees.*

Requests for Production Nos. 19 and 20 seek documents and communications involving employees who worked on plaintiffs' security systems or the development of inventions. Def.-Int.'s First Mot., Ex. 1 at 9-10. Again, these requests are overly broad, particularly insofar as "any work" is concerned. Further, plaintiffs were required to disclose any persons who may possess knowledge relating to the case in their initial disclosures. Therefore, Elbit's first motion to compel is denied as to these requests.

9. *Summary.*

In sum, plaintiffs should amplify or clarify their production and responses as to the following requests for production: 1, 2, 4, 7, 10, 11, 14, 15, 21, 23, 24, 26, and 28. Further responses by plaintiffs should also be provided for Interrogatory Nos. 1, 3, and 6. Plaintiffs should also provide clarified answers to Requests for Admission Nos. 14, 42-45 and 56. Plaintiffs should make these clarifications by March 1, 2022. Further, if plaintiffs have withheld documents to *any* of Elbit's requests for production on the basis of the work-product protection or privilege, plaintiffs must provide a privilege log as required by RCFC 26(b)(5)(A). Where specified, Elbit's overly broad requests cannot serve to require responses from plaintiffs.

### B. *Format of Discovery Responses*

Beyond Elbit's contentions that plaintiffs' responses are incomplete, Elbit also argues that some of plaintiffs' production is in an unusable format and has been Bates stamped in such a way that the division of documents is not apparent. *See* Def.-Int.'s First Mot. at 28-29. Specifically, Elbit states that (1) some production was made in the PDF Portfolio format, (2) that some production was provided as a single PDF without distinct document boundaries, (3) some files' Bates numbers are illegible or missing, and (4) the metadata is missing from all of plaintiffs' production. *Id.* at 29.[17] Plaintiffs responded that the majority of the alleged deficiencies identified by Elbit concern documents produced in response to requests regarding the related litigation. Pls.' Cross-Mot. at 14. Plaintiffs contend that they produced the documents in the format that was produced to them by the defendants in the related litigation and that plaintiffs did not have permission from the other parties to that litigation to alter the production (which contains confidential and sensitive information). *Id.* at 16. Both Elbit and the government contend that the problems with plaintiffs' production extend beyond the documents produced from the related litigation. *See* Hr'g Tr. 58:1-21; 61:3-11. Elbit asks the court to compel plaintiffs to produce documents in the format sought in its instructions to its discovery requests, that is, .TIFF. Def.-Int.'s First Mot. at 31. Alternatively, Elbit asks that plaintiffs be required to cover the cost of converting the documents into a format that is compatible with an e-discovery platform. Def.-Int.'s Resp. and Reply at 21.

Elbit notes that some courts have adopted local rules requiring production to be made in a certain format. *See* Def.-Int.'s First Mot. at 31 n.11. This court has not adopted such a provision. Rather, RCFC 34(b)(1)(C) permits the requesting party to "specify the form or forms in which *electronically* stored information is to be produced." RCFC 34(b)(1)(C) (emphasis added). Importantly, that provision applies to electronically stored information only. The documents at issue in this case are copies of documents from related litigation. Rule 34(b)(2)(E)(i) requires only that those types of documents be produced "as they are kept in the usual course of business or [be] organize[d] and label[ed] to correspond to the categories in the request." RCFC 34(b)(2)(E)(i). Plaintiffs state they produced the documents as they were provided by the defendants in the related litigation. Pls.' Cross-Mot. at 15. Therefore, the native format satisfies the requirements of the rule despite not being compatible with e-discovery platforms or containing metadata. That said, plaintiffs must produce documents such that they are readable, identifiable, and have readily circumscribed boundaries. In short, plaintiffs need not reproduce their documents in a different format but should produce them with clear Bates numbering or alternatively provide an index which identifies the boundaries of what is being

---

[17] Corresponding to each numbered problem, Elbit identified the following Bates numbers: (1) DP20170922, DP20170925, DP20170926, DP20170927, DP20171002, DP20171003, DP20171004, DP20171006, DP20171017, (2) DP20171018, DP20190603, DP20190611, and (3) DP20171018, DP20171004, DP20190603. Def.-Int.'s First Mot. at 29.

Additionally, Elbit originally contended that six spread spreadsheets designated DP20190611 could not be read. *Id.* Plaintiffs responded that the problem had been remedied in 2019 after the court's Order of November 19, 2019, ECF No. 320. Elbit has conceded that the requested documents have been produced. Def.-Int.'s Resp. and Reply at 21 n.15, ECF No. 557.

produced. Elbit should list the specific files or documents that may require clarification by February 15, 2022, and plaintiffs should rectify any issues by March 1, 2022.

