# In the United States Court of Federal Claims

No. 15-501C

(Filed: October 4, 2023)

|  |  |
|---|---|
| 3RD EYE SURVEILLANCE, LLC and DISCOVERY PATENTS, LLC, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| UNITED STATES, | ) ) |
| Defendant, | ) ) |
| and | ) ) |
| ELBIT SYSTEMS OF AMERICA, LLC, GENERAL DYNAMICS ONE SOURCE LLC, and NORTHROP GRUMMAN SYSTEMS CORPORATION, | ) ) ) ) ) ) ) |
| Defendant-Intervenors. | ) ) |

Stephen A. Kennedy, Kennedy Law, PC, Dallas, TX for plaintiffs 3rd Eye Surveillance, LLC and Discovery Patents, LLC.

James P. Hughes, Trial Attorney, Intellectual Property Section, Civil Division, United States Department of Justice, Washington, D.C. for the United States. With him on the briefs were Brian M. Boynton, Principal Deputy Assistant Attorney General, Gary L. Hausken, Director, and Scott Bolden, Acting Director, Civil Division, United States Department of Justice, Washington, D.C.

Kurt G. Calia, Covington & Burling LLP, Palo Alto, CA for defendant-intervenor Elbit Systems of America, LLC. With him on the briefs were Ranganath Sudarshan, Matthew Kudzin, Yiye Fu, Jennifer D. Cieluch, and Ryan R. Roberts, Covington & Burling LLP.

Gregory H. Lantier, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C. for defendant-intervenor Northrop Grumman System Corporation. With him on the briefs was Andrew E. Shipley, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C.

Scott A. Felder, Wiley Rein LLP, Washington, D.C. for defendant-intervenor General Dynamics One Source LLC.

### OPINION AND ORDER

LETTOW, Senior Judge.

Pending before the court in this patent infringement case are the parties' claim construction briefs following the United States Patent and Trademark Office's ("PTO") *ex parte* reexamination of the asserted patents. As a result of that reexamination, the PTO cancelled numerous claims from three at-issue patents and applied a means-plus-function limitation to the only surviving claims. Notice of Filing Corrected Exs. to Joint Status Report ("Notice") Ex. 5, ECF No. 627-3; Notice Ex. 4, ECF No. 627-2; Notice Ex. 3, ECF No. 627-1. The defendants' filed their opening claim construction brief on July 27, 2023. Defs.' Opening Claim Construction Br. ("Defs.' Br."), ECF No. 633. Plaintiffs filed their response on August 17, 2023, Pls.' Resp. to Defs.' Non-Conforming Claim Construction Br. ("Pls.' Resp."), ECF No. 634, and defendants filed their reply on August 31, 2023. Defs.' Reply Claim Construction Br. ("Defs.' Reply"), ECF No. 635. The resulting issues are now ready for disposition.

### BACKGROUND[1]

#### *A. Procedural history*

*1. Amended complaint.*

Plaintiffs filed suit in this court on May 15, 2015, alleging that the government was infringing on three of their patents. *See* Compl. ¶ 5, ECF No. 1; Fourth Am. Compl. ¶ 13, ECF No. 323. Plaintiffs' patents, Patent Nos. 6,778,085 ("the '085 patent"), 6,798,344 ("the '344 patent"), and 7,323,980 ("the '980 patent"), were the basis for their claims.[2] Compl. ¶ 5. Each of plaintiffs' patents relate to security systems with attendant imagery capabilities. *See 3rd Eye Surveillance, LLC v. United States*, 140 Fed. Cl. 39, 46, 54 (2018). Plaintiffs allege that "[t]he [g]overnment operates a series of security systems in airports, office buildings[,] and other locations that the [g]overnment considers secure locations that require monitoring," and these

---

[1] The recitations that follow do not constitute findings of fact but rather are recitals attendant to the pending briefs and reflect matters drawn from the complaint, the parties' briefs, and documents attached to those briefs.

[2] 3rd Eye Surveillance, LLC is the exclusive licensee of all rights to the three patents that plaintiffs allege were infringed and Discovery Patents is the assignee. Fourth Am. Compl. ¶¶ 13-15. The three patents expired in 2022.

security systems infringe plaintiffs' patents. *See* Fourth Am. Compl. ¶¶ 17-20. Extensive proceedings have ensued since 2015.[3]

*2. This Court's 2018 Claim Construction Opinion.*

In 2018 this court issued an opinion deciding claim construction for the three patents that plaintiffs asserted were "valid and actually infringed." *3rd Eye Surveillance, LLC*, 140 Fed. Cl. at 46, 59.[4] The parties followed the patent claim construction procedures outlined in Rules 9-15 of Appendix J of the Patent Rules of the United States Court of Federal Claims, including submitting their proposed claim construction for the 13 terms they disputed. In the court's claim construction opinion, the court ruled on claim construction for each of these 13 terms. *3rd Eye Surveillance, LLC*, 140 Fed. Cl. at 59-72. Only 8 of those 13 terms appear in claims 1-10 of the '980 patent. *Id*. This court now recites these eight terms, the parties' proposed claim constructions for each, and the court's 2018 claim construction. The parties did not address and so the court did not then resolve whether these eight terms should be considered under a means-plus-function limitation.

