# In the United States Court of Federal Claims

No. 15-501C

(Filed: July 29, 2024)

|  |  |
|---|---|
| **3RD EYE SURVEILLANCE, LLC and DISCOVERY PATENTS, LLC,** | ) ) ) |
| Plaintiffs, | ) ) ) |
| **v.** | ) ) |
| **UNITED STATES,** | ) ) ) |
| Defendant, | ) ) |
| **and** | ) ) |
| **ELBIT SYSTEMS OF AMERICA, LLC, GENERAL DYNAMICS ONE SOURCE LLC, and NORTHROP GRUMMAN SYSTEMS CORPORATION,** | ) ) ) ) ) ) ) |
| Defendant-Intervenors. | ) ) ) |

Stephen A. Kennedy, Kennedy Law, PC, Dallas, TX for plaintiffs 3rd Eye Surveillance, LLC and Discovery Patents, LLC.

James P. Hughes, Trial Attorney, Intellectual Property Section, Civil Division, United States Department of Justice, Washington, D.C. for the United States.  With him on the briefs were Brian M. Boynton, Principal Deputy Assistant Attorney General, Civil Division, as well as Scott Bolden, Director, and David L. Pace, Of Counsel, Intellectual Property Section, Civil Division, United States Department of Justice, Washington, D.C.

Kurt G. Calia, Covington & Burling LLP, Palo Alto, CA for defendant-intervenor Elbit Systems of America, LLC.

Gregory H. Lantier, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C. for defendant-intervenor Northrop Grumman System Corporation.

Scott A. Felder, Wiley Rein LLP, Washington, D.C. for defendant-intervenor General Dynamics One Source LLC.

## OPINION AND ORDER

LETTOW, Senior Judge.

Pending before the court is the government's motion to stay proceedings. The United States' Mot. to Stay the Proceedings for Ex-Parte Reexamination ("Def.'s Mot."), ECF No. 650. The government argues that granting the stay would simplify the case without unduly prejudicing plaintiffs. *Id.* at 8-15. Plaintiffs respond that a stay would be "highly prejudicial" and that a stay is unlikely to result in judicial efficiency. Pls.' Resp. to Def.'s Mot. to Stay the Proceedings ("Pls.' Resp."), ECF No. 651. The government's motion is fully briefed and ready for disposition. *See* Def.'s Reply in Supp. of Def.'s Mot. ("Def.'s Reply"), ECF No. 652.

## BACKGROUND[1]

Plaintiffs filed their initial complaint on May 15, 2015, alleging that the government was infringing three of their patents, Patent Nos. 6,778,085 ("the '085 patent"), 6,798,344 ("the '344 patent"), and 7,323,980 ("the '980 patent"). Compl. ¶ 5, ECF No. 1. In the intervening nine years, the case has been delayed by disputes related to discovery, summary judgment, and parallel proceedings before the United States Patent and Trademark Office ("PTO"). Many of these disputes have been strongly contested, *see, e.g., 3rd Eye Surveillance, LLC v. United States*, 140 Fed. Cl. 39, 48 (2018), and the parties have required "frequent intervention by the court." *3rd Eye Surveillance, LLC v. United States*, 160 Fed. Cl. 636, 639 (2022).

### A.   Prior Stay Requests and Related Case Developments

In response to plaintiffs' initial complaint, the government moved for a more definite statement, which the court granted, and plaintiffs filed their first amended complaint. *See* First Am. Compl., ECF No. 22. The government then began notifying interested parties. *See 3rd Eye Surveillance*, 160 Fed. Cl. at 638.

On July 8, 2016, defendants "request[ed] that this action be stayed pending institution decisions for six separate *Inter Partes* review (IPR) proceedings filed with the [PTO]." Defs.' Mot. to Stay Proceedings at 1, ECF No. 81. The court denied this request on November 18, 2016. Order of November 18, 2016, ECF No. 105. In due course, the Patent Trial and Appeal Board ("the Board") instituted IPR on one of the government's six requests. *See* Decision Instituting Inter Partes Review, *Dep't of Justice v. Discovery Patents, LLC*, No. IPR2016-01041, Paper No. 10 at 2 (P.T.A.B. Nov. 15, 2016).

While the Board was conducting IPR proceedings, the parties began conducting fact discovery and plaintiffs submitted preliminary infringement contentions along with their claims chart. *See* Scheduling Order of December 13, 2016, ECF No. 112; Scheduling Order of June 16, 2016, ECF No. 150; Pls.' Prelim. Non-Binding Infringement Contentions and Claims Charts, ECF No. 166. In response, defendant-intervenor General Dynamics One Source LLC ("General

---

[1] The following recitations do not constitute findings of fact but rather are recitals attendant to the parties' briefs and documents attached to those briefs.