### C. Protective Order & Romrell's Staff

As noted, an issue arises regarding plaintiffs' damages expert, Karen Romrell, and the admission of her staff to the protective order. Pls.' Reply at 3. Plaintiffs contend that Elbit has objected to members of Ms. Romrell's staff being given access to confidential information. *Id.* at 5. Elbit was granted leave to file a sur-reply, where it stated that it objected to "seven additional damages 'experts'" being given access to its confidential information. Def.-Int.'s Sur-Reply at 2.[18] Elbit states that five of the proposed consultants work at entities other than Ms. Romrell's company. *Id.* at 3 n.2. At the hearing, counsel for Elbit stated that if Ms. Romrell's "own staff, working within her company, were to sign on to the protective order, that would satisfy E[lbit]'s requirements." Hr'g Tr. 59:8-15. Counsel for plaintiffs then clarified that the individuals seeking to be granted access would be "independent contractors . . . she wishes to use . . . as staff[]members." Hr'g Tr. 71:11-20. After the hearing, counsel for plaintiffs advised that it sought to add one "true consulting expert," three individuals who are on that expert's staff, and one individual who would serve as a bookkeeper. Pls.' Notice, Ex. 3, ECF No. 569-3.

Elbit's blanket objection is improper. Nonetheless, in light of the sensitive nature of this case, the court orders that, absent cause, three specifically designated aides to Ms. Romrell plus the bookkeeper be granted access to confidential information under the protective order. If any party objects to the designated persons, they must articulate specific cause for the objection.

### D. De-designation of Elbit's Correspondence of December 17, 2021

In its correspondence of December 17, 2021, Elbit quoted excerpts from plaintiffs' responses to Elbit's requests for admission. *See generally* Def.-Int.'s Second Mot., Ex. 3. The correspondence was not marked as confidential nor did Elbit first seek plaintiffs' opinion or permission before quoting these responses. Fortunately, the quoted excerpts appear to be innocuous. But certainly, plaintiffs' responses to Elbit's requests for admission contain confidential and proprietary information subject to the protective order, which is why plaintiffs put the "competition sensitive information subject to protective order" designation on those responses. *See, e.g.*, *id.*, Ex. 2 at 1. The best and appropriate course of action when quoting from materials any party has marked as confidential is to either maintain the confidential designation or to confer with the owner of the quoted material to first discuss the designation of the material and in the event of disagreement to go through the de-designation process prior to the sharing of the quoted materials with even qualified persons.

The quoted materials in the correspondence here do not contain any actual confidential information. Rather, they are benign quotations from a document that otherwise contains sensitive information. While plaintiffs stated in their response to Elbit's second motion to

---

[18] Plaintiffs proposed either seven or eight additional experts. *Compare* Pls.' Reply at 4, *with* Def.-Int.'s Sur-Reply at 2. This discrepancy does not have any bearing on the court's analysis.

17

compel that their main objection was to the quoted language regarding the existence of a litigation funder, *see* Pls.' Seccond Resp. at 4, the court has previously addressed that the existence of a litigation funder is discoverable and is not in itself confidential, *see supra* Section A.5(i). Therefore, Elbit's motion to de-designate the correspondence as confidential is GRANTED, but the court cautions the parties to take the utmost care when dealing with each other's confidential information and to seek the owner's permission prior to quoting from documents designated as confidential in non-confidential communications, even if the quotations appear innocuous.

## CONCLUSION

For the reasons stated, both of Elbit's motions to compel are GRANTED IN PART AND DENIED IN PART. The following relief is ordered:

(1) Plaintiffs shall clarify their answers to Requests for Production Nos. 1, 2, 4, 7, 10, 11, 14, 15, 21, 23, 24, 26, and 28; Interrogatory Nos. 1, 3, and 6; and Requests for Admission Nos. 14, 42-45, and 56.

(2) Plaintiffs shall produce any litigation funding agreements relating to this litigation, as well as documents provided to any such litigation funder, for *in camera* review by the court.

(3) Elbit shall identify the documents from plaintiffs' production that are not readable or lack boundaries by their Bates numbering (or when the Bates numbering is unavailable by some other identifiable method). Plaintiffs shall then provide updated production rectifying the legibility or scope of the documents so identified, or if that is not possible, an index clarifying what the documents are and where they begin and end.

(4) Three specifically designated aides to Ms. Romrell and a bookkeeper may be admitted to the protective order unless an objector can identify specific cause to deny the designated person(s) access.

(5) Elbit's December 17, 2021 correspondence is designated as not confidential under the protective order. Plaintiffs' responses to Elbit's requests for admission as a whole remain covered by the protective order.

Plaintiffs' cross-motion to compel is DENIED AS MOOT. Additionally, the court will not grant fees and costs to either party. Elbit should provide any narrowed requests and identify the unreadable documents from plaintiffs' production by February 15, 2022. Plaintiffs' responses required by this opinion and order shall be provided by March 1, 2022. The parties are also requested to propose a schedule for further proceedings and deadlines.

It is so **ORDERED**.

s/Charles F. Lettow
Charles F. Lettow
Senior Judge