---

[3] After proceedings first began in this court in 2015, the court directed plaintiffs to refine their complaint and directed the clerk's office to notify entities that may have an interest in the case. *3rd Eye Surveillance, LLC v. United States*, 124 Fed. Cl. 438, 444 (2015); *3rd Eye Surveillance, LLC v. United States*, 126 Fed. Cl. 266, 277 (2016); Order of July 8, 2016, ECF No. 80; Order of August 23, 2017, ECF No. 164. With the interested parties identified, preliminary discovery and discovery disputes ensued. *See* Scheduling Order of December 13, 2016, ECF No. 112; *see, e.g.*, *3rd Eye Surveillance, LLC v. United States*, 133 Fed. Cl. 273 (2017). The operative complaint is plaintiffs' fourth amended complaint. *See* Fourth Am. Compl.; Order of November 19, 2019, at 2, ECF No. 320 (directing plaintiffs to file a fourth amended complaint including "all of the relevant information they have regarding the alleged infringing systems").

On July 28, 2020, the court recognized that "[p]rogress in this case ha[d] stalled somewhat since plaintiffs filed their fourth amended complaint," in part due to discovery delays caused by the Covid-19 pandemic. Order of July 28, 2020, at 1-2, ECF No. 381. The court addressed these delays by directing plaintiffs to identify 11 potentially infringing systems to serve as bellwethers and limited discovery to these 11 systems. *Id*. As discovery proceeded, the court noted that "the parties' efforts in discovery appear[ed] to have focused largely on Bellwether Systems One, Four, and Five," all involving "only one intervening defendant, Elbit Systems, and nonparty [Science Applications International Corporation]," and therefore further limited the case to those three systems. *3rd Eye Surveillance, LLC v. United States*, 155 Fed. Cl. 355, 362-63 (2021).

[4] In its claim construction opinion, the court first recounted the claims that plaintiffs were pursuing at the time. *3rd Eye Surveillance, LLC*, 140 Fed. Cl. at 55-59. Plaintiffs then focused on claims 3-6, 8-10, 12-14, 17-19, 30, 34, and 36-55 of the '085 patent, claims 6-10 of the '344 patent, and claims 1-10, 13, and 15 of the '980 patent. *Id.* at 59.

3

The first of the eight terms ("term 1" in the 2018 opinion) was "**Security system central station**" and "**security system central monitoring station.**" It appears in claims 1, 3, 5, and 7 of the '980 patent. *3rd Eye Surveillance, LLC*, 140 Fed. Cl. at 59-60. Plaintiffs proposed the construction "a central facility that monitors a [client's] secured location," while defendants proposed the construction, "[t]he facility of security companies that monitors remotely-located secured locations for their clients." *Id.* The court adopted plaintiffs' proposed construction. *See id.* at 60.

The second term ("term 2" in the 2018 opinion) was "**Realtime imagery**" and its associated variants, "**real-time imagery**," "**realtime video**," and "**real-time imagery data**." It appears in claims 1 and 2 of the '980 patent. *3rd Eye Surveillance, LLC*, 140 Fed. Cl. at 60-61. Plaintiffs proposed the construction "[i]magery—as seen (1) by a sensor (*e.g.*, IR or PMMW), (2) as video, and/or (3) as still images—made available for viewing without intentional delay." *Id.* at 61. Defendants countered with the construction "[i]magery [or video, where appropriate] relating to the actual time that an event occurs such that the imagery [or video] can be used by trained personnel, including security personnel, to control, monitor, or respond in a timely manner to the event's occurrence." *Id.* The court constructed term 2 as "**video or other pictoral or representational images derived from cameras or sensors made available for viewing as the actual events occur, subject to the laws of physics and the capability of the technology employed respecting transmission**." *Id.*

The third term ("term 3" in the 2018 opinion) was "**Emergency response agency**," "**emergency response agencies**," "**response agency**," and "**response agencies**." It appears in claim 1 of the '980 patent. *3rd Eye Surveillance, LLC*, 140 Fed. Cl. at 61-62. Plaintiffs proposed the construction "[a] federal, state, or local organization capable of responding to an emergency and/or a perceived emergency," while defendants proposed the construction "[a] federal[,] state, or local organization, distinct from the security system central [monitoring] station, capable of responding to an emergency and/or a perceived emergency." *Id.* at 62. The court adopted plaintiffs' construction of term 3. *Id.*

The fourth term ("term 5" in the 2018 opinion) was "**Secured location**." It appears in claims 1, 2, 3, and 8-10 of the '980 patent. *3rd Eye Surveillance, LLC*, 140 Fed. Cl. at 63. Plaintiffs proposed the plain and ordinary meaning, and defendants proposed the construction "[a]ny location, outside or inside, which is protected by a security alarm system." *Id.* The court determined the "plain meaning of the term [was] preferred." *See id.* at 64.

The fifth term ("term 9" in the 2018 opinion) was "**Biometric information**." It appears in claims 2 and 3 of the '980 patent. *3rd Eye Surveillance, LLC*, 140 Fed. Cl. at 66. Plaintiffs proposed the plain and ordinary meaning, and defendants proposed the construction "[i]magery data of a biological feature of a person having a high enough resolution that the imagery data can be analyzed to provide identifying information." *Id.* The court adopted plaintiffs' "ordinary and plain meaning" construction. *Id.* at 67.