Dynamics") moved for summary judgment.  Def. General Dynamics' Mot. for Summ. J., ECF No. 168.

On October 30, 2017, the government asked for another stay, this time pending the Board's decision in the IPR proceeding and the court's ruling on General Dynamics' motion for summary judgment.  Def.'s Mot. to Stay Deadlines at 1-2, ECF No. 169.  The court again refused to implement a stay and instead granted a limited extension of all case deadlines.  Order of Nov. 16, 2017, ECF No. 174.  Shortly thereafter, the Board issued a final opinion finding claims 11, 12, 14, 16-18, and 20-31 of the '980 patent unpatentable as anticipated.  *Dep't of Justice v. Discovery Patents, LLC*, No. IPR2016-01041, Paper No. 29, 2017 WL 5446312, at *1, 8 (P.T.A.B. Nov. 9, 2017).

At the end of 2017 defendants filed their preliminary invalidity contentions and responsive claim chart.  Prelim. Invalidity Contentions of Def. and Def.-Intervenors, ECF No. 178.  And on September 25, 2018, the court issued its first claim construction opinion construing 13 terms that the parties had identified across the three patents and granted plaintiffs' motion for leave to file a second amended complaint.  *3rd Eye Surveillance*, 140 Fed. Cl. at 58, 60-72.  The parties then proceeded with discovery.

In 2019 the Supreme Court held that "a federal agency is not a 'person' who may petition for post-issuance review under the [America Invents Act]."  *Return Mail, Inc. v. U.S. Postal Serv.*, 587 U.S. 618, 637 (2019).  As a result, the Board vacated its IPR findings that most of the claims in the '980 patent were unpatentable.  *See* Order Terminating Proceedings, *Dep't of Justice v. Discovery Patents, LLC*, No. IPR2016-01041 (P.T.A.B. Sept. 9, 2019), Paper No. 30.  This court then permitted plaintiffs to file a third amended complaint to include allegations of infringement of those claims.  *3rd Eye Surveillance, LLC v. United States*, 145 Fed. Cl. 200, 202-03 (2019).  After the court granted in part another motion for a more definite statement, plaintiffs filed the currently operative fourth amended complaint.  *See* Order of November 19, 2019, ECF No. 320; Fourth Am. Compl., ECF No. 323.  The discovery process continued throughout the end of 2019 and beginning of 2020.

On July 16, 2020, defendant-intervenor Elbit Systems of America ("Elbit") asked to "stay discovery as to [Elbit] pending an adjudication of the [then]-pending" cross motions for summary judgment.  Elbit's Mot. to Stay Disc. at 7, ECF No. 377.  The court denied this motion, but, "[i]n an effort to advance the case," "limit[ed] plaintiffs' discovery requests to 11 potential infringing systems that will serve as bellwethers for further proceedings."  Order of July 28, 2020, at 1, ECF No. 381.

The parties continued discovery efforts limited to the 11 systems plaintiffs identified.  *See* Notice of August 14, 2020, ECF No. 385.  After another year of discovery, "[i]n a further effort to advance the case," the court limited "further discovery proceedings" to "Bellwether systems One, Four, and Five, with discovery on the remaining eight bellwether systems deferred."  *3rd Eye Surveillance, LLC v. United States*, 155 Fed. Cl. 355, 363 (2021).  Discovery on the three designated systems continued.

Next, the PTO granted reexamination requests filed by non-party Toering Patents ("Toering") in December 2021 that challenged each of the three patents.  Defs.' Mot. to Stay the

3

Proceedings at 1, ECF No. 607. On June 13, 2022, defendants moved to stay proceedings "pending the resolution of [the] three *ex parte* reexamination ('EPR') proceedings currently being conducted by the [PTO]." *Id.* The court granted defendants' motion. *3rd Eye Surveillance*, 160 Fed. Cl. at 642. Almost a year later, the parties notified the court that the PTO had canceled all the claims in the '344 and '085 patents and had canceled claims 11-31 of the '980 patent as anticipated by Patent No. 6,970,183 ("Monroe '183"). Joint Status Report at 1, 4, 7, ECF No. 623. But, the PTO also upheld claims 1-10 of the '980 patent after finding those claims are not anticipated by Monroe '183 only if they are construed under a means-plus-function interpretation. Joint Status Report Ex. 6, at 16-23, ECF No. 623-6.