The sixth term ("term 11" in the 2018 opinion) was "**Based on at least one of the additional information and the imagery data**." It appears in claim 1 of the '980 patent. *3rd Eye Surveillance, LLC*, 140 Fed. Cl. at 68. Plaintiffs proposed a disjunctive construction: "one

4

or more additional information, one or more imagery data, or one or more of both," and defendants proposed a non-disjunctive construction: "[b]ased on at least one of the additional information and at least one of the imagery data." *Id.* The court adopted plaintiffs' disjunctive construction. *Id.* at 70.

The seventh term ("term 12" in the 2018 opinion) was "**Wherein the additional information is automatically generated by the computer system,**" which appears in claim 4 of the '980 patent. *3rd Eye Surveillance, LLC*, 140 Fed. Cl. at 70. Plaintiffs proposed the plain and ordinary meaning, and defendants proposed "[a]dditional information associated with the received imagery data is generated by the computer system associated with the security system central monitoring station without intervention of any personnel." *Id.* The court "conclude[d] that a person of ordinary skill in the art could (and should) ascertain with 'reasonabl[e] certainty' the scope of term 12" and that the term need not be constructed. *Id.* at 71.

The eighth term ("term 13" in the 2018 opinion) was "**Analyzing the biometric information**" and "**analyze the biometric information**," which appears in claims 2 and 3 of the '980 patent. *3rd Eye Surveillance, LLC*, 140 Fed. Cl. at 71. Plaintiffs proposed the plain and ordinary meaning, and defendants construed the term as "[c]omparing[/compare] the biometric information to information stored in a database." *Id.* The court adopted defendants' construction of term 13. *Id.* at 72.

3. *The Court stayed this case in 2022 pending* ex parte *reexamination at the PTO regarding the patents' validity.*

In December 2021, non-party Toering Patents filed requests for *ex parte* reexamination by the PTO under 35 U.S.C. §§ 302-07 and 37 C.F.R. § 1.510, arguing that the three patents were invalid. *See* Defs.' Mot. to Stay the Proceedings ("Defs.' June 13, 2022, Mot. to Stay") Exs. 4-6, ECF Nos. 607-5 to 607-7. In these requests, Toering alleged that the patents' claims were invalid as anticipated or obvious due to prior art references. Defs.' June 13, 2022, Mot. to Stay at 4-5. In March 2022, the PTO instituted *ex parte* reexaminations of the three asserted patents.[5]

On June 13, 2022, defendants filed a motion to stay the proceedings pending *ex parte* reexamination by the PTO. Defs.' June 13, 2022, Mot. to Stay. Plaintiffs opposed defendants'

---

[5] Separately, in 2016, the government submitted six *inter partes* review petitions asking the United States Patent Trial and Appeal Board ("PTAB") to rule that every claim in the plaintiffs' three patents was invalid pursuant to 35 U.S.C. §§ 311-319. Joint Prelim. Status Report at 3-4, ECF No. 51. PTAB denied five of the *inter partes* review petitions, but instituted proceedings on the sixth application, which involved the '980 patent. *3rd Eye Surveillance, LLC*, 140 Fed. Cl. at 48-49. PTAB ultimately granted the sixth application in part, "finding claims 11-12, 14, 16-18, and 20-31 of the '980 patent were 'unpatentable over the cited prior art,'" and denied it in part, with respect to claim 13. *Id.* (quoting *Dep't of Just. v. Discovery Pats., LLC*, No. IPR2016-01041, Paper No. 29, 2017 WL 5446312, at *8, *15 (P.T.A.B. Nov. 9, 2017)). Plaintiffs did not appeal this ruling. *Id.*

motion, averring that some or all of the patent claims at issue would survive reexamination and plaintiffs would therefore be prejudiced by the delay that the stay would cause. *See* Pls.' Resp. to Defs.' Mot. to Stay the Proceedings at 7-9, ECF No. 609. On July 27, 2022, this court granted defendants' motion and stayed the case accordingly. *See 3rd Eye Surveillance, LLC v. United States*, 160 Fed. Cl. 636, 642 (2022). The court also directed the parties "to file a joint status report within ten business days after the final determination in those proceedings." *Id*.

*4. This court denied plaintiffs' February 2023 motion to lift the stay.*

On February 8, 2023, plaintiffs filed a motion to lift the stay and schedule a trial on the '980 patent for Bellwether Systems 1, 4, and 5. Pls.' Mot. to Lift Stay and Req. for Status Conference to Schedule Trial at 5, ECF No. 618. Plaintiffs represented that the PTO determined that claims 1-10 of the '980 patent were patentable but acknowledged that "the [']344 patent and [']085 patent [were] still proceeding in the Patent Office." *Id.* at 4. Plaintiffs requested that the court lift the stay "as to the allegations involving the [']980 [p]atent for all purposes and . . . set [a trial] on the [']980 [p]atent for Bellwether System 1 . . . and Systems 4-5." *Id.* at 4-5.