The court proceeded to apply the PTO's construction. *3rd Eye Surveillance, LLC v. United States*, 167 Fed. Cl. 719, 729-31 (2023). The court then adopted the parties' proposal to stay the case with respect to Bellwether System 1 and to focus on Bellwether Systems 4 and 5. Order of October 20, 2023, ECF No. 640.

## B. Currently Pending Motions

On March 19, 2024, Toering petitioned the PTO to once again reexamine the remaining claims of the '980 patent based on the combination of two prior art references, Monroe '183 and U.S. Patent No. 6,693,530 ("Dowens"). Def.'s Mot. Ex. 1, at 5-6, ECF No. 650-1. On June 13, 2024, the PTO granted Toering's request after finding it presented "[a] substantial new question of patentability . . . affecting claims 1-10" of the '980 patent. Def.'s Mot. Ex. 2, at 2, ECF No. 650-2. The PTO explained that, while "Monroe [']183 was applied as prior art rejection during . . . previous *inter partes* review proceedings" as well as the first *ex parte* reexamination, Toering's 2024 petition presents these references "in a new light" insofar as it is "based on the combination of Monroe [']183 in view of Dowens." *Id.* at 2-4. Specifically, claims 1-10 were upheld in the prior *ex parte* reexamination proceedings "based solely on a finding that the phrase 'a computer system . . . configured to' as recited in claim 1 was subject to a narrower interpretation as a means-plus-function limitation." *Id.* at 6. The PTO's current *ex parte* reexamination proceedings consider whether "Dowens teaches the limitations that Monroe [']183 did not appear to disclose under the examiner's narrowing construction in the prior reexamination." *Id.* at 9.

Before the government moved to stay this case, plaintiffs filed a motion for partial summary judgment. Pls.' Mot. for Partial Summ. J. as to Bellwether Systems 4-5 ("Pls.' Mot. for Summ. J."), ECF No. 644. Plaintiffs contend that Bellwether Systems 4 and 5 infringe claims 1-4 of the '980 patent and ask the court to enter partial judgment in plaintiffs' favor accordingly. *Id.* at 70. Alternatively, plaintiffs ask the court to consider allowing source code discovery with respect to all accused infringing systems. *Id.* at 69.

The government responds that plaintiffs' motion should be denied because plaintiffs have failed to apply the court's construction of the '980 patent, to establish that Bellwether Systems 4 and 5 infringe the patent, and to show which elements of these systems meet the various claim limitations. United States' Opp'n to Pls.' Mot. for Partial Summ. J. as to Bellwether Systems 4-5 at 1-2, ECF No. 647. Next, the government argues that plaintiffs' alternative request to be allowed source code discovery is premature. *Id.* at 22-23.

### STANDARDS FOR DECISION

This court has the authority to issue a stay that is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The decisions whether and how to stay proceedings are "within the sound discretion" of the trial court. *Groves v. McDonough*, 34 F.4th 1074, 1079 (Fed. Cir. 2022).

This court may "stay [a] case pending a proceeding before the United States Patent and Trademark Office that concerns each patent at issue." Rules of the United States Court of Federal Claims ("RCFC"), App. J., Rule 18(a). In deciding whether to grant a stay, the court considers "the circumstances of the case" including (1) "whether a stay will simplify the issues," (2) "the stage of the litigation," and (3) "whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party." RCFC, App. J., Rule 18(b).

### ANALYSIS

#### A. Simplification of the Issues

Courts treat simplification of the issues as "[t]he most important factor bearing on whether to grant a stay." *Prolitec Inc. v. Scentair Techs., LLC*, No. CV 20-984-WCB, 2023 WL 5037173, at *4 (D. Del. Aug. 8, 2023); *TC Tech. LLC v. Sprint Corp.*, No. CV 16-153-WCB, 2021 WL 4521045, at *4 (D. Del. Oct. 4, 2021).

"The simplification factor is . . . at its apex" where reexamination covers all patent claims at issue and "the examiner's non-final office action" suggests the claims are likely to be cancelled. *TC Tech. LLC*, 2021 WL 4521045, at *5. Reexamination serves "to increase the reliability of the PTO's action in issuing a patent by reexamination of patents thought 'doubtful.'" *In re Etter*, 756 F.2d 852, 857 (Fed. Cir. 1985) (quoting House Report No. 96-1307, 96th Cong., 2d Sess. (1980), 2, *reprinted in* 1980 U.S.C.C.A.N. 6460, 6462). When litigation is ongoing, reexamination also "free[s] the court from any need to consider prior art without the benefit of the PTO's initial consideration." *Id.*; *see also Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) ("One purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding.)"). As such, courts have recognized a "liberal policy in favor of issuing stays pending post-grant proceedings." *TC Tech. LLC*, 2021 WL 4521045, at *4 (collecting cases); *see also Brit. Telecomms. PLC v. IAC/InterActiveCorp*, No. CV 18-366-WCB, 2020 WL 5517283, at *4 (D. Del. Sept. 11, 2020) (collecting cases).