Along with their motion to lift the stay, plaintiffs filed a notice stipulating that they would cabin their infringement claims before this court. Plaintiffs stipulated that they "w[ould] not assert infringement of any of the claims in the [']085 [p]atent or the [']344 [p]atent" or "infringement of claims 11-31 of the [']980 [p]atent" "against Bellwether Systems 1, 4, and 5." Notice of Stipulation Concerning Pls.' Infringement Claims at 3, ECF No. 619. In addition, they stipulated that plaintiff "Discovery Patents w[ould] not appeal the examiner's final determination with respect to claims 11-31 of the [']980 [p]atent," but they acknowledged that "Discovery Patents [was] assessing whether to continue appeals involving the [']344 and [']085 [p]atents." *Id.* Discovery Patents had already appealed the reexaminations of the '344 and '085 [p]atents to PTAB. Defs.' Opp'n to Pls.' Mot. to Lift Stay and Req. for Status Conference to Schedule Trial at 1, ECF No. 620.

Defendants opposed plaintiffs' motion to lift the stay, contending that neither the status of the reexaminations nor plaintiffs' stipulation warranted a lift of the stay. Defs.' Opp'n to Pls.' Mot. to Lift Stay and Req. for Status Conference to Schedule Trial at 1-2. Because the PTO had not yet concluded its *ex parte* reexamination of all three patents, the court denied plaintiffs' motion. Order of February 23, 2023, at 3, ECF No. 621.

*5. Final determination reached in the* ex parte *reexamination by the PTO.*

On June 1, 2023, the parties filed a joint status report informing the court that a final determination had been reached in the *ex parte* reexaminations of the three patents asserted in this case. Joint Status Report at 1, ECF No. 623. The PTO had issued a reexamination certificate canceling all of the claims of the '344 and '085 patents. *Id.* at 4; Notice Exs. 4-5, ECF Nos. 627-2 and 627-3. Nonetheless, the PTO issued a reexamination certificate confirming claims 1-10 of the '980 patent as patentable and canceling the remaining claims of that patent. Joint Status Report at 4; Notice Ex. 3, ECF No. 627-1 ("The patentability of claims 1-10 is

6

confirmed" and "[c]laims 11-31 are cancelled.").[6]  Therefore, as a result of the PTO *ex parte* reexaminations, only claims 1-10 of the '980 patent remain.  *See* Joint Status Report at 4.  Claim 1 is the only independent claim; claims 2-10 are dependent on claim 1.  Def.'s Br. At 3.  A patent owner may appeal PTO ex parte reexamination decisions to PTAB and may then appeal PTAB's decision only to the Federal Circuit. See 35 U.S.C. §§ 306, 134(b), 141(b).  Plaintiff Discovery Patents did not appeal within the two-month period set by the PTO's final decision.  See Def.'s Br. Ex. 2, at 32-34, ECF No. 633-2; Def.'s Br. Ex. 3, at 1, 4, ECF No. 633-3; Def.'s Br. Ex. 5, ECF No. 633-5; see also 37 C.F.R. § 41.31(a)(3) (authorizing the PTO to set a response deadline earlier than the default six-month deadline set by 37 C.F.R. § 1.134).

6. *The PTO's claim construction of claim 1 of the '980 patent.*

The PTO determined that claims 1-10 of the '980 patent were patentable after constructing the claims under the means-plus-function limitation.

Claim 1 of the '980 patent, recites:

A security system comprising:
an imaging device positioned at a secured location;
a computer system associated with a security system central monitoring station, said computer system configured to:
receive real-time imagery data from said secured location;
process the received imagery data;
generate additional information associated with the received imagery data;
identify an appropriate response agency from amongst a plurality of response agencies based on at least one of the additional information and the imagery data; and

---

[6] On August 19, 2022, the PTO issued a non-final office action for the '980 patent, *see* Defs.' Br. Ex. 2, at 2-3, ECF No. 633-2, to which the patent owner responded on November 21, 2022, Defs.' Br. Ex. 1, ECF No. 633-1.  The PTO then issued its final office action on February 7, 2023, confirming claims 1-10 of the '980 patent as patentable and canceling claims 11-31. Defs.' Br. Ex. 2, at 16, 24.  On March 20, 2023, the patent owner responded to the PTO's final office action for the '980 patent, "request[ing] entry of the claim amendments, consideration of [their] remarks, and issuance of [a] Notice of Intention to Issue Reexamination Certificate." Defs.' Br. Ex. 3, at 1, ECF No. 633-3.  Plaintiffs remarked that they were "acknowledg[ing] with appreciation the confirmation that claims 1-10 are patentable," "cancel[ing] rejected claims 11-31," and "request[ing] issuance of the Notice of Intention to Issue Reexamination Certificate." *Id.* at 4.  On April 6, 2023, the PTO issued its notice of intent to issue a reexamination certificate.  Defs.' Br. Ex. 5, at 2, ECF No. 633-5.  In it, the PTO stated that the reasons claims 1-10 of the '980 patent were found patentable were given in the final rejection on February 7, 2023 and repeated those reasons.  *Id.*

> transmit the received imagery data and the additional information to a computer system associated with a response agency.[7]

Fourth Am. Compl. Ex. 3, at col. 12 ll. 36-52, ECF No. 323-3.