The government contends that, because "claims subject to [*ex parte* reexamination] are cancelled or amended nearly 80% of the time," it is "highly likely that [p]laintiffs will be *foreclosed* from establishing liability concerning *any* of the accused systems in this litigation." Def.'s Mot. at 1. Cancellation is even more likely here because the claims have expired, "and thus cannot be amended." *Id.* at 6 n.4. If some of the claims are canceled, "[p]laintiffs will no longer be entitled to assert infringement" of those claims, and if the PTO further narrows the patent claims, "the scope of accused infringement" and the corresponding scope of permissible

discovery would be affected. *Id.* at 10.  In the latter scenario, plaintiffs' arguments before the PTO would become part of the intrinsic record that the court could consider in any proceedings that may follow the PTO's reexamination. *Id.* at 12.  The last *ex parte* reexamination proceeding "simplified this case" by "remov[ing] *ninety-three* of the *one-hundred and three* patent claims and two of the three asserted patents from this case." Def.'s Reply at 1-2.  The government contends the pending *ex parte* reexamination proceeding will have a similar simplifying effect. *Id.* at 3-4.

Plaintiffs argue that a stay would not simplify the remaining issues in this case. Pls.' Resp. at 3.  Instead, plaintiffs argue it is the latest installment in a series of defendants' requests "to prolong the litigation and make it more complicated." *Id.*  According to plaintiffs "[n]one of the PTO proceedings have simplified this case," nor have the previous motions to stay proceedings, and "[t]he current motion is no exception." *Id.* at 2-3.

Contrary to plaintiffs' contention, the last *ex parte* reexamination greatly simplified the issues in this case.  Notably, the number of patents at issue was reduced from three to one, the number of claims from 103 to ten, and those surviving ten claims were changed.  *See* Notice of Filing Corrected Exs. to Joint Status Report ("Notice") Ex. 5, ECF No. 627-3 (cancelling all 16 claims of the '344 patent); Notice Ex. 4, ECF No. 627-2 (cancelling all 56 claims of the '085 patent); Notice Ex. 3, ECF No. 627-1 (cancelling 21 of 31 claims of the '980 patent); Joint Status Report Ex. 6, at 16-32, ECF No. 623-6.  This outcome is in keeping with reexamination filing data provided by the government indicating that over 78% of reexaminations result in either all claims being canceled or some claims being changed. Def.'s Mot. Ex. 3, at 2.  In the ongoing reexamination, all ten of the '980 patent's remaining claims are at issue. Def.'s Mot. Ex. 2, at 10.  Accordingly, this factor weighs heavily in favor of staying further proceedings.

## B.  *Stage of Litigation*

In assessing whether the stage of litigation favors granting a stay, courts consider whether discovery has been completed, whether a trial date has been set, and the amount of work left to be done in preparing for and completing a trial.  *See, e.g.*, *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1316-17 (Fed. Cir. 2014).  While this factor weighs more heavily in favor of granting a stay if the proceedings are still in their infancy, *see id.* at 1317, courts have nevertheless granted stays even after fact discovery has been completed and a trial date has been set.  *See, e.g.*, *Prolitec Inc.*, 2023 WL 5037173, at *7; *AGIS Software Dev. LLC v. Google LLC*, No. 19-361, 2021 WL 465424, at *3 (E.D. Tex. Feb. 9, 2021); *Ramot at Tel Aviv Univ. Ltd. v. Cisco Sys., Inc.*, No. 19-CV-225, 2021 WL 121154, at *2 (E.D. Tex. Jan. 13, 2021); *Brit. Telecomms. PLC*, 2020 WL 5517283, at *5-6.  Indeed, "[a]s many courts have observed, the preparation for trial and trial itself are typically the most burdensome and expensive parts of the litigation." *Dental Monitoring v. Get-Grin Inc.*, No. CV 22-647-WCB, 2024 WL 1603403, at *7 (D. Del. Apr. 9, 2024).

The government avers that since the court lifted the stay of proceedings pending the first *ex parte* reexamination, "this case has not progressed to the point" where plaintiffs would be prejudiced by another stay.  Def.'s Mot. at 13-14.  The government provides examples of courts staying cases at more advanced stages, including after discovery is complete and pretrial briefing has been submitted.  *Id.* at 14.

In response, plaintiffs focus on the lengthy history of this case and ask the court to "bring the case closer to final resolution" by rejecting the government's motion and instead ruling on plaintiffs' motion for summary judgment.  Pls.' Resp. at 4.