The PTO determined that claims 1-10 of the '980 patent were patentable as constructed under 35 U.S.C. § 112, sixth paragraph of the Patent Act, the means-plus-function limitation. *See* Defs.' Br. Ex. 2, at 16-23.  Section 112 as a whole establishes specificity, or definiteness, requirements that claims must meet to be patentable. *See* 35 U.S.C. § 112. Section 112, sixth paragraph, in turn, establishes the means-plus-function limitation. *See id.*; *see also* Defs.' Br. Ex. 2, at 16-18; Defs.' Br. Ex. 5, at 2.[8]

The means-plus-function limitation in section 112, sixth paragraph permits a limitation on a claim for a combination to be "expressed as a means or step for performing a specified function" even if the claim does not recite the "structure, material, or acts in support" of the specified function. 35 U.S.C. § 112, sixth paragraph. Claims so limited "shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." *Id.*  In this provision, "Congress struck a balance in allowing patentees to express a claim limitation by reciting a function to be performed rather than by reciting structure for performing that function, while placing specific constraints on how such a limitation is to be construed, namely, by restricting the scope of coverage to only the structure, materials, or acts described in the specification as corresponding to the claimed function and equivalents thereof." *See Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1347 (Fed. Cir. 2015).

The PTO interpreted the "computer system" limitation as a means-plus-function limitation and identified the algorithm that claim 1's computer system is written to execute.[9] As

---

[7] In addition to discussing and interpreting the text of independent claim 1, the PTO also interpreted dependent claims 2 and 3, in relation to claim 1. *See* Defs.' Br. Ex. 2, at 18-23.

[8] The Leahy-Smith America Invents Act ("AIA") designated 35 U.S.C. § 112, sixth paragraph as 35 U.S.C. § 112(f). Pub. L. No. 112-29, § 4(c), 125 Stat. 284, 296 (2011). This only applies to patent applications "filed on or after" September 16, 2012. *See* AIA § 4(e), 125 Stat. at 297.  Because the application for the '980 patent was filed before 2012, the PTO relied on the pre-AIA version of this statute. *See* Def.'s Br. Ex. 2, at 16-17, ECF No. 633-2.

[9] The Manual of Patent Examining Procedure ("MPEP") § 2181, subsection I establishes a multi-part test to determine if the means-plus-function limitation applies. MPEP § 2181 (9th ed. Rev. 7.2022, Feb. 2023).  If a claim does not include the words "means" or "steps," there is a rebuttable presumption that the claim limitation should not be interpreted under section 112, sixth paragraph. *Id.*  The presumption, however, is rebutted, and the claim is interpreted under section 112, paragraph 6, when the claim limitation states a function without stating "sufficient structure, material[,] or acts to entirely perform the recited function." Defs.' Br. Ex. 2, at 17. Here, the PTO interpreted the claims under section 112's sixth paragraph despite the absence of

constructed under section 112, sixth paragraph, the PTO determined that "[c]laims 1-10 [of the '980 patent] are directed to a security system comprising a computer system that is configured to perform various functions." Defs.' Br. Ex. 5 at 2. These specified functions include "the claimed receive, process, generate, identify, and transmit steps." *Id.* Therefore, the claims were construed to cover the corresponding structure of the computer system, which was in the form of an algorithm. *See id.* The PTO found that the algorithm disclosed by claim 1's computer system involves:

>   (a) receiving real-time imagery from a secured location;
>   (b) processing the received imagery data;
>   (c) generating additional information associated with the received imagery data by:
>     (1) receiving data in the form of an alarm notification at a central server; and
>     (2) extracting information indicating the type of alarm and postal address of the secured location from the received data;
>   (d) identifying an appropriate response agency from amongst a plurality of response agencies based on at least one of the additional information and the imagery data by:
>     (1) maintaining a list of the identity of all possible emergency response agencies associated the secured location;
>     (2) receiving an alarm notification signal transmitted by a server at the secured location; and
>     (3) distinguishing or extracting the type of alarm which triggered the transmission of the alarm notification and the postal address of the secured location from the alarm notification signal;
>     (4) comparing the distinguished or extracted information to the list of emergency response agencies and their functions; and
>     (5) identifying and selecting the desired response agency based on a combination of the type of alarm and postal address of the secured location; and
>   (e) transmitting the received imagery data and the additional information to a computer system associated with a response agency.

---

the words "means" or "steps" because "th[e] application includes one or more claim limitations" that "use[] a generic placeholder that is coupled with functional language without reciting sufficient structure to perform the recited function and the generic placeholder is not preceded by a structural modifier." *See* Defs.' Br. Ex. 2, at 17-18.

In addition, the PTO acknowledged that an algorithm for performing the specific function must be disclosed for computer-implemented means-plus-function limitations for specific functions. *See id.* at 18-23. The PTO determined that this algorithm requirement did not apply to the claims involving basic computing functions "receive," "process," and "transmit," and that the requirement applied and was satisfied for the claims involving the specific functions "generate" and "identify." *See id.*

Defs.' Br. Ex. 5, at 2-3.  Based on its construction of the "computer system" limitation under section 112, sixth paragraph's means-plus-function limitation, the PTO determined that [c]laims 1-10 were patentable, including over the prior art Monroe patent (U.S. 6,790,183).  Defs.' Br. Ex. 5, at 3-5.