In granting a stay pending the first *ex parte* reexamination, the court "conclude[d] the stage of litigation . . . weigh[ed] slightly in favor of granting a stay" "[c]onsidering the length of time and effort already exerted [balanced] against the substantial amount of work remaining." *3rd Eye Surveillance*, 160 Fed. Cl. at 640-41.  Since lifting that stay over year ago, the parties have engaged in additional discovery limited to Bellwether Systems 4 and 5.  *See, e.g.*, Pls.' Mot. for Summ. J. App'x at 2, Exs. 18-24, ECF No. 644-1.  That said, no trial for any of the Bellwether Systems has been set.

Moreover, the outcome of the PTO's reexamination may shape litigation concerning the remaining Bellwether Systems.  Plaintiffs' fourth amended complaint alleges that each of the 11 Bellwether Systems infringes the '980 patent.  Fourth Am. Compl. ¶¶ 288, 323, 341 (averring that surveillance systems used at airports, for federal buildings, and for customs and border protection infringe claim 1 of the '980 patent).  To date, the parties' discovery efforts have focused only on Bellwether Systems 1, 4, and 5.

Because no trial has been scheduled and more discovery remains to be undertaken, the court finds the stage of litigation still weighs in favor of granting a stay.

### C.  Undue Prejudice

A patentee's interest in "the prompt enforcement of . . . patent rights" is insufficient to establish undue prejudice because that interest "is present in every case in which a patentee resists a stay."  *Brit. Telecomms. PLC*, 2020 WL 5517283, at *6 (collecting cases).

The government argues there is no prejudice beyond mere delay because plaintiffs have not shown they practiced the '980 patent.  Def.'s Mot. at 14-15.  So, plaintiffs can seek only monetary damages, and the "mere delay in collecting . . . damages does not constitute undue prejudice."  *Id.* at 13-15 (quoting *Cellular Commc'ns Equip., LLC v. Samsung Elecs. Co.,* No. 6: 14-cv-759, 2015 WL 11143485, at *2 (E.D. Tex. Dec. 16, 2015)).  Moreover, the government contends that a stay will not likely be "overly extended" because the PTO prioritizes the reexamination of patents involved in litigation.  Def.'s Reply at 4 ("[T]he stay for the 2022 [*ex parte* reexamination] lasted only about eleven months.").

Plaintiffs argue the stay would be "highly prejudicial . . . for the reasons previously expressed in response to at least five other motions to stay."  Pls.' Resp. at 3.  In the past, plaintiffs have argued that the "last minute filing" of challenges to the validity of the patents and claims at issue prejudices their interest in timely enforcing their patent rights.  *See* Pls.' Resp. to Defs.' Mot. to Stay at 7-8, ECF No. 86; *see also* Pls.' Resp. to the Government's Third Mot. to Stay at 7-8, ECF No. 170 (citing the interests of the key inventor and plaintiffs in "timely enforcing their patent rights"); Pls.' Resp. to Defs.' Mot. to Stay the Proceedings at 7-9, ECF No. 609 (again emphasizing the protracted nature of this case and contending the court could proceed to trial and amend any judgment to remove damages associated with any claims that might be cancelled during the first *ex parte* reexamination).

The only prejudice of which plaintiffs complain is a delay in enforcing their patent rights. This alone is insufficient.  Indeed, "both parties have played a role in delaying the progress of this case." *3rd Eye Surveillance*, 160 Fed. Cl. at 641.  Plaintiffs have not shown that they ever practiced the '980 patent, so plaintiffs cannot claim prejudice in the form of competition. Moreover, as the government contends, plaintiffs may only seek monetary damages and can be compensated for delay in receiving such damages if the claims survive reexamination and plaintiffs prevail at trial.  This factor weighs in favor of granting the stay.

## CONCLUSION

Although significant milestones in this case have passed and the parties have expended substantial resources to date in preparing the case for disposition, the court nevertheless finds a stay is warranted because the pending *ex parte* reexamination will likely simplify the issues in this matter and plaintiffs have not established undue prejudice.

Accordingly, the government's motion for a stay is **GRANTED**, and proceedings in this case shall be **STAYED** pending a final decision in the *ex parte* reexamination currently before the PTO.  The parties are requested to file a joint status report within ten business days after the PTO's final determination in those proceedings.

Moreover, because plaintiffs' claims that defendant infringed claims 1-10 of the '980 patent turn on whether those claims are patentable, the court **DEFERS** its ruling on plaintiffs' motion for partial summary judgment until the *ex parte* reexamination is completed.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Senior Judge