*7.  Parties' current claim construction briefs before this court.*

Following the parties' joint status report, the court held a sealed status conference on June 20, 2023.  *See* Order of June 5, 2023, ECF No. 624.  The parties requested that the court first address how the PTO's claim construction for claim 1 of the '980 patent affects this case.  During the status conference, plaintiffs contended that the PTO's claim construction has no impact on this court's prior reported claim construction opinion, while defendants contended that the PTO's claim construction reached during reexamination must be adopted by this court.  Hr'g Tr. 8:7-18, 9:6 to 12:9 (June 20, 2023), ECF No. 630.[10]

After the status conference, the court lifted the stay and directed the parties to file a proposed schedule for addressing the claim construction issue.  Order of June 20, 2023, ECF No. 628.  After the parties filed their proposed schedule, the court issued a scheduling order for the claim construction issue.  Scheduling Order of June 28, 2023, ECF No. 632.  The parties have filed their briefs in accord with the scheduling order.

## STANDARDS FOR DECISION

### *A.  Jurisdiction*

The United States has waived sovereign immunity for patent infringement claims against the federal government "[w]henever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same."  28 U.S.C. § 1498(a).  This court has exclusive jurisdiction to adjudicate such claims.  *Id*.  Section 1498(a) states that "[f]or the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the [g]overnment and with the authorization or consent of the [g]overnment, shall be construed as use or manufacture for the United States."  *Id*.  "[S]ection 1498 is a waiver of

---

[10] Plaintiffs and defendants agreed that the PTO's *ex parte* reexamination proceedings determined that claims 1-10 of the '980 patent are valid, but plaintiffs contended that "th[is] [c]ourt's original claim construction should not be in any way, shape, or form compromised" as a result.  Hr'g Tr. 8:9-18.  Defendants argued that the PTO "expressly stated how it interpreted [c]laim 1 of the '980 patent for the purposes of determining validity" and averred that "patent law claims must be construed consistently for the purposes of validity and infringement."  Hr'g Tr. 11:12-19.  Defendants emphasized that the PTO's determination that claim 1 was patentable relied on its means-plus-function limitation construction, including "identif[ying] the specific structure in the form of an algorithm required . . . to practice that claim."  Hr'g Tr. 10:4-23.

sovereign immunity only with respect to a direct governmental infringement of a patent." *Decca Ltd. v. United State*s, 640 F.2d 1156, 1167 (Ct. Cl. 1980) (footnotes omitted).

### B. Claim Construction and Prosecution History

The construction of patent claims is a question of law for the court to decide. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 387-91 (1996). "The trial court is not required to construe every term in a patent, but it must construe any term for which claim scope is disputed." *3rd Eye Surveillance, LLC*, 140 Fed. Cl. at 53. Indeed, courts are permitted to "engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves." *Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002). When a court interprets a claim, intrinsic evidence, including the words of a claim and the prosecution history in evidence, "is the most significant source of the legally operative meaning of the disputed claim language." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).[11] The prosecution history includes the record from proceedings before the PTO. *Vitronics Corp.*, 90 F.3d at 1582. "The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995). "[T]hrough statements made during prosecution or reexamination . . . a patent owner . . . may commit to a particular meaning for a patent term, which meaning is then binding in litigation." *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1158 (Fed. Cir. 1997).

### C. Ex Parte *Reexamination Proceedings*

Sections 301-307 of the Patent Act authorize the PTO to conduct *ex parte* reexaminations. 35 U.S.C. §§ 301-307. An *ex parte* reexamination "is a curative proceeding meant to correct or eliminate erroneously granted patents." *Fresenius USA, Inc. v. Baxter Intern., Inc.*, 721 F.3d 1330, 1338 (Fed. Cir. 2013); *see also In re Etter*, 756 F.2d 852, 858 (Fed. Cir. 1985) ("[T]he focus" of reexamination proceedings "is on curing defects which occurred during a proceeding in the PTO."). The *ex parte* reexamination statute permits "[a]ny person" to request that the PTO consider prior art "which that person believes [has] a bearing on the patentability of any claim of a particular patent" or to consider "statements of the patent owner filed in a proceeding before a Federal court or the [Patent] Office in which the patent owner took a position on the scope of any claim of a particular patent." 35 U.S.C. § 301(a). The PTO will order an *ex parte* reexamination if "a substantial new question of patentability affecting any claim . . . is raised." 35 U.S.C. §§ 303-04.[12]

---

[11] "[W]ords of a claim 'are generally given their ordinary and customary meaning.' . . . [That is,] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (quoting *Vitronics Corp.*, 90 F.3d at 1582).

[12] During an *ex parte* reexamination proceeding, "the patent owner will be permitted to propose any amendment to his patent . . . to distinguish the invention as claimed from the prior

When the time to appeal an *ex parte* reexamination has passed or "any appeal proceeding has terminated, [the PTO] will issue and publish a certificate canceling any claim of the patent finally determined to be unpatentable, confirming any claim of the patent determined to be patentable, and incorporating in the patent any proposed amended or new claim determined to be patentable." 35 U.S.C. § 307(a). "Where the losing party fails to effectively review the Patent Office action in one of the courts and it becomes final, it is equally binding on the parties," as if it were a final judgment issued by a court. *See Coakwell v. United States*, 292 F.2d 918, 920 (Ct. Cl. 1961). Therefore, when reexamination proceedings cancel claims, it is binding in concurrent infringement litigation. *Fresenius USA, Inc.*, 721 F.3d at 1339-40 ("[T]he language and legislative history of the reexamination statute show that Congress expected reexamination to take place concurrent with litigation, and that cancellation of claims during reexamination would be binding in concurrent infringement litigation."). "[D]istrict court[s] must apply intervening legal developments affecting the asserted patent's validity." *Id.* at 1342 (giving effect to a PTO reexamination decision canceling claims even after the district court held those claims had been infringed).

## ANALYSIS

### A. *Effect of the PTO's reexamination and claim construction.*

Both parties agree that the PTO construed the "computer system" limitation in claim 1 of the '980 patent as a means-plus-function limitation, but they disagree on how the court should proceed. Pls.' Resp. at 9-13; Defs.' Br. at 2-3. Plaintiffs contend that the court is not required, much less permitted, to modify its prior claim construction in response to the PTO's claim construction during the *ex parte* reexamination. *See* Pls.' Resp. at 1-2. Primarily, plaintiffs raise procedural arguments.[13] They aver that the court cannot invoke Rules of the Court of Federal Claims ("RCFC") 59(a)(1) or 54(b) to modify its previous claim construction because the standards imposed by those rules have not been satisfied. *See* Pls.' Resp. at 7-9. They also contend defendants failed to follow the claim construction procedures outlined in Rules 9-15 of Appendix J of the Patent Rules of the United States Court of Federal Claims. *See* Pls.' Resp. at 2-3, 7-9.[14] Plaintiffs do not directly challenge the examiner's construction of the '980 patent.

---

art . . . or in response to a decision adverse to the patentability of a claim of a patent. No proposed amended . . . claim enlarging the scope of a claim of the patent will be permitted in a reexamination proceeding." 35 U.S.C. § 305; *see Bloom Eng'g Co., Inc. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1249 (Fed Cir. 1997).

[13] Plaintiffs' arguments concerning the substantive claim construction issue focus only on the defendants' characterizations of the examiner's claim construction and of testimony from plaintiffs' expert witness presented during reexamination. *See* Pls.' Resp. at 13-17.

[14] Rules 9-15 of Appendix J of the Patent Rules of the United States Court of Federal Claims do not apply to the current procedural posture of this case. The plaintiffs' argument that the government cannot seek modification under RCFC 54(b) is likewise unavailing because that rule explicitly allows "any of the claims" to be "revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Similarly,

12

*See id.* at 11-12 (arguing this court should apply the examiner's conclusions to advance the litigation). Rather, they ask that the court take judicial notice of the patent examiner's conclusions instead of modifying the court's 2018 claim construction. *Id.*

Defendants respond that the court "cannot take judicial notice of the Patent Office's construction, because a claim construction is a matter of law, not fact," and the court is ultimately responsible for ensuring claims are properly construed. Def.'s Reply at 7. Defendants contend that the court should adopt the PTO's claim construction for the remaining patentable claims in the '980 patent, finding that "the computer system" limitation is a means-plus-function limitation and that the algorithm steps the PTO identified are the "corresponding structure, material, or acts." Defs.' Br. at 24 (quoting Defs.' Br. Ex. 2, at 9-10).

This court adopts the PTO's claim construction of the '980 patent claim's "computer system" limitation as a means-plus-function limitation. First, the PTO's determination that claims 11-31 of the '980 patent are canceled is a final determination and binds this court. *See Fresenius USA, Inc.*, 721 F.3d at 1339-40; 35 U.S.C. § 307(a). Second, the court agrees with the PTO's construction of claims 1-10. Reexaminations "are part of the prosecution history," and are therefore part of the intrinsic evidence. *Northpeak Wireless, LLC v. 3COM Corp.*, 674 F. App'x 982, 986 n.1 (Fed. Cir. 2016). Such evidence is given substantial weight, *Vitronics Corp.*, 90 F.3d at 1582, and can influence claim construction here because no final judgment has been entered. *See Jack Guttman, Inc.*, 302 F.3d at 1361. Indeed, courts often issue supplemental claim constructions to address pertinent developments that occur in concurrent reexamination proceedings. *See, e.g.*, *Cloud Farm Assocs., L.P. v. Volkswagen Grp. of Am., Inc.*, No. 10-502-LPS, 2015 WL 4730898, at *1, 9 (D. Del. Aug. 10, 2015); *VirtualAgility, Inc. v. Salesforce.com, Inc.*, No. 2:13-cv-00011-JRG, 2014 WL 807588, at *3 (E.D. Tex. Feb. 27, 2014).

---

RCFC 59 governs when judgments may be reconsidered. As judgment has not yet been entered here, the government need not avail itself of Rule 59. Plaintiffs' reliance on *Science Appliances International Corp. v. United States* is misplaced for at least three reasons. 161 Fed. Cl. 373 (2022). In that case there was no intervening claim construction by the PTO, the court had entered partial summary judgment invalidating some of the claims in the at-issue patents, and plaintiff was "ask[ing] the [c]ourt to revisit arguments it previously advanced unsuccessfully." *See id.* at 383-84. Here, the PTO has weighed in, the court has not entered partial summary judgment, and the parties did not argue the issue of whether to interpret the computer system limitation as a means-plus-function limitation during the court's 2018 claim construction. *See 3rd Eye Surveillance, LLC v. United States*, 157 Fed. Cl. 673 (2022); *3rd Eye Surveillance, LLC v. United States*, 151 Fed. Cl. 49 (2020); Order of January 19, 2018, ECF No. 182 (denying without prejudice defendant General Dynamics One Source LLC's motion for partial summary judgment).

Here, the PTO's construction of the "computer system" as a means-plus-function limitation does not contradict this court's 2018 claim construction.  As a representative example, the PTO's construction of the term "analyzing the biometric information" was relevantly similar to this court's construction.[15]  The PTO did not construe the other terms the court constructed in 2018, but instead incorporated some of them into a series of steps that the examiner concluded comprised the algorithm disclosed by the '980 patent.  *See* Defs.' Br. Ex. 2, at 16-23.  The issue of whether the "computer system" limitation disclosed a means-plus-function limitation was neither raised nor addressed in the 2018 claim construction opinion.  *3rd Eye Surveillance, LLC*, 140 Fed. Cl. at 59-72.  None of the parties' disputes concerned the term "computer system," and their arguments regarding the terms they did dispute did not address whether those terms should be construed to impose a means-plus-function limitation.  *See supra* 3-5.

Not only is the PTO's subsequent construction consistent with the court's 2018 construction, but the PTO's claim construction is also correct.  Claim 1 fails to recite sufficient structure to perform the claimed functions and instead uses the generic place holder "computer system . . . configured to" and identifies functions implemented by said system, so the PTO's decision to interpret the claims under a means-plus-function analysis is proper.  *See* Fourth Am. Compl. Ex. 3, at col. 12 ll. 36-67; Defs.' Br. Ex. 2, at 17-18; *see also Williamson*, 792 F.3d at 1350 ("Generic terms such as 'mechanism,' 'element,' 'device,' and other nonce words that reflect nothing more than verbal constructs" may fail to disclose sufficiently definite structure and therefore invoke 35 U.S.C. § 112, sixth paragraph.).  Next, the PTO properly determined that only the "generate" and "identify" functions in claims 1-10 are not "coextensive with any general-purpose computer" and that the '980 patent expressly disclosed the specific algorithms to carry out these functions in claims 1-3.  *See* Defs.' Br. Ex. 2, at 16-23.  Discovery Patents proposed alternative constructions that did not disclose a means-plus-function limitation, but the examiner rejected these constructions because they would lead to claims 1-10 being unpatentable and canceled as anticipated by "any prior art processor or any general-purpose computer."  Defs.' Br. Ex. 2, at 4-5.

Both parties also agree with the PTO's construction.  Defendants express their agreement directly.  Defs.' Reply at 1 ("[T]he Patent Office's construction was correct and should be adopted by the [c]ourt.").  Plaintiffs likewise agree with the PTO's construction.  In plaintiffs' response to the PTO's August 19, 2022, non-final office action canceling claims 1-10 of the '980 patent, plaintiffs suggested, among other options, that the examiner construe claims 1-3 as a means-plus-function limitation.  *See* Pls.' Resp. at 14.  The PTO then construed the "computer system" limitation as a means-plus-function limitation, which neither party disputes, and found that on this construction claims 1-10 of the '980 patent were patentable.  Plaintiffs accepted the PTO's conclusion.  *See* Defs.' Br. Ex. 3, at 4.  Indeed, the examiner relied on arguments that

---

[15] This court construed "**[a]nalyzing the biometric information**" and "**analyze the biometric information**" to mean "**comparing [compare] the biometrics information to information stored in a database**."  *3rd Eye Surveillance, LLC*, 140 Fed. Cl. at 71-72.  When discussing the computer system's algorithm, the PTO stated, "the algorithm for analyzing of the biometric information is disclosed as comparing biometric information to information stored in a database to which the computer system has access."  Defs.' Br. Ex. 2, at 22.

14

plaintiff Discovery Patents presented during reexamination that the algorithm for carrying out the "identity" function was disclosed.  *See* Def.'s Br. Ex. 2, at 8, 20-22.  These statements limiting a claim's construction made during reexamination can limit construction in related infringement litigation.  *See CVI/Beta Ventures, Inc.*, 112 F.3d at 1158.  Moreover, plaintiffs now ask the court to "apply [the PTO's] conclusions to advance litigation."  Pls.' Resp. at 11-12.  One of those conclusions is that Claims 1-10 are unpatentable unless they are construed as means-plus-function limitations.  See Defs.' Br. Ex. 2, at 4-5.  This conclusion entails that the claims were saved from cancellation, which would have bound this court, only because they are patentable as means-plus-function claims.

Therefore, because the PTO's construction is correct, is consistent with the court's prior construction, and is not disputed by either party, this court now adopts the PTO's construction of the computer system limitation as a means-plus-function limitation.

## CONCLUSION

For the reasons stated, the court adopts the PTO's claim construction of the '980 patent as set out in the final office action dated February 7, 2023.  The court DIRECTS the parties to file a joint status report by October 11, 2023, indicating their proposals on whether and how this case should proceed.

It is so **ORDERED**.

s/ Charles F. Lettow  
Charles F. Lettow  
Senior Judge